David W. Shapiro, Esq.
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
E-mail: dshapiro@bsfllp.com
California Bar Number: 219265

*Additional attorneys on following page*

Attorneys for Plaintiffs Jeff Pokorny and Larry Blenn

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| Jeff Pokorny and Larry Blenn on behalf of themselves and those similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Quixtar, Inc., et al,<br><br>　　　　Defendants. | **CASE NO. C 07-0201 SC**<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD**<br><br>CLASS ACTION<br><br>Date:  April 27, 2007<br>Time: 10:00 a.m.<br>Room: 1, 17th Floor<br>Judge: Honorable Samuel Conti |

Additional counsel:

David Boies, Esq. (Pro Hac Vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
E-mail: dboies@bsfllp.com

Stuart H. Singer, Esq. (Pro Hac Vice)
Carlos M. Sires, Esq. (Pro Hac Vice)
Sigrid S. McCawley, Esq. (Pro Hac Vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com
E-mail: csires@bsfllp.com
E-mail: smccawley@bsfllp.com

Willie E. Gary, Esq. (Pro Hac Vice)
Maria Sperando, Esq. (Pro Hac Vice)
Mary Diaz, Esq. (Pro Hac Vice)
GARY, WILLIAMS, PARENTI, FINNEY, LEWIS, MCMANUS, WATSON & SPERANDO
221 East Osceola Street
Stuart, Florida 34994
Telephone: (772) 283-8260
Facsimile: (772) 220-3343
E-mail: weg@williegary.com
E-mail: mps@williegary.com
E-mail: mad@williegary.com

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

CASE NO. C 07-0201 SC
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 4

    I.    EXPERT AND OTHER EVIDENCE IS ADMISSIBLE ON THE UNCONSCIONABILITY ISSUE .................................................................... 4

    II.    EXPERT EVIDENCE IS ADMISSIBLE ON ULTIMATE ISSUES ................. 7

    III.    THE COURT CAN AND SHOULD ACCEPT THE FITZPATRICK AND HAYFORD DECLARATIONS ................................................................... 10

CONCLUSION ......................................................................................................................... 11

i

CASE NO. C 07-0201 SC
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE  DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD

# TABLE OF AUTHORITIES

**Cases**      Page

*Aguilar v. International Longshoremen's Union Local No. 10*,
 966 F.2d 443 (9th Cir. 1992) ............................................................................................... 8

*Andersons, Inc. v. Horton Farms, Inc.*,
 166 F.3d 308 (6th Cir. 1998) ............................................................................................ 5, 6

*Barker v. Golf U.S.A., Inc.*,
 154 F.3d 788 (8th Cir.1998) ................................................................................................ 5

*Besta v. Beneficial Loan Co. of Iowa*,
 855 F.2d 532 (8th Cir. 1988) ............................................................................................... 7

*Blair v. Scott Specialty Gases*,
 283 F.3d 595 (3rd Cir. 2002) ............................................................................................... 4

*Boyd v. Merrill Lynch, Pierce, Fenner & Smith*,
 611 F.Supp. 218 (S.D.Fla. 1985) ......................................................................................... 4

*Carey Oil Co., Inc. v. MG Refining & Marketing, Inc.*,
 2003 WL 1878246 (S.D.N.Y. 2003) ................................................................................... 8

*Cassino v. Reichhold Chemicals, Inc.*,
 817 F.2d 1338 (9th Cir.1987) .............................................................................................. 9

*Fiataruolo v. United States*,
 8 F.3d 930 (2d Cir.1993) .................................................................................................. 8, 9

*G.F. Co. v. Pan Ocean Shipping Co., Ltd.*,
 23 F.3d 1498 (9th Cir. 1994) ............................................................................................... 8

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991) ............................................................................................................... 1

*Gipson v. Cross Country Bank*,
 294 F.Supp.2d 1251 (M.D. Ala. 2003) ............................................................................... 5

