1  CEDRIC C. CHAO (CA SBN 76045)
   WILLIAM L. STERN (CA SBN 96105)
2  JAMES M. SCHURZ (CA SBN 145874)
   MORRISON & FOERSTER LLP
3  425 Market Street
   San Francisco, California 94105-2482
4  Telephone: 415.268.7000
   Facsimile: 415.268.7522
5  E-mail: cchao@mofo.com and wstern@mofo.com

6  JAMES R. SOBIERAJ *(Pro Hac Vice)*
   RALPH J. GABRIC *(Pro Hac Vice)*
7  JULIE L. LEICHTMAN *(Pro Hac Vice)*
   BRINKS HOFER GILSON & LIONE
8  455 N. Cityfront Plaza Drive
   Chicago, Illinois 60611
9  Telephone: 312.321.4200
   Facsimile: 312.321.4299
10 E-mail: jsobieraj@usebrinks.com

11 Attorneys for Defendant
   QUIXTAR INC.

12

13                    UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                          SAN FRANCISCO DIVISION

16

| | |
|---|---|
| 17  JEFF POKORNY AND LARRY BLENN on behalf of themselves and those similarly situated, | Case No.  C 07-00201 SC |
| 18 | **DEFENDANT QUIXTAR INC.'S REPLY MEMORANDUM IN SUPPORT OF OBJECTIONS TO, AND MOTION TO STRIKE DECLARATIONS OF ROBERT FITZPATRICK AND STEPHEN HAYFORD SUBMITTED BY PLAINTIFFS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY** |
| 19                Plaintiffs, | |
| 20       v. | |
| 21  QUIXTAR INC., *et al.*, | |
| 22                Defendants. | |
| 23 | Date:   April 27, 2007 |
| 24 | Time:   10:00 a.m.<br>Room:   1, 17th Floor |
| 25 | Judge:  Honorable Samuel Conti |
| 26 | [Hearing Vacated] |

27

28

## I. INTRODUCTION

Plaintiffs' Opposition cannot alter the scope of this Court's inquiry.

Section 4 of the Federal Arbitration Act requires a streamlined determination on Defendant Quixtar Inc.'s motion to dismiss or stay pending submission to contractual dispute resolution procedures. This comports with the FAA's goal of quickly referring arbitrable disputes to their proper forum. Contrary to this policy, Plaintiffs Jeff Pokorny and Larry Blenn ask the Court to supervise a mini-trial including consideration of the purported expert testimony of Robert Fitzpatrick and Stephen Hayford. Such a detour can only serve to complicate and undermine the fair and efficacious procedures to which plaintiffs agreed.

Even if experts had a role in assessing Quixtar's Section 4 motion, these purported experts would still be inappropriate. Mr. Fitzpatrick opines on the merits of plaintiffs' RICO claims. The merits of plaintiffs' claims are not a proper Section 4 consideration. Furthermore, both declarations offer nothing more than conclusions on matters of law for the Court to decide. Mr. Fitzpatrick tells the Court that Quixtar is a pyramid scheme. Mr. Hayford tells the Court that Quixtar's ADR process is unconscionable. Such "expert" testimony is not proper in any context.

Finally, Mr. Hayford's credibility is dubious. Plaintiffs created suspicions about Mr. Hayford by failing to disclose that he is employed as a mediator and arbitrator by JAMS --- the very organization utilized by Quixtar for arbitration. Thus Mr. Hayford's legal conclusion that Quixtar's arbitration process, which is modeled in part after the JAMS' rules, is unfair, should be rejected.

## II. QUIXTAR'S SECTION 4 MOTION DOES NOT REQUIRE A MINI-TRIAL.

It has long been the rule that proceedings under Section 4 are to be "expeditious" so as to uphold "the statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-23 (1983).

Plaintiffs argue that the Court must conduct a Section 4 trial into more than the "making" of the agreement, including questions of unconscionability. (Oppo. to Strike Mot. 4:24-5:6.) That is not the controlling law here. Under either California or Michigan law, the issue of

1  unconscionability goes to the "enforcement" of a contract, not to contract formation, and is not
2  subject to a Section 4 trial.  *See Nagrampa v. Mailcoups, Inc.*, 469 F. 3d 1257, 1280 (9th Cir.
3  2006) (en banc) ("It is well-established that unconscionability is a generally applicable contract
4  defense, which may render an arbitration provision unenforceable"); *see also* Cal. Civ. Code
5  § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to
6  have been unconscionable at the time it was made the court may refuse to enforce the contract, or
7  it may enforce the remainder of the contract without the unconscionable clause, or it may so limit
8  the application of any unconscionable clause as to avoid any unconscionable result"). [1]

