| | |
|---|---|
| 1 | Stuart H. Singer, Esq. (*Pro Hac Vice*) |
| 2 | Carlos M. Sires, Esq. (*Pro Hac Vice*)<br>Sigrid S. McCawley, Esq. (*Pro Hac Vice*) |
| 3 | BOIES, SCHILLER & FLEXNER LLP<br>401 East Las Olas Boulevard, Suite 1200 |
| 4 | Fort Lauderdale, Florida 33301<br>Telephone: (954) 356-0011 |
| 5 | Facsimile: (954) 356-0022<br>E-mail: ssinger@bsfllp.com |
| 6 | E-mail: csires@bsfllp.com |
| 7 | E-mail: smccawley@bsfllp.com<br>*Additional attorneys on following page* |
| 8 | Attorneys for Plaintiffs Jeff Pokorny and Larry Blenn |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| Jeff Pokorny, Larry Blenn, and Kenneth Busiere, on behalf of themselves and those similarly situated, | ) ) ) | **CASE NO. C 07-0201 SC** |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS OR STAY AND COMPEL ARBITRATION** |
| v. | ) ) ) | |
| Quixtar, Inc., James Ron Puryear Jr., Georgia Lee Puryear, and World Wide Group, L.L.C., Britt Worldwide L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt and Peggy Britt, | ) ) ) ) ) ) ) | <u>CLASS ACTION</u> |
| Defendants. | ) | |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

CASE NO. C 07-0201 SC       PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS OR STAY AND COMPEL ARBITRATION

Additional counsel:

David Boies, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
E-mail: dboies@bsfllp.com

David W. Shapiro, Esq.
Elizabeth Garfinkle, Esq.
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
E-mail: dshapiro@bsfllp.com
California Bar Number: 219265

Willie E. Gary, Esq. (*Pro Hac Vice*)
Maria Sperando, Esq. (*Pro Hac Vice*)
Mary Diaz, Esq. (*Pro Hac Vice*)
GARY, WILLIAMS, PARENTI, FINNEY, LEWIS, MCMANUS, WATSON & SPERANDO
221 East Osceola Street
Stuart, Florida 34994
Telephone: (772) 283-8260
Facsimile: (772) 220-3343
E-mail: weg@williegary.com
E-mail: mps@williegary.com
E-mail: mad@williegary.com

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

I.    PUBLIC INJUNCTION CLAIMS ARE NON-ARBITRABLE.................................................................2

    A.    The California Supreme Court and Other Authorities Have Held that Public Injunction Claims Are Non-Arbitrable under California Law, and that Federal Law Does Not Preempt California Law on this Issue. ...........................2

    B.    There Is No Arbitration Agreement between Quixtar and the Public, the Real Party in Interest ................................................................................................6

    C.    Public Injunction Claims Are Non-Arbitrable under General Principles of California Contract Law .......................................................................................8

CONCLUSION ................................................................................................................................9

1 **TABLE OF AUTHORITIES**

2                                                                                                            **Page**

3 **Cases**

4 *Allied-Bruce Terminix Cos. v. Dobson,*
     513 U.S. 265 (1995) ..................................................................................................... 8

5 *Ariz. State Bd. for Charter Sch. v. United States Dept. of Educ.,*
     464 F.3d 1003 (9th Cir. 2006) ..................................................................................... 4

7 *Arriaga v. Cross Country Bank,*
     163 F. Supp. 2d 1189 (S.D. Cal. 2001) .................................................................. 3, 4

*AT&T Techs., Inc. v. Commc'ns Workers,*
     475 U.S. 643 (1986) ..................................................................................................... 7

*Bayless Inv. & Trading Co. v. Chevron U.S.A., Inc.,*
     No. 93C704, 1994 WL 1841850 (D. Ariz. May 25, 1994) ........................................ 6

*Britton v. Co-op Banking Group,*
     916 F.2d 1405 (9th Cir. 1990) ..................................................................................... 7

*Broughton v. Cigna Healthplans of California,*
     988 P.2d 67 (Cal. 1999) ....................................................................................... passim

*Busiere v. Quixtar, Inc. et. al,*
     CIV. No. 07-03993 AHM(JCx) (C.D. Cal. July 30, 2007) ......................................... 7

*Clark v. First Union Sec., Inc.,*
     64 Cal. Rptr. 3d 313 (Cal. Ct. App. 2007) ................................................................. 3

