# Exhibit D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFF POKORNY, LARRY BLENN and KENNETH BUSIERE on behalf of themselves and those similarly situated,<br><br>            Plaintiffs,<br><br>   v.<br><br>QUIXTAR INC., *et al.*,<br><br>            Defendants. | Case No.   C 07-00201 SC<br><br>**[PROPOSED] CONSENT JUDGMENT AND DISMISSAL OF ALL CLAIMS WITH PREJUDICE** |

The Court, having considered: (1) the Class Action Settlement Agreement, dated November __, 2010 ("Settlement Agreement"), including all exhibits thereto; and (2) the Joint Motion for Entry of Consent Judgment and Dismissal of all Claims with Prejudice filed by Quixtar and Plaintiffs on _____ __, 2011 (the "Joint Motion"), and all of the supporting material submitted in connection with that Joint Motion; and having held a Settlement Hearing on _____ __, 2011,[1] and having considered the record of those proceedings, the representations, arguments, and recommendations of counsel for the moving parties, and the requirements of law, the Court hereby ORDERS, ADJUDGES, and DECREES that:

1. The Court has jurisdiction over the subject matter and parties to this proceeding, including all members of the Settlement Class, pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this District.

3. Quixtar is ordered, throughout the term of this Consent Judgment, except where a different term is specified, as follows:

    a. Quixtar shall modify its agreements with its Independent Business Owners ("IBOs") to provide not less than a 90-day refund period for registration fees. The 90-day refund period for an IBO's registration fees will begin from the time that Quixtar receives the registration fee from the IBO.

    b. The application form that new IBOs are required to execute to register as a Quixtar IBO shall disclose the following information: (a) that income figures provided to potential IBOs represent gross, not net income; (b) the availability of training for IBOs in marketing and merchandising; (c) Quixtar's refund policies for products purchased by IBOs; (d) the availability of a retail product price list schedule accessible on-line; and (e) that product purchases and purchases of Business Support Materials ("BSM") are optional.[2]

---

[1] At the Settlement Hearing, the Court also heard Class Counsel's Application for an Award of Attorneys' Fees, Reimbursement of Expenses, and Named Plaintiff's Compensation. The Court rules on that Application in a separate order.

[2] BSM are motivational and/or training aids in the form of books, magazines, other printed material, audio taps, video tapes, software, internet services, CDs, other electronic media, rallies, meetings, functions, seminars, and other services and materials.

1    c.   Quixtar shall comply with state and federal law by the following: (1) not compensating any IBO primarily for the act of recruiting or registering other IBOs; and (2) not requiring any IBO to purchase or maintain any specified amount of inventory.  In addition, Quixtar will emphasize consumer sales by conditioning bonus payments and other incentives, as appropriate, on IBOs achieving reported levels of sales to end-user consumers.

d.   Quixtar will maintain for twenty-four months from the Effective Date or from June 30, 2011, whichever occurs first, a price reduction that averages at least 5% from January 2007 pricing levels to distributors across Quixtar-branded products (existing SKUs, excluding freight).  Because the reduction will be measured on an average reduction basis, this provision allows for price increases on certain products to account for increases in the cost of sales and competitive conditions, so long as, notwithstanding any such increases for particular products, the average price for the group is at least 5% lower than the January 2007 price.

e.   Quixtar will increase its annual IBO training budget for product, product merchandising, and business skills by an average of $7 million or more over 2007 levels for twenty-four months from the Effective Date or from June 30, 2011, whichever occurs first, such training to be provided free to IBOs.

f.   Quixtar will maintain and enforce quality control over BSMs that are: (1) sold or distributed by Quixtar IBOs and Quixtar IBO affiliated persons that, during the class period, sold BSM to IBO's ("BSM Companies"); and (2) sold or distributed in a manner suggesting sponsorship, affiliation, or approval by Quixtar.  Quality control shall provide that the content of such BSMs complies with state and federal law.  This Subsection applies to BSM Companies affiliated with the Quixtar business.  Quixtar shall not be liable for contempt of this Consent Judgment based on good faith determinations of what constitutes sale or distribution "in a manner suggesting sponsorship, affiliation, or approval by Quixtar" of non-Quixtar authorized BSMs.