*Green Tree Financial Corp. v Randolph*,
 2000 WL 1513141 (2000) ................................................................................................... 4

*Halper v. Halper*,
 164 F.3d 830 (3rd Cir. 1999) ............................................................................................... 7

*Hangarter v. Provident Life & Acc. Ins. Co.*,
 373 F.3d 998 (9th Cir. 2004) ........................................................................................... 8, 9

*Hooters of America, Inc. v. Phillips*,
 39 F.Supp.2d 582 (D.S.C. 1998), aff'd, 173 F.3d 939 ....................................................... 1

ii

CASE NO. C 07-0201 SC
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

*Hooters of America, Inc. v. Phillips*,
  173 F.3d 933 (4th Cir. 1999) ............................................................................................... *passim*

*Humetrix, Inc., v. Gemplus S.C.A.*,
  268 F.3d 910 (9th Cir. 2001) ........................................................................................................ 7

*In re Brown*,
  219 B.R. 373 (Bkrtcy. E.D. Pa. 1998) .......................................................................................... 7

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) ...................................................................................................... 7

*Lewis v. New Mexico Dept. of Health*,
  275 F. Supp. 2d 1319 (D.N.M. 2003) .......................................................................................... 8

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ......................................................................................................................... 7

*Nagrampa v. Mailcoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) (en banc) ..................................................................................... 5

*Netco, Inc. v. Dunn,*
  194 S.W. 3d 353 (Mo. 2006) ........................................................................................................ 6

*Reiffin v. Microsoft Corp.*,
  270 F.Supp.2d 1132 (N.D.Cal. 2003) .......................................................................................... 7

*SIL-FLO, Inc. v. SFHC, Inc.*,
  917 F.2d 1507 (10th Cir. 1990) ................................................................................................ 7, 9

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ........................................................................................................ 5

*Ting v. AT & T*,
  182 F. Supp. 2d 902 (N.D. Cal. 2002) ......................................................................................... 4

*Ting v. AT & T*,
  319 F.3d 1126 (9th Cir. 2003) ...................................................................................................... 4

*U.S. ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir.1999) ......................................................................................................... 8

*U.S. v. Dazey*,
  403 F.3d 1147 (10th Cir. 2005) ........................................................................................... 7, 9, 10

*U.S. v.Moran*,
  ___F.3d___, 2007 WL 959896 (9th Cir. Apr. 2, 2007) ......................................................... 7, 10

*U.S. v. Perry*,
  857 F.2d 1346 (9th Cir. 1988) ...................................................................................................... 9

*United States v. Buchanan*,
  787 F.2d 477 (10th Cir.1986) ....................................................................................................... 8

iii

*United States v. Garber*,
 607 F.2d 92 (5th Cir.1979)......................................................................................................8

*United States v. Oles*
994 F.2d 1519 (10th Cir.1993) ................................................................................................8

*Vlahos v. International Baking Co. Inc.,*,
 No. A102335, 2005 WL 1632089 (Cal. Ct. App. July 12, 2005) ............................................5

**Statutes & Rules**

9 U.S.C. § 4 ..............................................................................................................................4, 6

Fed. R. Civ. Proc. 26(a)(2) ..........................................................................................................9

Fed. R. Evid. 702.........................................................................................................................6

Fed. R. Evid. 703.........................................................................................................................6

Fed. R. Evid. 704.........................................................................................................................7

Plaintiffs Jeff Porkorny and Larry Blenn ("Plaintiffs"), individually and as class representatives, respectfully file this Opposition to the Motion to Strike Declarations of Robert Fitzpatrick and Stephen Hayford filed by Defendant Quixtar, Inc. ("Quixtar").