9       In arguing that Section 4 trials are appropriate on questions of enforceability, plaintiffs
10 overlook the two recent Ninth Circuit cases cited by Quixtar, which make clear that this is not the
11 law.  In *Simula*, the court explained that "[u]nder § 4 of the FAA . . . the district court can
12 determine *only* whether a written arbitration agreement exists, and if it does, enforce it according
13 to its terms."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999) (emphasis
14 added).  Likewise, in *Chiron*, a case plaintiffs completely ignore, the court reiterated that "district
15 courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration
16 agreement has been signed."  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126,
17 1130 (9th Cir. 2000) (emphasis in original) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S.
18 213, 218 (1985)).  For this reason, the Ninth Circuit has deemed protracted evidentiary
19 expeditions inappropriate in determining the enforceability of an ADR agreement under
20 Section 4.  *See Simula*, 175 F.3d at 726 (affirming denial of pre-arbitration discovery where the
21 plaintiff asserted fraud in the inducement and economic duress); *see also Andersons, Inc. v.*
22 *Horton Farms, Inc.*, 166 F.3d 308, 327 (6th Cir. 1998) (holding that no jury trial is afforded to
23 determine unconscionability under Section 4).[2]

---

24 [1] Contrary to plaintiffs' suggestion, Quixtar is not seeking to prevent consideration of plaintiffs' factual evidence.  (Oppo. to Strike Mot. 5).  Quixtar is not moving to strike the declarations of
25 Plaintiffs Pokorny and Blenn, or the declaration of plaintiffs' counsel.

26 [2] Plaintiffs mysteriously cite *Ting* to support the proposition that discovery is available under Section 4, but *Ting* did not involve a petition to compel arbitration or Section 4.  *Ting v. AT&T*,
27 182 F. Supp. 2d 902, 906 (N.D. Cal. 2002), *aff'd in part and rev'd in part*, 319 F.3d 1126 (9th Cir. 2003).
28

1  The Ninth Circuit's recent decision in *Nagrampa*, *supra*, a case heavily relied upon by plaintiffs, emphasizes this point. In *Nagrampa*, Judge Wardlaw found the arbitration agreement at issue unconscionable, reversing the district court. In so ruling, she relied almost exclusively on the allegations in the complaint and the agreement to arbitrate. She made reference to two additional pieces of "evidence": the plaintiff's bank statements, and a "franchise offering circular" attached to the plaintiff's complaint. *Nagrampa*, 469 F.3d at 1290 n.13, 1291 n.14. Judge Wardlaw only referred to the bank statements because the dissenting opinion alluded to them. *Id*. at 1290 n.13. And the offering circular was only considered because it was attached to the plaintiff's complaint. *Id*. 1291 n.14. Most notably, Judge Wardlaw *did not* remand the case with orders that the district court judge allow discovery, consider expert testimony, or conduct a jury trial. *Id*. at 1294. Rather, she determined unconscionability based on the structure of the arbitration agreement and the allegations in the complaint. This Court has the same information before it. From this record, the Court can determine that the Quixtar process is fair.

Given the narrow scope of inquiry under Section 4, it follows that courts do not countenance a battle of experts in determining enforceability. Plaintiffs point to one opinion from the District of South Carolina in which expert testimony about unconscionability was considered. That district court emphasized that the "case ha[d] a long and convoluted procedural history," prior to the evidentiary battle that ensued. *Hooters of Am., Inc. v. Phillips*, 39 F. Supp. 2d 582, 588 (D.S.C. 1998). In affirming the finding of unconscionability, the Fourth Circuit recognized the exceptional circumstances in the underlying proceedings and thus warned: "*[n]or should our decision be misunderstood as permitting a full-scale assault on the fairness of proceedings before the matter is submitted to arbitration*." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999) (emphasis added). Plaintiffs' full-scale evidentiary assault in the context of Quixtar's Section 4 motion should be rejected. *See Simula*, 175 F.3d at 726; *Nagrampa*, 469 F. 3d at 1294; *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751-52 (8th Cir. 2003), *cert. denied*, 540 U.S. 1219 (2004) (affirming district court's order striking expert testimony regarding bias).

Limitation on such expeditions is further required because unconscionability is a question of law. This is true under both Michigan and California law. *See Andersons*, 166 F.3d at 323 (applying Michigan law); *PeopleSoft U.S.A., Inc. v. Softeck, Inc.*, 227 F. Supp. 2d 1116, 1120 (N.D. Cal. 2002) (applying California law).