*Coast Plaza Doctors Hosp. v. Blue Cross of Cal.,*
     99 Cal. Rptr. 2d 809 (2000) ........................................................................................ 3

*Cruz v. Pacificare Health Systems, Inc.,*
     66 P.3d 1157 (Cal. 2003) ..................................................................................... passim

*Daro v. Superior Court,*
     61 Cal. Rptr. 3d 716 (Cal. Ct. App. 2007) ................................................................. 6

*Davis v. O'Melveny & Myers,*
     485 F.3d 1066 (9th Cir. 2007) ............................................................................. passim

*E.E.O.C. v. Waffle House, Inc.,*
     534 U.S. 279 (2002) ..................................................................................................... 7

*Gilmore v. Interstate Johnson Lane Corp.,*
     500 U.S. 20 (1991) ....................................................................................................... 8

*Gray v. Conseco, Inc.,*
     No. SA CV 00-322DOC (EEX), 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000) ...... 3, 4

*Groom v. Health Net,*
     98 Cal. Rptr. 2d 836 (2000) ........................................................................................ 3

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

*In re First Alliance Mortg.,*
  280 B.R. 240 (C.D. Cal. 2002) ......................................................................................... 7

*Ingle v. Circuit City Stores, Inc.,*
  328 F.3d 1165 (9th Cir. 2003) ......................................................................................... 3

*Lee v. So. Cal. Univ. for Prof. Studies,*
  56 Cal. Rptr. 3d 134 (Cal. Ct. App. 2007) ...................................................................... 3

*Sierra Club v. Chevron U.S.A., Inc.,*
  834 F.2d 1517 (9th Cir. 1987) ......................................................................................... 6

*Student Pub. Interest Research Group of N.J. v. P.D. Oil & Chem. Storage, Inc.,*
  627 F. Supp. 1074 (D. N.J. 1986) .................................................................................... 6

*Ting v. AT&T,*
  319 F.3d 1126 (9th Cir. 2003) ......................................................................................... 3

*Turtle Ridge Media Group, Inc. v. Pacific Bell Directory,*
  44 Cal. Rptr. 3d 817 (Cal. Ct. App. 2006) ...................................................................... 3

*Wagner Const. Co. v. Pacific Mechanical Corp.,*
  157 P.3d 1029 (Cal. 2007) ............................................................................................... 3

*Zavala v. Scott Bros. Dairy, Inc.,*
  49 Cal. Rptr. 3d 503 (Cal. Ct. App. 2006) .................................................................. 2, 4

**Statutes**

9 U.S.C. § 1 ............................................................................................................................ 2
9 U.S.C. § 2 ............................................................................................................................ 8
Cal. Bus. & Prof. Code § 17200 ...................................................................................... 1, 3
Cal. Bus. & Prof. Code §§ 17203-04 ................................................................................... 6
Cal. Bus. & Prof. Code § 17204 ........................................................................................... 6
Cal. Bus. & Prof. Code § 17500 ........................................................................................... 1
Cal. Civ. Code § 1668 ........................................................................................................... 8
Cal. Civ. Code § 3513 ........................................................................................................... 8

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

iii

CASE NO. C 07-0201 SC    PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS OR STAY AND COMPEL ARBITRATION

# INTRODUCTION

Plaintiffs Jeff Pokorny, Larry Blenn, and Kenneth Busiere ("Plaintiffs") file this memorandum, in accordance with the Court's Order of September 19, 2007, in support of their position that their private attorney general claims for a public injunction (Count Six and Count Eight of the First Amended Complaint) are not subject to mandatory conciliation and arbitration.

The parties have already briefed the arbitrability of the remaining claims and the Court has that matter under submission. If the Court agrees with Plaintiffs that the Quixtar conciliation/arbitration rules are unconscionable and unenforceable and that Quixtar's motion to stay or dismiss should be denied,[1] then the issue discussed in this brief is moot. However, even if the claims set forth in the original complaint were subject to some conciliation or arbitration requirement, Plaintiffs' claims for a public injunction in Count Six and Count Eight of the First Amended Complaint are non-arbitrable and must remain with this Court.[2]