g.   Quixtar's compliance with the provisions in Subparagraphs 3(a)-(f) shall be subject to monitoring through annual meetings between Quixtar and attorneys from Boies, Schiller, and Flexner, LLP and Gary, Williams, Finney, Lewis, Watson & Sperando (collectively,

"Class Counsel"). Class Counsel shall be provided with unresolved complaints from IBOs alleging violation of the terms of this Consent Judgment. Such unresolved complaints shall be treated as confidential, except as necessary to enforce this Consent Judgment in a court of law.

        h.        The provisions in Subparagraphs 11(a)-(g) are binding on Quixtar IBOs, BSM Companies, and other Persons who are Released Parties or who are served with this Consent Judgment pursuant to Fed. R. Civ. P. 65.

        4.        Upon the Effective Date, by operation of this Consent Judgment, the Releasing Parties shall release and forever discharge all Released Claims with respect to the Released Parties. The Releasing Parties are barred from prosecuting any proceeding against any of the Released Parties with respect to any Released Claim. The terms "Releasing Parties," "Released Parties," and "Released Claim" are defined as follows:

        a.        "Releasing Party" means: (1) all Identified BSM Companies; and (2) all members of the Settlement Class and all of their present or past spouses, heirs, executors, estates, administrators, predecessors, successors, and assigns. "Releasing Party" does not include members of the Settlement Class who opt out of the Settlement Agreement. "Releasing Party" does not include Quixtar, except that Quixtar shall release any claims brought and that could have been brought against Jeff Pokorny, Larry Blenn, and Kenneth Busiere in their individual capacities.

        b.        "Released Parties" means: (1) Quixtar; (2) the Identified BSM Companies (however, BSM Companies who are identified in the Second Amended Complaint but who do not sign this Settlement Agreement are not Released Parties even if they fall into another category listed in this section); (3) all current or former IBOs who, at any time during the Class Period, sold or marketed Quixtar products or BSM or who recruited or attempted to recruit other Persons to register as an IBO (except for the principal owners of the BSM Companies who are identified in the Second Amended Complaint but who do not sign this Settlement Agreement); (4) all BSM Companies affiliated with the Quixtar business at any time during the Class Period and/or other legal entities through which a current or former IBO, at any time during the Class Period, sold or marketed Quixtar products or BSM or recruited or attempted to recruit other Persons to register as

an IBO (except for BSM Companies who are identified in the Second Amended Complaint but who do not sign this Settlement Agreement); and (5) any and all of the present or past heirs, executors, estates, administrators, predecessors, successors, parents, subsidiaries, affiliates, directors, managing directors, officers, partners, principals, members, shareholders, legal representatives, and assigns of the Persons identified above in this Paragraph.

    c. "Released Claims" means all claims (including "Unknown Claims" as defined below), demands, rights, liabilities, suits, or causes of action as of the date of the final approval of the Settlement Agreement that (1) were or could have been asserted in the complaints filed in this Action against Quixtar, any of its current or former IBOs, or against any BSM Company or its principal owners, or (2) that are based upon, arise out of, or reasonably relate to (i) the purchase or sale or offer of sale of any Quixtar product during the Class Period other than warranty claims or other claims for defective products, (ii) the purchase or sale or offer of sale of any BSM during the Class Period, (iii) the payment of monies to Quixtar to register as a Quixtar IBO during the Class Period, (iv) the IBOs' contract with Quixtar, including the Quixtar Independent Business Owner Compensation Plan, the Biz Reference Guide, and the Rules of Conduct, (v) Quixtar's and the BSM Companies' business operations during the Class Period, (vi) any actual or potential recruitment of any Quixtar IBO during the Class Period, (vii) any allegation that, during the Class Period, Quixtar and/or the BSM Companies operated, separately or together, any type of illegal or fraudulent scheme, and/or (viii) any of the facts, schemes, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions, or failures to act that have been or could have been alleged or asserted in the Action. "Released Claims" do not include claims that may exist as of the Effective Date that arise from the following: (a) The calculation of bonuses or payments for the sale of Quixtar Products owed by Quixtar or other Released Party to any individual IBO under Quixtar's agreements with the IBO, (b) an allegation that a Quixtar product was defective or delivered improperly, (c) claims of workplace discrimination or sexual harassment; (d) claims relating to any health care or pension plan; or (e) a dispute between Settlement Class Members and Released Parties that is entirely

unrelated to any of the claims, issues, or factual allegations raised in any of the complaints in the Action.