**PRELIMINARY STATEMENT**

Recognizing the force of the expert declarations of Robert Fitzpatrick and Professor Stephen Hayford, Quixtar moves to strike them, although it does not (and cannot) dispute any of the facts set forth in the declarations. However, Quixtar's brief misstates the pertinent law. For example, although Quixtar claims to be "aware of no reported decision in which expert testimony has been permitted to assess unconscionability under a motion governed by Section 4 of the FAA" (Quixtar Mot. to Strike 2), in *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 598, 615 (D.S.C. 1998), *aff'd*, 173 F.3d 933, 939 (4th Cir. 1999), which Plaintiffs cited in their Opposition to Quixtar's Motion to Compel, both the district court and the Fourth Circuit accepted, repeatedly quoted from, and relied upon expert testimony as to the unconscionability of an arbitration provision.[1] This Court should do likewise. Quixtar's motion to strike should be denied.

**BACKGROUND**

Robert Fitzpatrick has been retained as a consultant and expert witness on multi-level marketing schemes by the United States Department of Justice and by several state Attorneys General. (Fitzpatrick Decl. ¶ 3.) He has 25 years experience as a consultant, writer and analyst of distribution business models. (*Id*. ¶ 5.) Professor Stephen Hayford has over 30 years of experience as an arbitrator, mediator, and professor in the subject of dispute resolution, including arbitration. (Hayford Decl. ¶¶ 2, 3.) He is the current president of the College of Commercial Arbitrators and a former board member of the National Academy of Arbitrators. (*Id*. ¶ 3.)

---

[1] "The court has also weighed the testimony of the several arbitration experts, ---Messrs. Nicolau and Maltby, and Professor Nolan---all of whom opine that the Hooters arbitration scheme fails miserably to satisfy even the most basic requirements of a commercially reasonable arbitration scheme. The Hooters arbitral scheme is a spectacle of *Gilmer* gone mad." 39 F. Supp. 2d at 615 (quoting and citing expert affidavits, and referencing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991)). "If by odd chance the unfairness of these rules were not apparent on their face, leading arbitration experts have decried their one-sidedness." 173 F.3d at 939 (quoting unconscionability experts).

1

1    Professor Hayford is indeed a JAMS mediator and arbitrator, but there is nothing
2  "curious" about this, as Quixtar alleges. (Quixtar Mot. to Strike 5.) Professor Hayford's
3  experience with JAMS and other leading ADR providers makes it particularly appropriate for
4  him to articulate the accepted standards for a sound and fair ADR mechanism, and to compare
5  and contrast standard and accepted arbitration and mediation practices with those employed by
6  Quixtar. (*See* Hayford Decl. ¶ 5.) In setting up the challenged "dispute resolution program,"
7  Quixtar chose <u>not</u> to adopt the JAMS rules, which provide for a fair process. Instead, Quixtar
8  adopted its own, unfair rules, which Professor Hayford appropriately compares to the fair and
9  neutral rules employed in typical and accepted dispute resolution programs.

10   For example, in response to Quixtar's assertion that its gag provision is merely a
11 standard arbitration confidentiality clause, Professor Hayford notes, and Quixtar does not
12 dispute, that standard confidentiality clauses merely prevent a party from disclosing what
13 occurs during an arbitral hearing or a mediation session. (Hayford Decl. ¶¶ 47-48.) In contrast,
14 Quixtar's gag clause prohibits IBOs (but not Quixtar) from discussing even the general nature
15 of potential claims from the very moment they become aware of their existence, which is
16 unprecedented. (*Id.*) Mr. Hayford also comments on the "normal circumstance" of selecting
17 an arbitrator from the full pool available to the provider of the arbitration services and contrasts
18 that practice with Quixtar's "highly unusual" practice of limiting selection to a narrow
19 subgroup appointed for a three-year term specifically to hear arbitration claims involving
20 Quixtar.[2] (*Id.* ¶¶ 25-28.)