Plaintiffs argue that *Andersons* does not stand for this proposition. It does. "Under Michigan law, unconscionability is a question of law for the court to decide." *Andersons*, 166 F.3d at 323. That this question of law is informed by "the facts and circumstances" surrounding the contract is unremarkable. *Ibid*. Of course, a court will consider the nature of the business and the plaintiff's relationship to that business. The *Andersons* Court did not suggest that this justified a full-scale assault prior to referring the dispute to arbitration. On the contrary, the *Andersons* Court specifically rejected the plaintiff's argument that the issue of unconscionability needed to be put to a jury. *Id.* at 327. "[I]f the provision is clear, and the defaulting party (with authority) has signed it, there is no jury issue." *Ibid*. Thus just as in *Nagrampa*, the *Andersons* Court made its determination on unconscionability by reviewing a limited record, and without referring the case to the district court for an evidentiary excavation. *Ibid*.; *Nagrampa*, 469 F. 3d at 1294.

### III. THE DECLARATIONS IMPROPERLY OFFER TESTIMONY ABOUT THE MERITS AND CONCLUSIONS OF LAW.

Even if now were the time for experts, it would not be these experts. As discussed in the opening motion to strike, experts should not testify about the merits of a dispute in a Section 4 motion, nor should they render legal conclusions about matters for the Court at any time.

#### A. Testimony Regarding the Merits Is Inappropriate.

Under Section 4, a court's "role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Chiron*, 207 F.3d at 1131 (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).

Plaintiffs do not dispute that Mr. Fitzpatrick's declaration relates solely to the merits of plaintiffs' RICO claims. Instead, plaintiffs point to a few lines from Quixtar's opening papers in

which Quixtar explains the nature of its business, as evidence that Quixtar "opened the door" into a full-blown inquiry into the merits. (Oppo. to Strike Mot. 3:6-14.) The statement that Quixtar provides an "opportunity for hundreds of thousands of individuals" is simply context about the nature of Quixtar's business. It is not a commentary on the weakness of plaintiffs' claims that Quixtar is a pyramid scheme.[3] Mr. Fitzpatrick's testimony regarding the merits, therefore, must be stricken.

### B.  Testimony Regarding Legal Conclusions Is Inappropriate.

An expert is not a judge. By offering proposed expert testimony that Quixtar operates a "pyramid sales scheme" or that Quixtar's ADR Agreement "is unconscionable," plaintiffs ignore this distinction. (*See, e.g.*, Fitzpatrick Decl. ¶ 6; Hayford Decl. ¶ 52; Quixtar's Strike Mot. 3:22-4:2, 5:24-6:13.)[4]

It has been and remains the law in our Circuit that expert testimony as to "matters of law for the court's determination" is "inappropriate" and "utterly unhelpful." *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992). In *Aguilar*, this Court struck the declaration of an "avowed expert in employment application interpretation." *Ibid*. The Ninth Circuit affirmed, reasoning that conclusions about such matters of law fail the test for usefulness under Federal Rule of Evidence 702. *Ibid*. The cases cited by plaintiffs do not indicate a change in the law since *Aguilar* was decided. *See United States v. Moran*, ___ F.3d ___, 2007 WL 959896, *2 (9th Cir. Apr. 2, 2007) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law"); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (allowing expert that specifically "never testified that he had reached a legal conclusion that Defendants actually acted

---

[3] Plaintiffs' only citation for their "open door" argument involved cross-examination in a criminal prosecution where the defendant explained away past convictions on direct examination. *United States v. Perry*, 857 F.2d 1346, 1352 (9th Cir. 1988). Quixtar's brief description of its business in its opening papers does not resemble *Perry* in any way.

[4] As explained above, there is no doubt that under both Michigan and California law, unconscionability is a question of law for the Court. *See Andersons*, 166 F.3d at 323 (applying Michigan law); *PeopleSoft*, 227 F. Supp. 2d at 1120 (applying California law).