These private attorney general claims, seeking only public injunctive relief under California Business and Professions Code sections 17200 and 17500 *et seq.* (hereinafter "Unfair Competition Law"), were first brought by Plaintiff Kenneth Busiere in a state court suit filed against Quixtar and other defendants. Defendants removed the case to federal court in the Central District of California and then asked that it be dismissed as duplicative of this suit. The Honorable Judge Matz agreed and dismissed Mr. Busiere's suit without prejudice.[3] Respecting Judge Matz's decision, Mr. Busiere opted to join as a plaintiff in this case and to refile his public injunction claims in the First Amended Complaint. The original Plaintiffs, Mr. Pokorny and Mr. Blenn, have amended their complaint to join with Mr. Busiere in asserting the public injunction claims (Count Six and Count Eight). However, Mr. Busiere has not joined as a

---

[1] *See, e.g.*, the Ninth Circuit's recent decision in *Davis v. O'Melveny & Myers,* 485 F.3d 1066 (9th Cir. 2007), which invalidated as unconscionable a law firm's arbitration program that was far less onerous than the Quixtar scheme at issue here.

[2] A "public injunction" is a remedy, "the primary purpose and effect" of which "is not to compensate for an individual wrong but to prohibit and enjoin conduct injurious to the public." *Broughton v. Cigna Healthplans of Cal.*, 988 P.2d 67, 74 (Cal. 1999).

[3] Quixtar filed a copy (Doc. # 91) of Judge Matz's opinion into the record of this case on August 2, 2007.

plaintiff in the original claims because, unlike Mr. Pokorny and Mr. Blenn, he does not seek damages.

With respect to the public injunction claims, it is undisputed that the California Supreme Court, California appellate courts, and Federal courts have all squarely held that such claims are *not* subject to arbitration as a matter of California law, and that this California law is *not* preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or any other federal law. Moreover, because a private attorney general action is for the benefit of the public - and the public has not signed an arbitration agreement with Quixtar - its injunctive relief action is not subject to mandatory arbitration. Finally, the Quixtar arbitration agreement is unenforceable as a matter of public policy where it operates to prevent the enforcement of public law.[4]

## I. PUBLIC INJUNCTION CLAIMS ARE NON-ARBITRABLE

### A. The California Supreme Court and Other Authorities Have Held that Public Injunction Claims Are Non-Arbitrable under California Law, and that Federal Law Does Not Preempt California Law on this Issue.

In *Broughton v. Cigna Healthplans of California,* 988 P.2d 67, 78-79 (Cal. 1999), the California Supreme Court held that public injunction actions brought under the state's Consumer Legal Remedies Act are non-arbitrable. The California Supreme Court extended the *Broughton* rule in *Cruz v. Pacificare Health Systems, Inc.,* 66 P.3d 1157 (Cal. 2003) to cover public injunction actions, like that at issue here, which are brought under California's Unfair Competition Law. Under these cases, the settled rule in California is that "requests for injunctive relief designed to benefit the public present[ ] a narrow exception to the rule that the [FAA] requires state courts to honor arbitration agreements." *Id.* at 1162.

California courts have routinely followed the *Broughton – Cruz* rule for years, and there is no doubt that, if Mr. Busiere's case had remained in state court, he would not have been compelled to arbitrate his public injunction claims. *See, e.g., Zavala v. Scott Bros. Dairy, Inc.*,

---

[4] This Court need not decide whether California's law that public injunction claims are non-arbitrable is preempted should it find that the public has not entered into an arbitration agreement with Quixtar or that the Quixtar arbitration agreement violates public policy.

49 Cal. Rptr. 3d 503, 510 (Cal. Ct. App. 2006) ("Certainly, plaintiffs' injunctive relief claim under the unfair business practices act…is not arbitrable.") (citing *Cruz*, 66 P.3d at 1165); *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.,* 99 Cal. Rptr. 2d 809, 819 (2000); *Groom v. Health Net,* 98 Cal. Rptr. 2d 836, 843 (2000).[5]

The *Broughton – Cruz* rule was approved without hesitation by the federal court in *Gray v. Conseco, Inc.,* No. SA CV 00-322DOC (EEX), 2000 WL 1480273, at *8 (C.D. Cal. Sept. 29, 2000). The *Gray* court discussed the rule at length and concluded that "[a]lthough these California cases are not binding on this Court, the Court finds their reasoning persuasive and hereby adopts it. Therefore, in so far as the asserted § 17200 claim seeks equitable relief, it is not arbitrable." *Id.*

Moreover, in finding similar injunction claims brought under the Unfair Competition Law to be non-arbitrable, the Ninth Circuit very recently cited the *Broughton – Cruz* rule with approval: "California law provides that certain 'public injunctions' are incompatible with arbitration (and that such a holding is consistent with the FAA). Actions seeking such injunctions cannot be subject to arbitration even under a valid arbitration clause." *Davis v. O'Melveny & Myers,* 485 F.3d 1066, 1080 (9th Cir. 2007).