For purposes of this Consent Judgment, "Unknown Claims" means claims that could have been raised in this Action and that any Releasing Party does not know or suspect to exist, which, if known by it, might affect its agreement to release the Released Parties or the Released Claims or might affect its decision to agree, object or not to object to the Settlement. Upon the Effective Date, all Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Released Claims encompass, without limitation, claims that are accrued or unaccrued, fixed or contingent, direct, individual or representative, asserted by or on behalf of unnamed Settlement Class Members in a putative or certified class action, in law or in equity, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaints in this Action. By way of illustration, Released Claims include, without limitation, claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, the Securities Act of 1933 and the Securities and Exchange Act of 1934 and any other law that concerns the sale of securities, any state franchise relations laws, any state franchise investment laws, any state business opportunity plan laws, any state seller-assisted marketing plan laws, Federal Trade Commission's Franchise Disclosure Rule, 16 C.F.R. Part 436, the Federal Trade Commission's Business Opportunity Disclosure Rule, 16 C.F.R. Part 437, any mail fraud or wire fraud statutes, any unfair and deceptive acts and practices statutes, such as, California Bus. & Prof. Code §§

17200 and 17500, *et seq.*, any false advertising laws, and any statutes regarding the operation of fraudulent schemes (including "chain distributor schemes" or "endless chain schemes") such as California Penal Code § 327. Released Claims also include, without limitation, claims for fraud, deceit, negligent misrepresentation, negligence, gross negligence, professional negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, breach of fiduciary duty, fiduciary abuse, mismanagement, breach of contract, breach of implied contract, promissory estoppel, unjust enrichment, breach of the covenant of good faith and fair dealing, negligent supervision, declaratory relief, indemnification, defense, or contribution.

5. [Placeholder: Following the Settlement Hearing, this Subsection will provide a discussion of whether the Settlement was reached in "good faith," for purposes of determining whether joint tortfeasors should be barred from asserting contribution or indemnification claims against Quixtar or the Identified BSM Companies].

6. The Court shall retain exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance of Quixtar and Plaintiffs with respect to the Settlement Agreement or any challenges to the validity, interpretation, administration, enforcement, or enforceability of this Consent Judgment or the Settlement Agreement.

7. This Consent Judgment shall not be construed or used as an admission, concession, or declaration by or against Quixtar or any of the Identified BSM Companies of any finding of fault, wrongdoing, or liability. This Consent Judgment shall not be construed or used as a waiver or admission as to any arguments or defenses that might be available to Quixtar or any of the Identified BSM Companies, including any objections to class certification in the event that the Settlement is terminated.

8. With respect to any continuing duties, rights, obligations, or prohibitions set forth herein, this Consent Judgment shall expire four years after the date that it is entered by the Court, except for the provisions under Paragraph 4 (Releases), Paragraph 6 (Bar Order), and Paragraph 8 (Use of the Consent Judgment). The running of the four-year term of the Consent Judgment shall be tolled during any stay of the Consent Judgment.

1       9.     Final Judgment in this action is hereby entered. All claims asserted by Plaintiffs are dismissed on the merits with prejudice. This dismissal shall have no impact on the other provisions of this Consent Judgment or of this Court's prior rulings in this Action, including this Court's Order Denying Quixtar's Motion to Dismiss or Compel Arbitration, as affirmed by the Ninth Circuit Court of Appeals in *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010).

      IT IS SO ORDERED this ___ of _____, 2010.

                                                        Hon. Samuel Conti
                                                  United States District Judge