21   Similarly, in response to Quixtar's repeated claim that the arbitration clause is clearly
22 set forth directly above the signature line of the Registration Agreement, Professor Hayford
23 correctly observes, and Quixtar does not contest, that the 15-page, highly legalistic, small-font
24 Rules of Conduct that delineate the arbitration process are just incorporated by reference and
25 not included in the document signed by the IBO. (*Id.* ¶¶ 10-13.) Professor Hayford's

---

[2] As Professor Hayford notes, the possibility of selection from the sub-group of arbitrators not selected and retained by Quixtar comes into play only if the claimant is sophisticated enough to opt out within 15 days from the default group of arbitrators selected *and trained* by Quixtar. (Hayford Decl. ¶¶ 22-28)

declaration is appropriate because it specifically contests the assertion at the core of the motion to compel arbitration: that Quixtar's arbitration process is a fair and typical ADR process. As Professor Hayford's declaration makes clear, it is not.

As for Mr. Fitzpatrick, Plaintiffs included his declaration to refute Quixtar's allegations about its business and the IBOAI International Board ("IBOAI"). Although Quixtar's motion to compel arbitration does not concern the merits of this case, Quixtar chose to begin its memorandum in support of its motion with an unsupported self-laudatory description of its business as an "opportunity for hundreds of thousands of individuals throughout the United States to own their own businesses." (Quixtar Mot. to Compel 2.) It falsely claimed that the FTC had "conclusively established" that its business was not an illegal pyramid scheme, and that the "tools and functions" are sold "for the purpose of helping IBOs sell more Quixtar products" (*Id.* 2-3.)

Having opened the door here, Quixtar should not be heard to object when Plaintiffs respond with Mr. Fitzpatrick's declaration. Based on his extensive research and analysis, Mr. Fitzpatrick pointed out, and Quixtar does not dispute, that IBOs can only succeed by recruiting others into the Quixtar pyramid, that IBOs are induced to purchase Quixtar products for their own consumption rather than making retail sales in the marketplace, and that more than 99% of Quixtar IBOs lose money, notwithstanding Quixtar's claims and promises of a unique and extraordinary new income opportunity. (Fitzpatrick Decl. ¶¶ 7-9).

There is also a more specific relevance to Mr. Fitzpatrick's declaration: a response to Quixtar's disingenuous assertion that the IBOAI is an "independent trade association" that "represents the interests of all Quixtar distributors." (Quixtar Mot. to Compel 3.) Mr. Fitzpatrick demonstrates the real truth: the IBOAI is far from an independent representative of IBOs such as Plaintiffs – rather, it is controlled by Kingpins, the very people who dupe IBOs into buying "tools and functions," a central aspect of the pyramid scheme alleged in Plaintiffs' complaint, and some of whom are defendants in this case. (Fitzpatrick Decl. ¶ 10.)

3

CASE NO. C 07-0201 SC

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD

# ARGUMENT

Quixtar asks this Court to grant its motion to compel arbitration on the basis of its false and wholly unsupported allegations and to ignore Plaintiffs' contrary allegations and evidence, which are supported by the testimony of prominent experts.

## I. EXPERT AND OTHER EVIDENCE IS ADMISSIBLE ON THE UNCONSCIONABILITY ISSUE

Plaintiffs are entitled to present expert testimony, as well as factual evidence, that goes to futility and unconscionability of the agreements at issue.

There are several factual issues that bear directly on the ultimate decision as to unconscionability. Here, for example, it is established law that an arbitration clause is unconscionable if it requires a claimant to pay excessive fees: but there is a purely factual issue as to the amount of fees that Plaintiffs will have to pay if this Court sends them to arbitration. Plaintiffs are entitled to take discovery and present evidence on this issue. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 609 (3rd Cir. 2002) ("without some discovery . . . it is not clear how a claimant could present information on the costs of arbitration").