1  in bad faith"); *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (allowed
2  expert on damages, not matter of law in court's province).
3      Plaintiffs argue that Mr. Hayford's declaration is appropriate because it contests the
4  "core" legal issue in defendants' motion. It does not. Mr. Hayford's legal opinions attempting to
5  tell this court what result to reach is improper. *Dow Corning*, 335 F. 3d at 752 (affirming district
6  court's refusal to "consider legal opinions that 'attempt to tell the court what result to reach'").
7      Moreover, the substance of Mr. Hayford's legal opinions is puzzling. First, plaintiffs
8  highlight Mr. Hayford's assertion that Quixtar's confidentiality provision is "unprecedented."
9  Not so. It is virtually identical to mediation programs used by a wide range of Fortune 500
10 companies. *See* NATIONAL FRANCHISE MEDIATION PROGRAM: A DISPUTE RESOLUTION PROCESS
11 FOR FRANCHISING at 7 (March 2005), *available at*, www.cpradr.org/pdfs/5/franchise.pdf ("The
12 entire process is confidential. [T]he parties and the mediator will not disclose information
13 regarding the process, the information disclosed by the other party, the Neutral Evaluation . . . or
14 the terms of a proposed resolution"). Second, Mr. Hayford suggests that the Quixtar arbitrator
15 selection process is "highly unusual" because it "limit[s] selection to a narrow subgroup." (Oppo.
16 to Strike Mot. 2:18-19.) But Mr. Hayford fails to acknowledge that the *entire* JAMS panel,
17 including Mr. Hayford himself, is available at the request of any party. Third, Mr. Hayford
18 argues that the Quixtar ADR process is unconscionable because the detailed Quixtar Rules of
19 Conduct are not included in the Registration Agreement, but rather are incorporated by reference
20 and "not included in the document signed by the IBO." (Oppo. to Strike Mot. at 1:25.) Virtually
21 no dispute resolution agreement includes the procedural rules within the agreement itself.
22 Instead, parties routinely incorporate by reference an obligation to use specific procedures
23 contained in some other document. *See Prudential Ins. Co. v. Lai,* 42 F. 3d 1299 (9th Cir. 1994);
24 *see also* AAA Commercial Arbitration Rules, Rule 1 ("The parties shall be deemed to have made
25 these rules a part of their arbitration agreement whenever they have provided for arbitration by
26 the [AAA]"); JAMS Comprehensive Arbitration Rules, Rule 1 ("The Parties shall be deemed to
27 have made these Rules a part of their arbitration agreement whenever they have provided for
28 arbitration by JAMS under its Comprehensive Rules or for arbitration by JAMS without

specifying any particular JAMS Rules"). Mr. Hayford's opinion would have the effect of invalidating the vast majority of dispute resolution clauses. These deficiencies render Mr. Hanford's legal opinions "utterly unhelpful."

Similarly, Mr. Fitzpatrick's legal opinion that the Quixtar business model and the "tools" business are "inherently deceptive, unfair, and harmful" is improper expert testimony. *Van Ness v. Blue Cross,* 87 Cal. App. 4th 364, 376 (2001) (court decided as a matter of law from the "clear language" of the documents that defendant's disclosures were not deceptive); *Shvarts v. Budget Group,* 81 Cal. App. 4th 1153, 1160 (2000) (court decided as a matter of law that customers were not "likely to be deceived" by defendant car company's "refueling" option).

Thus both Mr. Hayford and Mr. Fitzpatrick offer a series of baseless and improper legal conclusions throughout their declarations. (Quixtar's Strike Mot. 3:22-4:2, 5:24-6:13.) While there may be cases where a stray legal conclusion is stricken from an otherwise appropriate declaration, a declaration that contains only inappropriate legal conclusions must be stricken in its entirety. *See Aguilar*, 966 F.2d at 447.

**IV.    QUALIFICATIONS.**

Given the above defects, the Court need not deliberate over the supposed qualifications of plaintiffs' proposed experts. To the extent the qualifications matter, the Court should be dubious about them, given plaintiffs' failure to disclose key information about the declarants' work history.

In particular, Mr. Hayford failed to disclose that he is employed as a mediator and arbitrator for JAMS. This casts suspicion on his conclusions. He spends nine paragraphs criticizing the unfairness of Quixtar's arbitration procedures, even though Quixtar's arbitration process is modeled in part after the JAMS rules. (Hayford Decl. ¶¶ 19-28.) This lack of forthrightness renders the already flawed declarations unreliable.

1 **V. CONCLUSION.**

2 Plaintiffs have not provided any justification for considering the Fitzpatrick and Hayford Declarations in the context of Quixtar's pending motion to dismiss or stay pursuant to Section 4. Accordingly, the Court should grant Quixtar's motion to strike.

Dated: April 25, 2007

CEDRIC C. CHAO
WILLIAM L. STERN
JAMES M. SCHURZ
MORRISON & FOERSTER LLP

JAMES R. SOBIERAJ
RALPH J. GABRIC
JULIE L. LEICHTMAN
BRINKS HOFER GILSON & LIONE

By:   /s/ William L. Stern
      William L. Stern

Attorneys for Defendant
QUIXTAR INC.