Quixtar may argue that all of the above-cited authorities are wrong and that this Court should instead follow *Arriaga v. Cross Country Bank,* 163 F. Supp. 2d 1189 (S.D. Cal. 2001). The *Arriaga* court held that the arbitration clause at issue was neither procedurally nor substantively unconscionable. *Id.* at 1194-95. That court's narrow view of unconscionability was later rejected emphatically by the Ninth Circuit in cases such as *Ting v. AT&T,* 319 F.3d 1126, 1150 n.14 (9th Cir. 2003), and *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1176 n.15 (9th Cir. 2003). After reaching its incorrect conclusion on unconscionability, the *Arriaga* court went on to conclude that even the public injunction claims at issue there should be

---

[5] *See also Wagner Const. Co. v. Pacific Mechanical Corp.*, 157 P.3d 1029, 1032 n.4 (Cal. 2007); *Clark v. First Union Sec., Inc.*, 64 Cal. Rptr. 3d 313, 318 n.6 (Cal. Ct. App. 2007); *Lee v. So. Cal. Univ. for Prof. Studies*, 56 Cal. Rptr. 3d 134, 138 (Cal. Ct. App. 2007); *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory*, 44 Cal. Rptr. 3d 817, 821 n.7 (Cal. Ct. App. 2006).

arbitrated. *Arriaga,* 163 F. Supp. 2d at 1197-1200. The *Arriaga* court agreed with the *Broughton*[6] court that public injunction actions brought under the Unfair Competition Law are non-arbitrable under California law, but, unlike the other courts, it concluded that the FAA nonetheless mandated arbitration of those actions. *Id.*

Because the Ninth Circuit rejected *Arriaga*'s threshold premise that the arbitration clause was not unconscionable, it had no reason to consider *Arriaga*'s secondary conclusion on the alleged preemption of the *Broughton – Cruz* rule. However, the *Arriaga* court's analysis is clearly contrary to Ninth Circuit law and should not be followed. Rather, this Court should follow *Broughton, Cruz*, *Davis, Gray, Zavala* and the host of other courts finding that the FAA does not mandate arbitration of public injunction claims.

Quixtar's position would require the Court to interpret the FAA as demanding an impossibility: the arbitration of a claim that is non-arbitrable by its very nature. To conclude that Congress intended such a result is illogical. *See Ariz. State Bd. for Charter Sch. v. United States Dept. of Educ.,* 464 F.3d 1003, 1008 (9th Cir. 2006) ("[S]tatutory interpretations which would produce absurd results are to be avoided.").

As explained at length in *Broughton* and *Cruz*, there are undeniable "institutional shortcomings [related to] private arbitration in the field of public injunctions." *Broughton*, 988 P.2d at 77. For example, (1) unless the litigants agree otherwise, arbitral decisions lack collateral estoppel effect, thus making public injunctions reached through arbitration virtually unenforceable; (2) the modification or vacation of a public injunction granted by an arbitrator requires a prohibitively cumbersome process; (3) arbitrators lack judges' institutional capacity to make ongoing reassessments of the balance between public and private interests; and (4) procedural complexities preclude the ongoing supervision of a public injunction that has been reached through arbitration. *Id.*; *Cruz*, 66 P.3d at 1162.[7]

---

[6] *Arriaga* was decided before *Cruz*, so the former did not have occasion to consider the latter and its extension to the Unfair Competition Law.

[7] On these final points, the *Broughton* court explained that "[e]ven those courts that have generally affirmed the ability of arbitrators to issue injunctions acknowledge that the modification or vacation of such injunctions involves the cumbersome process of initiating a new arbitration proceeding…While these procedures may be acceptable when all that is at stake is a private dispute by parties who voluntarily embarked on arbitration aware of

Thus, as a general matter, to compel arbitration of a public injunction claim is to force a square peg into a round hole. But that hole is even smaller in this case, where adherence to Quixtar's arbitration rules would make it impossible for Mr. Busiere to vindicate the public's interest under California's Unfair Competition Law. For instance, Rule 11 of Quixtar's Rules of Conduct includes a one-sided confidentiality provision which gags IBOs, but not Quixtar, from *ever* discussing even potential claims with *anyone* "not directly involved in the dispute resolution process."[8] The gag order takes hold from the very moment that the claimant "becomes aware of a potential Rule violation or of a claim against another IBO or the Corporation." *Id.* Furthermore, a successful plaintiff in arbitration is prohibited from *ever* disclosing the substance of the claim and the "terms or amount of any arbitration award." *Id.* Rule 11.5.31. How could there be an effective public injunction where the public is not permitted to know of its terms or its very existence?