The United States Supreme Court has even criticized plaintiffs who have failed to take discovery on this point. *See id.* at 609 n.4 (quoting Transcript of Oral Argument in *Green Tree Financial Corp. v. Randolph,* 2000 WL 1513141, at *35-*39, *54 (2000)). *See also Ting v. AT & T*, 182 F. Supp. 2d 902, 934 (N.D. Cal. 2002) (noting that much of the evidence submitted by plaintiffs in support of their successful unconscionability defense to a motion to compel arbitration had been "gleaned from discovery"), *aff'd*, 319 F.3d 1126 (9th Cir. 2003); *Boyd v. Merrill Lynch, Pierce, Fenner & Smith,* 611 F. Supp. 218, 220-21 (S.D. Fla. 1985) (plaintiff opposing arbitration "must file affidavits and other evidence that support her claim").

Quixtar admits that, under 9 U.S.C. § 4, Plaintiffs are entitled to "discovery and a full trial" if the "making of the arbitration agreement" is at issue. (Mot. to Strike 2.) But without any support whatsoever, Quixtar contends that an unconscionability defense does not go to whether an agreement was "made," and that it just concerns whether the agreement should be "enforced." (*Id.* 2.) Contrary to Quixtar's assertion, "[a] plaintiff's focused challenge to

1  arbitration provisions as both procedurally and substantively unconscionable goes 'specifically
2  to the "making" of the agreement to arbitrate.'" *Vlahos v. Int'l Baking Co., Inc*., No. A102335,
3  2005 WL 1632089, at *3 (Cal. Ct. App. July 12, 2005) (citation omitted); *Barker v. Golf
4  U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir.1998) (a claim that an arbitration clause is
5  unconscionable goes "to the making of the arbitration agreement itself"); *Gipson v. Cross
6  Country Bank*, 294 F. Supp. 2d 1251, 1257 n.3 (M.D. Ala. 2003) (same).

7  No case cited by Quixtar even remotely suggests that Plaintiffs are not entitled to
8  introduce fact and expert witness evidence on the unconscionability issue. Quite the contrary,
9  in *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 723 (9th Cir. 1999), the court explicitly accepted
10 and considered a declaration from a legal expert in considering the scope of an arbitration
11 agreement. *Id*. at 723 n.4. Furthermore, the pertinent holding of *Simula* is that where, <u>unlike
12 here</u>, the plaintiff claimed fraud in the inducement of the contract "as a whole," not just fraud in
13 the inducement of the arbitration clause, the district court did not abuse its discretion in denying
14 pre-arbitration discovery, because the issue was for the arbitrator to decide. 175 F.3d at 726.
15 Had Simula claimed specifically, as Plaintiffs do here, that only the arbitration clause was
16 improperly induced and unconscionable, it would have been entitled to "discovery and a full
17 trial in connection with a motion to compel arbitration." *Id*. Quixtar's own case thus supports
18 Plaintiffs, not Quixtar, as it is undisputed that Plaintiffs' unconscionability claim is to be
19 decided by this Court, not by an arbitrator. *See Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257,
20 1264 (9th Cir. 2006) (en banc).

21 It is stunning that Quixtar claims that *Nagrampa* somehow stands for the proposition
22 that unconscionability is "not a proper subject for discovery" in connection with a motion to
23 compel arbitration under the FAA. (Quixtar Mot. to Strike 3). *Nagrampa*, which struck an
24 ADR clause as unconscionable, says nothing of the sort. The fact that the court did consider
25 the complaint, bank statements, an offering circular, etc., in no way implies that discovery is
26 improper or that other evidence could not have been submitted.

27 Furthermore, while Quixtar cites *Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308,
28 323 (6th Cir. 1998), for the statement that, "[u]nder Michigan law, unconscionability is a

5

question of law for the court to decide," Quixtar ignores the very next sentence: "The issue is determined *based on the facts and circumstances* that existed when the contract was made, not those extant at the time of the suit." *Id.* (emphasis added.) The *Andersons* court then went on to review an extensive factual record, including affidavits, deposition testimony, a synopsis of 18 years of prior decisions of the arbitral body, and the amount of dues paid by the defendant to that body. *Id.* at 324-26 & n.28. *Andersons* thus indicates that a full factual record is necessary and appropriate and does not help Quixtar at all.