Congress could not have possibly intended this result. As the *Broughton* court correctly observed, "[nothing] in the legislative history of the FAA suggest[s] that Congress contemplated 'public injunction' arbitration within the universe of arbitration agreements it was attempting to enforce.… It is doubtful Congress would have envisioned the extension of the FAA to enforce arbitral jurisdiction over a public injunction." *Broughton*, 988 P.2d at 79.

Here, Plaintiffs in Count Six and Count Eight step into the shoes of the public, representing it as private attorneys general. They seek an injunction that would protect their fellow citizens from the type of harm from which they have already suffered. The FAA does not require that such an action be shoehorned into Quixtar's arbitral forum.

---

the trade-offs to be made, in the case of a public injunction, the situation is far more problematic. The continuing jurisdiction of the superior court over public injunctions, and its ongoing capacity to reassess the balance between the public interest and private rights as changing circumstances dictate, are important to ensuring the efficacy of such injunctions." *Broughton*, 988 P.2d at 77 (citations omitted).

[8] Quixtar filed a copy of the Rules of Conduct as Exhibit 2 to the 3/2/07 Declaration of Gary D. Vanderven (Doc. # 30) in Support of Defendant Quixtar's Motion to Dismiss or Stay (Doc. #28). Rule 11 governs Quixtar's ADR process.

**B.     There Is No Arbitration Agreement between Quixtar and the Public, the Real Party in Interest.**

In the consumer protection context, California has chosen to delegate law enforcement authority to the attorney general, district attorneys, city prosecutors *and* to all private individuals who have "suffered injury in fact and [have] lost money or property" as a result of defendants' wrongdoing. Cal. Bus. & Prof. Code §§ 17203-04. Under these provisions, "no compelling reason exists to treat a 'private attorney general' any differently from a 'public attorney general.'" *Bayless Inv. & Trading Co. v. Chevron U.S.A., Inc.*, No. 93C704, 1994 WL 1841850, at *5 (D. Ariz. May 25, 1994) (citation omitted).[9]

In exercising their statutorily delegated law enforcement authority, Plaintiffs serve as bona fide attorneys general; they represent *the public*. *See, e.g., Cruz*, 66 P.3d at 1164-65 ("[I]njunctive relief [under California's Unfair Competition Law] is clearly for the benefit of…consumers and the general public.… [I]t is designed to prevent further harm to the public at large rather than to redress or prevent injury to the plaintiff."); *Broughton*, 988 P.2d at 76 ("Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered."); *see also, e.g., Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987) ("Citizen enforcement actions greatly resemble government enforcement.…[C]itizen plaintiffs effectively stand in the shoes of the [government]."); *Student Pub. Interest Research Group of N.J. v. P.D. Oil & Chem. Storage, Inc.*, 627 F. Supp. 1074, 1085 (D. N.J. 1986) ("As citizen

---

[9] Proposition 64, a 2004 amendment to California's constitution, did not change this conclusion. Before passage of that measure, *anyone* could bring an action as a private attorney general under California's Unfair Competition Law. Proposition 64 simply amended section 17204's standing requirement so that only those persons who "suffered injury in fact and…lost money or property as a result of unfair competition" could do so. Cal. Bus. & Prof. Code § 17204; *Daro v. Superior Court*, 61 Cal. Rptr. 3d 716, 728 (Cal. Ct. App. 2007) (After Proposition 64, "a private person has no standing under the UCL *unless* that person can establish that the injury suffered and the loss of property or money resulted from conduct that fits within one of the categories of 'unfair competition.'") (emphasis added). Plaintiffs clearly satisfy this new standing requirement, and are thus authorized to sue in a representative capacity just like a public attorney.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

plaintiffs stand in the shoes of the government 'as private attorneys general'… [they] should not have fewer rights to enforce the statute than government agencies.").[10]

The public has *not* entered into an arbitration agreement with Quixtar. As such, Quixtar's arbitration procedures simply cannot be imposed on it.[11] *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation omitted); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1413 (9th Cir. 1990).