The same is true with respect to Quixtar's citation of *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983), as requiring an "expeditious and summary hearing" on a motion to compel arbitration under 9 U.S.C. § 4. (Mot. to Strike 2.) Quixtar utterly ignores that the fact that *Moses H. Cone* was decided on a record that included **"**extensive evidentiary submissions on the arbitrability issue," such as affidavits and documents. *Id.* at 22, n. 26.[3]

## II. EXPERT EVIDENCE IS ADMISSIBLE ON ULTIMATE ISSUES

Expert testimony is admissible even at trial (and all the more so in opposition to a pre-discovery motion) if it would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The expert may give his testimony "in the form of an opinion or otherwise." *Id*. Experts may rely on any type of data "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," even if such data is inadmissible as evidence. Fed. R. Evid. 703.

As noted above, both the trial court and the Fourth Circuit in *Hooters* admitted, quoted from, and relied on expert affidavits on unconscionability. Just as Plaintiffs' experts do here, the experts in *Hooters* testified, for example, that the Hooters rules "deviated from minimum due process standards," were "inconsistent with the concept of fair and impartial arbitration," and did not "satisfy the minimum requirements of a fair arbitration system." *Hooters of*

---

[3] *See also Netco, Inc. v. Dunn,* 194 S.W. 3d 353, 357 (Mo. 2006), which involved the same Quixtar rules at issue here, where a motion to compel arbitration was decided only after "considerable discovery" including "more than 4,000 pages of documents, affidavits, deposition transcripts and other materials," and an evidentiary hearing.

6

*America, Inc. v.Phillips*, 173 F.3d 933, 939 (4th Cir. 1999). (quoting experts).[4] The Ninth Circuit cited *Hooters* with approval in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 n.22 (9th Cir. 2003), and this Court should follow suit and deny Quixtar's motion.

Although Quixtar's primary gripe about Plaintiffs' experts is that they make "conclusions of law," the federal rules provide expressly that an expert's opinion or inference "is <u>not objectionable</u> because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704 (emphasis added). A trial court has broad discretion to consider an expert's testimony and will only be reversed for abuse of discretion. *U.S. v. Moran,* ___F.3d___, 2007 WL 959896, at *2 (9th Cir. Apr. 2, 2007); *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001). In view of the Federal Rules' emphasis on liberalizing expert testimony, "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1517 (10th Cir. 1990).[5]

Thus, just this month the Ninth Circuit rejected a "legal conclusions" argument similar to Quixtar's and affirmed the admission of an expert's testimony that the defendant's tax reduction scheme was "fraudulent" and a "sham." *Moran*, at *2. Similarly, the Tenth Circuit approved testimony by an expert who characterized a defendant's prime bank scheme as a "fraud" and its trading scheme as "non-existent," because the witness did not just state bare conclusions. *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005). "Rather, he carefully explained the source of his extensive knowledge of prime bank frauds and explained what attributes these schemes, in his considerable experience, often share." *Id.* at 1171. *See also, e.g., Cary Oil Co., Inc. v. MG Ref. & Mfg., Inc.*, No. 99 Civ. 1725(VM), 2003 WL

---

[4] *See also Besta v. Beneficial Loan Co. of Iowa*, 855 F.2d 532, 534 (8th Cir. 1988) (reversing trial court and finding agreement unconscionable on the basis of expert testimony); *In re Brown*, 219 B.R. 373, 383 (Bkrtcy. E.D. Pa. 1998) (relying on expert testimony in finding agreement unconscionable), *abrogated on other grounds by Halper v. Halper*, 164 F.3d 830 (3rd Cir. 1999).