Indeed, this is an easier case than *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002), where the Court held that public attorneys who were tasked with enforcement of antidiscrimination laws, and who represented both the public interest and the claimants initiating the actions, were not bound to arbitrate those actions, even where the claimant had a valid arbitration agreement with the defendant employer. Likewise, here, that an IBO has an arbitration agreement (albeit a suspect one) with Quixtar has no bearing on his ability to bring a private attorney general action seeking a court injunction on behalf of the public. As the *Cruz* court explained, "*Waffle House* suggests the Supreme Court's agreement that a party acting *entirely* on behalf of the public…when he pursues a public injunction acts beyond the scope of any arbitration agreement." *Cruz*, 66 P.3d at 1167 n.6 (emphasis in original); *cf. In re First Alliance Mortg.*, 280 B.R. 240, 245 (C.D. Cal. 2002) (defendant may not "compel a government regulatory agency to arbitrate its claims"). The public has not agreed to arbitrate with Quixtar, and thus, it cannot be turned away from this Court in the name of an arbitration agreement to which it is not a party.

---

[10] Even Quixtar has advanced the argument that the absent class members, not the named representatives, are the relevant "party" in interest. *Busiere v. Quixtar, Inc. et. al*, CIV. No. 07-03993 AHM(JCx) at p.4 (C.D. Cal. July 30, 2007) (Brief in Support of Motion to Dismiss or Transfer; analyzing comity issues).

[11] Consider, for example, a situation in which a member of the California Attorney General's staff is tasked with seeking an injunction to protect *the public* from a company's conduct, which has been determined by the Attorney General to constitute a pyramid scheme. Assume further that the defendant company has an agreement, which includes an arbitration clause, to provide services to the State of California. Clearly, this Court would not compel the state's attorney to take the *public's* action to stop the company from its unlawful conduct to an arbitrator.

### C. Public Injunction Claims Are Non-Arbitrable under General Principles of California Contract Law.

The FAA provides that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Whether grounds exist for revocation is a question of state contract law. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) (states may invalidate an arbitration clause "under general contract law principles"). Under California's general contract law principles, any contractual provision that potentially interferes with the enforcement of public laws is invalid as contrary to public policy. *See, e.g.,* Cal. Civ. Code § 3513 ("[A] law established for a public reason cannot be contravened by a private agreement."); Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.").

Compelling arbitration of a public injunction action brought under the Unfair Competition Law is tantamount to prohibiting the bringing of that action. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1082 (9th Cir. 2007). The Quixtar arbitration agreement *forbids* the very action that the statute *authorizes*. Quixtar cannot use a private agreement to contravene the public law in this manner; a violation of public policy could not be more obvious.

The public policy analysis to be undertaken here is identical to that which was applied in *Davis*. There, the Court of Appeals for the Ninth Circuit first explained that "an arbitration agreement may not function so as to require [plaintiffs] to waive potential recovery for substantive statutory rights…established 'for a public reason'….That is, although such rights are arbitrable, an arbitration forum must allow for the pursuit of the legal rights and remedies provided by such statutes." *Id.* (quoting *Gilmore v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). Then, recognizing that "California law provides that certain 'public injunctions' are incompatible with arbitration," the Ninth Circuit held that an arbitration agreement "*may not prohibit – i.e., require arbitration of – judicial actions seeking such public injunctive relief*. Here, at least two counts of [the plaintiff's] complaint seek, among other

things, such public injunctive relief….To that extent, at minimum, the [arbitration agreement] is unenforceable." *Id*. (citing *Broughton*, 988 P.2d at 76-80; *Cruz*, 66 P.3d at 1164-65) (emphasis added). In clear violation of that rule, Quixtar's arbitration agreement precludes Plaintiffs from pursuing the public injunction remedy provided by the Unfair Competition Law. Thus, to that extent, at minimum, it is unenforceable.

## CONCLUSION

For the reasons set forth above, Plaintiffs should be permitted to proceed with their public injunction claims in this Court, and Quixtar's effort to send these claims to arbitration should be rejected.

Dated: October 4, 2007                     Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP


By: /s/ Sigrid S. McCawley
Sigrid S. McCawley
Attorneys for Plaintiffs