[5] Of course, if the Court finds any portion of either declaration to be unhelpful, the proper course would be to strike only the unhelpful portions, not to strike the entire declaration. *See, e.g., Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1145-46 (N.D. Cal. 2003) (striking one paragraph of expert declaration and admitting the rest). For example, even if the Court decides to disregard Professor Hayford's conclusion that the Quixtar ADR process is unconscionable, it can and should accept his testimony about how Quixtar's process differs from standard, fair ADR programs.

7

CASE NO. C 07-0201 SC

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD

1878246, at *5 (S.D.N.Y. April 11, 2003) (allowing an expert to testify as to general corporate governance principles and the legal concept of corporate veil-piercing); *United States v. Buchanan*, 787 F.2d 477, 483-84 (10th Cir.1986) (allowing expert to testify that the law required a certain weapon to be registered); *United States v. Garber*, 607 F.2d 92, 97 (5th Cir.1979) (finding reversible error in exclusion of expert testimony regarding whether failure to report funds received for sale of blood plasma constituted income tax evasion).

Although in jury trials experts are generally not allowed to make bald, unsupported legal conclusions that might confuse the jury or interfere with the function of the judge in instructing the jury on the law, such concerns are not present where, as here, the matter is being decided by the court. *See Lewis v. New Mexico Dept. of Health*, 275 F. Supp. 2d 1319, 1328-31 (D.N.M. 2003). Moreover, even in a jury trial, an expert is entitled to "refer to the law in expressing his or her opinion," *United States v. Oles,* 994 F.2d 1519, 1523 (10th Cir.1993), and he may state a legal opinion, if it is coupled with a detailed factual explanation and it gives the jury "helpful information." *Fiataruolo v. United States*, 8 F.3d 930, 941-42 (2d Cir.1993) (affirming the admission of an expert's opinion that the defendant was not a "responsible person" within the meaning of the pertinent statute). *See Hangarter v. Provident Life & Acc. Ins. Co*., 373 F.3d 998, 1016-17 (9th Cir. 2004) ("a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms").

No case cited by Quixtar holds anything different. In fact, in *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir.1999), the court actually accepted and considered the subject expert testimony in deciding a summary judgment motion. There, the facts were undisputed and the only question was whether the district court was "required to accept" the expert's opinion.[6] Here, no one is suggesting that the Court is "required to accept" the opinions

---

[6] Quixtar's other cases are equally unavailing. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 448 (9th Cir. 1992), merely held that a district court did not abuse its discretion in excluding an expert's testimony on reasonableness and foreseeability as unhelpful, particularly since the plaintiffs' reliance was unreasonable as a matter of law. The only reference to experts in *G.F. Co. v. Pan Ocean Shipping Co., Ltd*., 23 F.3d 1498, 1507 n.6 (9th Cir. 1994), is just a footnote striking two lawyer affidavits, proffered in a supplemental record excerpt on appeal, that were purely legal briefs arguing that a prior court decision was inconsistent with the legislative history of a federal statute.

8

of Plaintiffs' experts.  The only question is whether they should be considered, and the answer is clearly yes.

### III. THE COURT CAN AND SHOULD ACCEPT THE FITZPATRICK AND HAYFORD DECLARATIONS

Under the above standards, this Court has more than ample discretion to consider both of Plaintiffs' expert declarations.  The touchstone is whether the declarations would be helpful to the court in resolving Quixtar's motion to compel arbitration.  *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1346 (9th Cir.1987).  Particularly at this early, pre-discovery stage of the proceedings, the declarations are an appropriate counter to Quixtar's self-serving, but inaccurate, assertions about its business and its ADR program.

Both experts are undisputedly well-qualified.  Each expert "carefully explained the source of his extensive knowledge" of the matter at hand.  *See Dazey,* 403 F.3d at 1171; (Hayford Decl. ¶¶ 2-4; Fitzpatrick Decl. ¶¶ 2-5, ¶7 and ¶10.)  Both Mr. Fitzpatrick and Professor Hayford described in detail the methods and investigations they undertook to support their factual statements and opinions.  (Hayford Decl. ¶ 4; Fitzpatrick Decl. ¶¶ 7,10.)  Both did far more then give "bald assertion[s] of the law."  *Fiataruolo,* 8 F.3d at 942.  In view of the rule that "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility," *SIL-FLO*, 917 F.2d at 1517, the declarations are proper even though to some extent they are "couched in legal terms." *Hangarter,* 373 F.3d at 1017.[7]

Quixtar complains that much of Mr. Fitzpatrick's testimony goes to the merits rather than to the unconscionability issue.  However, with its self-laudatory remarks about the non-pyramid nature of its business and about its separateness from the IBOAI, Quixtar patently "opened the door" to a declaration concerning both the true nature of its business and the true relationship between Quixtar and the IBOAI.  *See United States v. Perry*, 857 F.2d 1346, 1352 (9th Cir. 1988).  Also, Mr. Fitzpatrick's testimony regarding the non-neutrality of the

---

[7] There is no merit to Quixtar's assertion that Plaintiffs' declarations are an "improper evasion" of Federal Rule of Civil Procedure 26(a)(2), which requires certain disclosures about experts "who may be used at trial," "at the times and in the sequence directed by the court," and at least "90 days before the trial date."  Obviously, this rule applies to trials, not to pre-trial, pre-discovery motions such as this, to which Plaintiffs had only 30 days to respond.

9

CASE NO. C 07-0201 SC

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE  DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD

1  IBOAI undisputedly bears directly on the issue of unconscionability.

2  Similarly, by describing its ADR process as no different than those at the "heart of the
3  system of industrial self-government" and "very similar" to those considered in other cases,
4  Quixtar is in no position to complain about Professor Hayford's declaration, based on his years
5  of experience as an arbitrator, mediator, and ADR professor, that Quixtar's process is far from
6  the standard, fair procedure that ADR professionals expect to see. Professor Hayford's
7  comparing and contrasting of the Quixtar provisions with those of a standard, fair ADR
8  program, and his explanations as to how numerous Quixtar provisions unfairly disadvantage
9  claimants, provide the Court with helpful information as to the unconscionability of the
10 arbitration clause. *See Moran*, at \*2; *Dazey*, 403 F.3d at 1171-72 ; *Hooters,*173 F.3d at 939.

## CONCLUSION

13 For the reasons set forth above, Quixtar's Motion to Strike the Expert Declarations of
14 Mr. Fitzpatrick and Professor Hayford should be denied in its entirety.

15 Dated: April 23, 2007                     Respectfully submitted,

17                                            BOIES, SCHILLER & FLEXNER LLP

20                              By:   /s/ Sigrid S. McCawley____
                                      Sigrid S. McCawley (*Pro Hac Vice*)
21                                    Stuart H. Singer (*Pro Hac Vice*)
                                      Carlos M. Sires (*Pro Hac Vice*)
22                                    401 East Las Olas Boulevard
                                      Suite 1200
23                                    Ft. Lauderdale, FL 33301
                                      Tel.: (954) 356-0011
24                                    Fax: (954) 356-0022

25                                    David Boies (*Pro Hac Vice*)
26                                    333 Main Street
                                      Armonk, NY 10504
27                                    Tel.: (914 (749)-8200
                                      Fax: (914) 749-8300

10

David W. Shapiro
California Bar No. 219265
1999 Harrison Street, Suite 900
Oakland, California 94612
Tel.: (510) 874-1000
Fax: (510) 874-1460

Willie E. Gary (*Pro Hac Vice*)
Maria Sperando (*Pro Hac Vice*)
Mary Diaz (*Pro Hac Vice*)
GARY, WILLIAMS, PARENTI, FINNEY, LEWIS, MCMANUS, WATSON & SPERANDO
221 E. Osceola St.
Stuart, FL 34994
Tel.: (772) 283-8260
Fax: (772) 220-3343

11

CASE NO. C 07-0201 SC

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO QUIXTAR'S MOTION TO STRIKE DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD