Stuart H. Singer, Esq. (*Pro Hac Vice*)
Carlos M. Sires, Esq. (*Pro Hac Vice*)
Sigrid S. McCawley, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com
E-mail: csires@bsfllp.com
E-mail: smccawley@bsfllp.com

David Boies, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
E-mail: dboies@bsfllp.com

David W. Shapiro (CA SBN 219265)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
E-mail: dshapiro@bsfllp.com

Willie E. Gary, Esq. (*Pro Hac Vice*)
Maria Sperando, Esq. (*Pro Hac Vice*)
GARY, WILLIAMS, FINNEY, LEWIS,
WATSON & SPERANDO
221 East Osceola Street
Stuart, Florida 34994
Telephone: (772) 283-8260
Facsimile: (772) 220-3343
E-mail: weg@williegary.com
E-mail: mps@williegary.com
E-mail: mad@williegary.com

*Attorneys for Plaintiffs Jeff Pokorny, Larry Blenn and Kenneth Busiere*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Jeff Pokorny, Larry Blenn, and Kenneth Busiere, on behalf of themselves and those similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>Quixtar, Inc., James Ron Puryear Jr., Georgia Lee Puryear, and World Wide Group, L.L.C., Britt Worldwide L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt and Peggy Britt,<br><br>   Defendants. | **CASE NO. C 07-0201 SC**<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND FINDING OF GOOD FAITH SETTLEMENT** |

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

I.    Background ...................................................................................................................1

    A.    The Litigation .....................................................................................................2

    B.    The Settlement Agreement ..................................................................................3

        1.    Economic Relief ....................................................................................3

        2.    Injunctive Relief ....................................................................................4

        3.    Enforcement and Releaess ....................................................................6

        4.    Fees and Costs ......................................................................................6

II.   Discussion ...................................................................................................................7

    A.    The Settlement Class Should Be Certified .........................................................7

        1.    Rule 23(a)'s Requirements Are Satisfied. ............................................7

            a.    Numerosity ...............................................................................8

            b.    Commonality ............................................................................8

            c.    Typicality .................................................................................9

            d.    Adequacy ..................................................................................9

        2.    Rule 23(b)'s Requirements Are Satisfied. ..........................................10

    B.    The Court Should Appoint Plaintiffs' Counsel As Class Counsel. ...................11

    C.    The Settlement Agreement Should Preliminarily Be Approved. .......................12

    D.    The Proposed Notice Should Be Sent To The Class. ........................................14

    E.    The Court Should Schedule A Fairness Haring. ...............................................15

    F.    Plaintiffs Should Be Granted Leave To File A Second Amended Complaint. ...15

III.  Conclusion ................................................................................................................16

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# TABLE OF AUTHORITIES

## Cases

*Amchem Prod., Inc. v. Windsor,*
521 U.S. 591 (1997) ...................................................................................7, 10

*Celano v. Marriott Int'l, Inc.,*
242 F.R.D. 544 (N.D. Cal. 2007) ..................................................................8

*Chun-Hoon v. McKee Foods Corp.,*
2009 WL 3349549 (N.D. Cal. 2009) ...........................................................13

*Churchill Vill., LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) .......................................................................14

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) .....................................................................14

*Dominguez v. Schwarzenegger, --- F.R.D. ,*
---, 2010 WL 2348659 (N.D. Cal. 2010) .......................................................8

*Dukes v. Wal-Mart Stores, Inc.,*
603 F.3d 571 (9th Cir. 2010) .....................................................................8, 9

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) .....................................................................................14

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980) ....................................................................13

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .................................................................8, 14

*In re Apple & ATTM Antitrust Litig.,*
2010 WL 351965 (N.D. Cal. 2010) ...............................................................8

*In re Matter of Johnson,*
80 B.R. 791 (E.D. Va. 1987) .........................................................................9

*In re Portal Software, Inc. Sec. Litig.,*
2007 WL 1991529 (N.D. Cal. 2007) ...........................................................13

*In re Tableware Antitrust Litig.,*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
267 F.R.D. 583 (N.D. Cal. 2010) ..................................................................8

*In re UTStarcom, Inc. Sec. Litig.,*
2010 WL 1945737 (N.D. Cal. 2010) .............................................................8

*Morongo Band of Mission Indians v. Rose,*
893 F.2d 1074 (9th Cir. 1990) .....................................................................15

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

ii

CASE NO. C 07-0201 SC   PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT AND FINDING OF GOOD FAITH SETTLEMENT

*Nguyen v. FundAmerica, Inc.*,
   1990 WL 165251 (N.D. Cal. 1990) ............................................................................................10

*Perez v. Safety-Kleen Systems, Inc.*,
   253 F.R.D. 508 (N.D. Cal. 2008) .............................................................................................11

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) .................................................................................................1, 2

*Roberts v. Heim*,
   1989 WL 80403 (N.D. Cal. 1989) ..............................................................................................9

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ....................................................................................................15

*Sullivan v. Chase Inv. Servs., Inc.*,
   79 F.R.D. 246 (N.D. Cal. 1978) .................................................................................................8

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...............................................................................................8, 9

**Rules**

Fed. R. Civ. P. 15(a)(2) ..............................................................................................................15

Fed. R. Civ. P. 23 ....................................................................................................................1, 9

Fed. R. Civ. P. 23(a) ..............................................................................................................7, 10

Fed. R. Civ. P. 23(a)(4) ...............................................................................................................9

Fed. R. Civ. P. 23(b) .................................................................................................................10

Fed. R. Civ. P. 23(b)(1) .............................................................................................................10

Fed. R. Civ. P. 23(b)(2) .............................................................................................................10

Fed. R. Civ. P. 23(b)(3) ...................................................................................................10, 11, 14

Fed. R. Civ. P. 23(b)(3)(A) .......................................................................................................10

Fed. R. Civ. P. 23(b)(3)(B) .......................................................................................................10

Fed. R. Civ. P. 23(b)(3)(C) .......................................................................................................10

Fed. R. Civ. P. 23(b)(3)(D) .......................................................................................................10

Fed. R. Civ. P. 23(c)(2) .............................................................................................................14

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................14, 15

Fed. R. Civ. P. 23(e) ...................................................................................................................7

Fed. R. Civ. P. 23(e)(1) .............................................................................................................14

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

Fed. R. Civ. P. 23(e)(2) .................................................................................................15

Rule 23(g)(1)(B).....................................................................................................11, 12

**Statutes**

28 U.S.C. §1961 ..............................................................................................................2

**Other Authorities**

7B Fed. Prac. & Proc. Civ. § 1797.5 (3d ed.) ...............................................................13

CASE NO. C 07-0201 SC       PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT AND FINDING OF GOOD FAITH SETTLEMENT

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

## I. Background

This lawsuit was filed in January 2007 to address abuses in the operation of Quixtar's multi-level marketing business. *See* D.E. 1. These abuses included structural incentives toward recruitment of other distributors rather than merchandizing; misleading statements regarding Individual Business Owners' (IBOs) business prospects; overpriced goods that were difficult to market to retail consumers; and inducements for IBOs to spend substantial amounts of money on motivational books and tapes. *Id.* More than three years of litigation ensued over the fairness and enforceability of Quixtar's then-extant alternative dispute resolution procedures. This Court found those conciliation and arbitration procedures to be unconscionably slanted in Quixtar's favor and held them unenforceable. D.E. 115. In a decision released on April 20, 2010, the Ninth Circuit affirmed this Court's ruling in its entirety, clearing the way for this class action litigation for damages and injunctive relief to proceed on the merits. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010).

From 2008 to 2010, while this Court's ruling was on appeal and the case was stayed, the parties engaged in an extended mediation process under the guidance of an experienced mediator. That mediation process coincided with decisions at Quixtar, significantly prompted by this litigation, to transform its United States business in ways that would also redress the issues that gave rise to the lawsuit. As a result, the parties have been able to reach a wide-ranging settlement agreement that contains multiple elements of injunctive relief to extend and perpetuate those important reforms and to provide economic relief for members of the Settlement Class. With the joint motion for preliminary approval of the settlement agreement, as to which this memorandum is filed in support, we begin the process of securing the requisite judicial and class approval for implementation of this carefully negotiated resolution of longstanding issues believed to effect hundreds of thousands of Quixtar's IBOs.

In accordance with Fed. R. Civ. P. 23's class certification and class action settlement procedures, the parties ask this court to certify the Settlement Class, appoint Plaintiffs' counsel as Class Counsel, preliminarily approve of the Settlement Agreement, order that the Proposed

1   Notice be sent to the Settlement Class, and schedule a Settlement Hearing at which final

2   approval of the Settlement Agreement may be granted.

3   **A.      The Litigation**

4          In January 2007, Jeff Pokorny and Larry Blenn, both former Quixtar IBOs, filed this

5   lawsuit, alleging that Quixtar and other defendants who operated Business Support Material

6   (BSM) companies were employing business practices that violated federal and state law.  The

7   central allegation was that Quixtar used the false promise of significant but elusive profits to

8   fraudulently induce IBOs to invest in products and marketing tools and to recruit new IBOs.

9   Quixtar, which formerly was known as Amway, operated a multi-level marketing system that

10  allegedly incented IBOs to focus on the recruitment of other distributors rather than to sell

11  merchandise, and IBOs were also induced to spend excessive money on business support

12  materials including books, tapes, and meetings.  *See* D.E. 1.  It was further alleged that Quixtar

13  products were priced too high to support retail sales to unaffiliated consumers.  *Id*. Plaintiffs

14  contended that the overwhelming majority of IBOs lost money, and many soon quit.  *Id*.  A

15  third plaintiff, Ken Busiere, joined the action through an amended complaint filed in 2007.  *See*

16  D.E. 97.  Plaintiffs' action sought injunctive relief and damages under 28 U.S.C. §1961 *et. seq.*

17  (Racketeer Influenced and Corrupt Organizations Act) and California's Unfair Competition

18  Law, Cal. Bus. & Prof. Code § 17200, *et. seq.*

19         The initial phase of the litigation, which lasted for more than three years, focused on the

20  enforceability of Quixtar's (and the other defendants') alternative dispute resolution

21  procedures.  This Court denied Quixtar's motion to compel conciliation and arbitration, finding

22  that Quixtar's conciliation and arbitration agreement was unconscionable and unenforceable.

23  *See* D.E. 115.  The Court's decision was affirmed by the Court of Appeals for the Ninth

24  Circuit.  *See Pokorny v. Quixtar, Inc*., 601 F.3d 987 (9th Cir. 2010).

25         Meanwhile, the parties entered into formal settlement negotiations under the

26  supervision of retired Judge Daniel Weinstein.  *See* Exh. 1 to Joint Mot.  Those negotiations

27  took place over the course of two years and involved over ten face-to-face meetings in

28  California and New York, and numerous telephone conferences among counsel, among the

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

2

mediator and counsel, and among the mediator's staff and counsel. *Id*. The named plaintiffs attended and participated in most of the mediation sessions. *Id*. The mediation process included a detailed discussion of claims, the exchange of requested information that normally would not occur until formal discovery, the establishment of a framework for types of injunctive and monetary relief that were to be provided, and finally, after intense negotiation, a proposed settlement agreement. *Id*.

**B.      The Settlement Agreement**

The Settlement Agreement provides economic relief for the Settlement Class through cash and free products, and it provides injunctive relief directed at ensuring the continuation and extension of changes in Quixtar's business model that already had commenced and that, indeed, were prompted in significant part by this litigation. The economic value of those aspects of the Settlement that can be quantified is an estimated to be $155 million, consisting of $34 million in a cash fund, $21 million in free products, and injunctive relief that Quixtar has estimated to be valued at $100 million. Taken together, virtually every aspect of the problems identified in the Complaint is addressed by the Settlement Agreement.

**1.      Economic Relief**

There are three ways in which Settlement Class Members are eligible to receive economic relief, two of which are directed at former Quixtar IBOs. First, up to $5 million will be available to refund the registration fees paid by any IBO who left the Quixtar program by the end of their first year. This part of the economic relief is intended to compensate individuals who entered the program and, upon determining that it was not what they expected, quickly exited. These former IBOs will be able to receive a cash refund of their registration fee, which usually was in the amount of approximately $50. Up to 10,000 refunds may be provided to Settlement Class Members before any pro-ration of the refund amount.

Second, former IBOs who verify that they spent at least $100 on books, tapes and promotional meetings will be entitled, without additional documentation, to receive $100 in free Quixtar products. This part of the economic relief is intended to compensate IBOs who spent money on motivational tools from which they are not receiving any benefit since they no

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

longer are part of the Quixtar program. Claimants will be able to choose from a variety of product bundles, ranging from skin care products to vitamins and nutritional supplements. The total value of the free products will be $21 million, which would be sufficient to provide over 20,000 qualified claimants with free product benefits. If more qualified claimants apply, the product value per package will be adjusted; if fewer qualified claimants apply for free products, a procedure is established in the Settlement Agreement so that the balance is distributed to benefit the class, or distributed *cy pres*

Third, Settlement Class Members (both former and current IBOs) who can establish that they suffered "special hardship" in the form of financial loss resulting from their participation in the Quixtar IBO program will be eligible for a cash payment of not more than $15,000. This provision is intended to compensate Settlement Class Members who participated in the program for a substantial period and who suffered financial losses from that participation. Those losses include purchasing a large amount of Quixtar products that were not sold or returned, spending a substantial amount of money on BSM, or suffering other demonstrable financial loss of at least $2,500. The Settlement Agreement provides for a streamlined claims process to be handled by a Special Master, to be appointed by the Court, who will review and determine (with finality) whether and how much should be paid to a Claimant from the fund. If the total of accepted Claims exceeds the available cash funds for these payments, a pro-ration of awards will be made.

### 2.    Injunctive Relief

The Settlement Agreement provides for substantial injunctive relief to benefit both current and future IBOs. These elements of injunctive relief are intended to extend and perpetuate changes that Quixtar instituted, in large part as a result of this litigation, to transform the focus of its U.S. business from recruitment of additional distributors to merchandising products. Quixtar has estimated that the refund, training, and price reduction provisions will result in $100 million in future benefits to the Class. These provisions will be in the form of a Consent Judgment which will remain in place for 4 years (except where otherwise noted). The Consent Judgment will contain several features:

4

CASE NO. C 07-0201 SC      PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT AND FINDING OF GOOD FAITH SETTLEMENT

(a) *Disclosure and Refund Requirements*.  The Settlement Agreement provides that Quixtar must disclose to new IBOs that income figures reflect gross income, not net income after expenses; provide access to a price lists so that prospects can see the prices at which products are being offered; and inform IBOs of the availability of training in merchandising offered by Quixtar and the availability of refunds.  Quixtar also is required to provide a period of at least 90 days (an increase from the current 60 days) during which new IBOs may seek an unconditional refund of their registration fee, currently set at $50.  These provisions will ensure that new IBOs can correctly understand the program they are entering and have the ability, if they choose, to obtain a refund of their registration fee.

(b) *Legal Compliance*.  Under the Settlement Agreement, Quixtar is required to comply with state and federal law by the following:  (1) not compensating any IBO primarily for the act of recruiting or registering other IBOs; and (2) not requiring any IBO to purchase or maintain any specified amount of inventory.  In addition, Quixtar agrees that it will emphasize consumer sales by conditioning bonus payments and other incentives, as appropriate, on IBOs achieving reported levels of sales to end-user consumers.  The Settlement Agreement also requires Quixtar to maintain and enforce quality control over Business Support Materials, such as books, tapes and meetings that are: (1) sold or distributed by Quixtar IBOs and Quixtar IBO affiliated BSM Companies; and (2) sold or distributed in a manner suggesting sponsorship, affiliation, or approval by Quixtar.  This Quality control shall provide that the content of such BSM complies with state and federal law.  These provisions of the Consent Order create accountability by Quixtar and by Identified BSM companies (those that are obtaining a release) that the financial incentives and authorized messages they provide are consistent with both state and federal laws, which include laws that regulate multi-level marketing systems as well as various state deceptive and unfair trade practice laws.

(c) *Price Reductions.*  Plaintiffs' Complaints identified the uncompetitive pricing of Quixtar products as a reason that IBOs focused on recruitment rather than sales.  Quixtar began reducing its pricing levels following the initiation of this lawsuit.  The Settlement Agreement

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1    requires that Quixtar will maintain for twenty-four months from the Effective Date of the

2    Settlement or from June 30, 2011, whichever occurs first, a price reduction that averages at

3    least 5% from January 2007 pricing levels to distributors across Quixtar-branded products.

4         (d) *Training*.  In the Settlement Agreement, Quixtar agrees to  increase its annual IBO

5    training budget for product, product merchandising, and business skills by an average of $7

6    million or more over 2007 levels for twenty-four months from the Effective Date or from June

7    30, 2011, whichever occurs first, with such training to be provided free to IBOs.  This training

8    will further the ability of IBOs to focus on merchandising rather than recruitment of additional

9    distributors.

10        **3.      Enforcement and Releases**

11        The Settlement Agreement provides that the above elements of injunctive relief shall be

12   subject to monitoring through annual meetings between Quixtar and Plaintiffs' Counsel

13   throughout the term of the Consent Judgment.  The injunctive relief aspects of the settlement

14   are binding on the parties, including BSM Companies receiving releases or who are served with

15   the Consent Judgment, pursuant to Rule 65.  Further, it should be noted that while the Consent

16   Judgment provides for dismissal of the complaint with prejudice, it expressly does not affect

17   the prior ruling of this Court, affirmed by the Ninth Circuit, with respect to Quixtar's

18   alternative dispute resolution procedures, which were substantially revised by Quixtar in

19   response to that ruling.

20        In return for the economic and injunctive relief provided in the Settlement Agreement,

21   the settlement class will agree to fully release Quixtar and related parties, and those BSM

22   Companies who sign the Settlement Agreement from all claims that were or could have been

23   raised in the complaints in this action.

24        **4.      Fees and Costs**

25        The Settlement Agreement provides that, in connection with final approval of the

26   settlement, class counsel may seek an award of attorneys fees and costs from the Cash Fund

27   based on the value of the economic and injunctive relief obtained for the Class and Defendant

28   agrees not to object to a request that does not exceed $20 million.  The Settlement Agreement

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

also provides that the costs of the Claims Administrator in providing notice and handling claims, as well as the costs of the special Master in connection with the special hardship payments, and the costs of shipping and handling the free products shall be paid from the Cash Fund.

## II.  Discussion

The parties' Joint Motion initiates the process for judicial approval of a class action settlement.  *See* Fed. R. Civ. P. 23(e).  The parties request (A) that the Settlement Class be certified; (B) that Plaintiffs' counsel be appointed as class counsel; (C) that the court preliminarily approve the Settlement Agreement; (D) that the court order dissemination of notice to the class and schedule a fairness hearing; (E) that Plaintiffs' be given leave to file a Second Amended Complaint.  Each issue is discussed in turn below.[1]

### A.      The Settlement Class Should Be Certified

The Settlement Class consists of "any Person who, at any time during the Class Period, was (i) an IBO; (ii) a legal entity through which an IBO conducted a Quixtar-related business; or (iii) a BSM Purchaser."  The Class Period runs from January 1, 2003, through and including the date on which this Court enters an order preliminarily approving the Settlement Agreement. The parties agree that the Settlement Class should be certified because the requirements of Rule 23(a) and (b)(3) are satisfied here.

#### 1.      Rule 23(a)'s Requirements Are Satisfied.

"Rule 23(a) states four threshold requirements applicable to all class actions," including those subject to a proposed settlement agreement.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  The Rule provides that class certification is appropriate only if (1) the class is so large that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the named parties' claims or defenses are typical of those of the class; and (4) the class representatives fairly and adequately will protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  Each requirement is satisfied here.

---

[1] The parties also request an order barring and extinguishing certain indemnity and contribution claims.  That issue is discussed in Quixtar's memorandum in support of the Joint Motion.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

### a. Numerosity

"The numerosity requirement ensures that the class action device is used only where it would be inequitable and impracticable to require every member of the class to be joined individually." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007). Here, the Settlement Class consists of hundreds of thousands of IBOs. . Joinder is not feasible for a class of that size, and Rule 23(a)'s numerosity requirement is "clearly satisfied" in these circumstances. *In re Apple & ATTM Antitrust Litig.*, 2010 WL 351965 (N.D. Cal. 2010) ("A class of one thousand members 'clearly satisfied the numerosity requirement'" (quoting *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978)); *see also Dominguez v. Schwarzenegger*, --- F.R.D. ---, 2010 WL 2348659, * 4 (N.D. Cal. 2010) (class consisting of tens of thousands of members satisfies numerosity requirement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) (same).

### b. Commonality

"Commonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation marks omitted)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Only one common issue of law or fact is necessary to satisfy Rule 23(a)'s commonality requirement. *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 1177 (9th Cir. 2010). Here, common issues of both law and fact are abundant. Among other things, the class claims depend on a factual finding that Quixtar's U.S. business at the time of the lawsuit was focused, not on retail sales to consumers, but instead on IBO recruitment and self-consumption of BSM and Quixtar products. As a legal matter, the class claims already have shared common questions about the enforceability of Quixtar's arbitration agreement. The existence of such issues is more than sufficient to satisfy Rule 23(a)'s commonality requirement. *See, e.g., In re*

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   *UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, *4 (N.D. Cal. 2010) (legal and factual

2   questions pertaining to allegedly fraudulent scheme satisfied commonality requirement);

3   *Roberts v. Heim*, 1989 WL 80403, * 4 (N.D. Cal. 1989) (commonality satisfied by allegations

4   that defendant engaged in "concerted scheme" and "common course of conduct by which

5   plaintiffs allege that they and members of the class were fraudulently induced to enter into . . .

6   long term obligations").

### c.   Typicality

8       "The purpose of the typicality requirement is to assure that the interest of the named

9   representative aligns with the interests of the class." *Wolin*, 617 F.3d at 1175 (quotation marks

10   omitted).   "The test of typicality is whether other members [of the class] have the same or

11   similar injury [as the named plaintiffs], whether the action is based on conduct not unique to

12   the named plaintiffs, and whether other class members have been injured by the same course of

13   conduct. *Id.* (quotation marks omitted).   "[R]epresentative claims are 'typical' if they are

14   reasonably coextensive with those of absent class members; they need not be substantially

15   identical." *Dukes*, 603 F.3d at 613 (quotation marks omitted).   Here, all parties – from

16   Plaintiffs to the Settlement Class Members – have suffered losses because of their shared

17   experience as Quixtar IBOs, and all parties have the same legal claims arising from Quixtar's

18   operations identified in the Complaint.   There are no conflicts of interest between the named

19   plaintiffs and the class members, and the typicality requirement is satisfied. *See, e.g.*, *Wolin*,

20   617 F.3d at 1176 (finding that typicality requirement was satisfied notwithstanding some

21   factual variations among plaintiffs' situations); *see also In re Matter of Johnson*, 80 B.R. 791,

22   796 (E.D. Va. 1987) (applying Rule 23 and concluding that "the plaintiffs' claims are clearly

23   typical of the class: like all members of the proposed class, the plaintiffs are defrauded

24   investors in Johnson's pyramid scheme").

### d.   Adequacy

26       A class may be certified only if the named plaintiffs do not have conflicts of interest

27   with the proposed class and if the class is represented by qualified and competent counsel. *See*

28   Fed. R. Civ. P. 23(a)(4); *Dukes*, 603 F.3d at 614.   As noted above, the named plaintiffs'

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

9

interests are aligned with those of the class, and the three named Plaintiffs are adequate representatives of the proposed Class.  Moreover, as discussed in Section II.B below, Plaintiffs and the Settlement Class are represented by competent counsel who enjoy extensive experience in complex class actions and substantial knowledge of the legal and factual issues involved in this litigation.  Thus, the class is adequately represented both by Plaintiffs and by Plaintiffs' counsel.

### 2.     Rule 23(b)'s Requirements Are Satisfied

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prod.*, 521 U.S. at 614.  Here, the parties jointly move for certification pursuant to Rule 23(b)(3), which provides that a class may be maintained if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."  *Amchem*,  521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).  Instead, in deciding whether to certify a settlement class under Rule 23(b)(3), the court is to consider the class members' interests in individually controlling the prosecution of the lawsuit; the extent and nature of any litigation concerning the controversy already begun by class members; and whether it is desirable to concentrate the litigation in one particular forum.  *See* Fed. R. Civ. P. 23(b)(3)(A)–(C).  The court also should consider the substance of the parties' proposed settlement agreement insofar as it sheds light upon the adequacy of absent class members' representation in the litigation.  *Amchem*, 521 U.S. at 619-20.

As this district court has recognized, "[t]he federal courts have upheld the predominance of common issues, and lack of disabling conflict in the pyramid scheme context, and have granted certification to comprehensive plaintiff classes in cases arising from similar multi-level pyramid schemes."  *Nguyen v. FundAmerica, Inc.*, 1990 WL 165251, *2 (N.D. Cal.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1990).  The same result should obtain here, as all of the factors contemplated by Rule 23(b)(3)

weigh in favor of certification:

First, the value of any individual Settlement Class Member's claim is likely to range

from a few hundred to a few thousand dollars.  Though these are significant sums, they likely

are not large enough to justify the cost of bringing an individual suit.  *See e.g., Perez v. Safety-

Kleen Systems, Inc*., 253 F.R.D. 508, 520 (N.D. Cal. 2008) ("Plaintiffs make a persuasive

argument that class action is the superior method of adjudicating the claims because . . . the

cost of individual litigation would be prohibitive for most, if not all, class members.").  Thus,

Settlement Class Members have only minimal interests in individually controlling prosecution

of the lawsuit.  Of course, if a class member would like to assert his own claim, he can opt-out

of the class and do so.  Second, although there have been lawsuits in the past concerning

Quixtar's relationships with IBOs, Plaintiffs' counsel are unaware of any litigation already

brought by individual class members asserting against Quixtar the range of claims at issue in

this case.  Quixtar had successfully prevented certain cases from proceeding in court by virtue

of its arbitration agreement with IBOs.  By contrast, this case has progressed through the court

system for nearly four years and represents the Settlement Class Members' opportunity for a

meaningful recovery.  Third, it is desirable to concentrate this litigation as a class action before

this Court, which now has a familiarity with the factual and legal issues involved.

Therefore, each of the Rule 23(b)(3) factors weighs in favor of certification.  That

common issues of law and fact predominate is further evident from a review of the central issue

in this litigation, namely, whether elements of Quixtar's business model, as set forth in the

Complaint, are consistent with state and federal law.  Because that business model is consistent

with respect to recruitment, pricing, BSM activities and the like, the allegations of the

complaint can be litigated on a class-wide basis by analyzing Quixtar's business model and

class-wide practices.

**B.      The Court Should Appoint Plaintiffs' Counsel As Class Counsel.**

After certifying the Settlement Class, the court should appoint Plaintiffs' counsel as

Class Counsel.  Rule 23(g)(1)(B) provides that "a court that certifies a class must appoint class

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

counsel." Fed. R. Civ. P. 23(g)(1)(B).  In making that appointment, the court must consider the work counsel has done in identifying or investigating potential claims; counsel's knowledge of applicable law; counsel's experience in handling matters of the sort; and the resources that counsel will commit to representing the class.  *Id*.  Each factor weighs in favor of appointing Boies, Schiller, and Flexner, LLP, and Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando as Class Counsel.  (The analysis applicable here also confirms that the class is adequately represented, as required under Rule 23(a), discussed above.)

Plaintiffs' counsel have spent substantial time investigating Quixtar's business by reviewing documents provided by former IBOs, reviewing Quixtar's publicly available materials, interviewing former IBOs, and consulting with experts.  Informal discovery has resulted in a wealth of knowledge and information on which Plaintiffs' case has developed. Plaintiffs' counsel not only have thoroughly investigated the factual issues involved in this case, but they also have studied the relevant law, including extensive analyses of the applicability of state and federal statutes.  The strength of counsel's legal work on this case is evident from its successful litigation of Quixtar's motion to dismiss, which resulted in a Ninth Circuit opinion finding that Quixtar's arbitration agreement was unconscionable and unenforceable.

Plaintiffs' counsel are well-respected class action attorneys, whose firms have handled scores of complex cases resulting in well over $1 billion in relief for class members.  *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-197 (D.D.C.); *van Roden and Bernten v. Henri Termeer, Genzyme Corp., et al.*, No. 03-CIV-4014 (S.D.N.Y.).  Plaintiffs' counsel have committed considerable time and resources to the prosecution of this case, including many hours in the mediation process leading to this Settlement Agreement.  They have litigated the case zealously for four years, and, as part of the Settlement Agreement, they have agreed to continue to put forth the resources necessary to ensure Quixtar's compliance with the Settlement Agreement.

## C.      The Settlement Agreement Should Preliminarily Be Approved.

Having certified a Settlement Class and appointed Class Counsel, the Court should preliminarily approve the Settlement Agreement.  Though technically not required, it is

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

common for district courts to make a preliminary assessment of proposed class action settlement agreements. *See* 7B Fed. Prac. & Proc. Civ. § 1797.5 (3d ed.) ("[T]he rule does not require or suggest that the court should preliminarily approve the fairness of a proposed settlement before sending notice to the class, although some courts have followed that approach.").  Whereas final approval of a class action settlement is mandatory and requires a finding that the settlement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e), preliminary approval should be granted so long as the proposed settlement "contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal citations omitted); *see also Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. 2009) (preliminary approval is warranted if the settlement appears to be the product of serious negotiations, has no obvious deficiencies, and is within the range of reasonableness (citing Manual for Complex Litig., Second § 30.44 (1985)); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, *5 (N.D. Cal. 2007) (accord).

As discussed in detail in Section I.B above, the Settlement Agreement confers upon the Settlement Class significant benefits.  It not only provides economic compensation for Settlement Class Members through three separate mechanisms of registration fee refunds, free products to offset expenditures on BSM, and a special hardship fund for class members with demonstrable losses resulting from their participation as an IBO, but it extends and secures wide-ranging reforms in the way that Quixtar does business. Given the combination of economic and injunctive relief secured by the Settlement Agreement for the benefit of the class, Plaintiffs respectfully suggest that the calculus favoring the settlement is clearly drawn, even before consideration is given to the inherent uncertainties and lengthy process were the litigation to continue through trial.

Moreover, the Settlement Agreement is the product of lengthy settlement negotiations conducted under the supervision of a well-respected former judge.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" given to settlement that was reached after hard-fought negotiations by experienced counsel).  Thus, the Settlement

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    Agreement is reasonable, both as a matter of process and substance, and it warrants preliminary

2    approval, especially in light of this circuit's "strong judicial policy that favors settlements,

3    particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of*

4    *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Hanlon*, 150 F.3d at 1027 (district court

5    should give "proper deference to the private consensual decision of the parties").

6    **D.     The Proposed Notice Should Be Sent To The Class.**

7         Notice must be sent to the potential Settlement Class Members to inform them that a

8    class has been certified and that a settlement has been proposed. *See* Fed. R. Civ. P. 23(c)(2)

9    (certification notice); Fed. R. Civ. P. 23(e)(1) (settlement notice); *see also Eisen v. Carlisle &*

10   *Jacquelin*, 417 U.S. 156 (1974) (discussing due process implications of notice requirement).

11   Where, as here, the class is certified under Rule 23(b)(3), the settlement notice must inform the

12   class of the nature of the action; the definition of the class certified; the class claims, issues, or

13   defenses; that a class member may enter an appearance through an attorney; that the court will

14   exclude from the class any member who requests exclusion; the time and manner for requesting

15   exclusion; and the binding effect of a class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B).

16   Moreover, the settlement notice must alert the Settlement Class to the existence of agreement.

17   *See* Fed. R. Civ. P. 23(e)(1); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th

18   Cir. 2004). In addition to these substantive requirements, class notice is subject to procedural

19   mandates. As to the class certification notice, "the court must direct to class members the best

20   notice that is practicable under the circumstances, including individual notice to all members

21   who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As to the

22   settlement notice, "[t]he court must direct notice in a reasonable manner to all class members

23   who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

24        Here, the parties' proposed notice and plan for notice dissemination comply with all

25   applicable legal requirements, and they should be approved. (A proposed notice, summary

26   notice, and claim form are attached to the Settlement Agreement as Exhibits A, B, and C.)

27   Procedurally, notice will be distributed through various avenues, with efforts being made to

28   mail or email notice to each person who registered as a Quixtar IBO during the Class Period.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

The notice also will be posted to the Claims Administrator's website, and a summary notice will be published in appropriate public forums.  Substantively, the notice is written in plain-English so as to inform each potential Settlement Class Member of the nature of the litigation and his rights and obligations in connection therewith.  *See* Fed. R. Civ. P. 23(c)(2)(B).  It contains information about all topics that are subject to the requirements of Rule 23(c)(2)(B), and it also provides an overview of the terms of the Settlement Agreement, along with instructions for obtaining more information.  *See, e.g.*, *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) ("It describes the aggregate amount of the settlement fund and the plan for allocation, thereby complying with what we require.").  To facilitate distribution of the settlement fund and to streamline the claims application process, a claims form will be enclosed with the notice, along with instructions for seeking compensation.

**E.      The Court Should Schedule A Fairness Haring.**

Once potential Settlement Class Members have been notified of the court's class certification decision and of the proposed Settlement Agreement, they will have an opportunity to object, opt-out, or file a claim form.  At that point, the court must hold a hearing to take into account the objectors' comments and to assess the fairness, reasonableness, and adequacy of the Settlement Agreement.  *See* Fed. R. Civ. P. 23(e)(2).  The parties propose that this court schedule such a hearing approximately 100 days after entering an order granting preliminary approval of the Settlement Agreement, and that the deadline for objections and requests for exclusion be set [number] days before that hearing.  This schedule will give the parties sufficient time to direct notice to the class, and it will give class members adequate time to opt-out or object if they so choose.

**F.      Plaintiffs Should Be Granted Leave To File A Second Amended Complaint.**

Leave to amend a complaint before trial should be granted freely.  *See* Fed. R. Civ. P. 15(a)(2); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend should be granted with "extreme liberality").  This is particularly so when the request for leave to file an amended pleading is unopposed.  *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

the court's leave."). As part of the Settlement Agreement, Plaintiffs have agreed to file with the court a Second Amended Complaint that will dismiss from the action the particular BSM Companies and related individuals that had been named, leaving Quixtar as the sole defendant. This places all the BSM Companies on a common footing with the Settlement Agreement providing releases to those BSM Companies that sign the Settlement Agreement and preserving the right to litigate against those who do not. The Second Amended Complaint also adds claims under state common and statutory law to provide a further foundation for the injunctive relief to be entered as part of the settlement. In the event that the proposed Settlement does not receive final approval, the Second Amended Complaint shall be deemed withdrawn and the parties returned to their position prior to the submission of the settlement documents. The terms of the Settlement Agreement thus constitute a valid basis for Plaintiffs' request to file the Second Amended Complaint.

## III. Conclusion

For the foregoing reasons, Plaintiffs' ask this court to enter an order certifying the Settlement Class, appointing Plaintiffs' counsel as class counsel, preliminarily approving the Settlement Agreement, directing notice in accordance with the terms of the Settlement Agreement, scheduling a fairness hearing, and granting Plaintiffs' leave to file a Second Amended Complaint. A proposed order to this effect is attached as Exhibit 2 to the Joint Motion.

Dated: November 3, 2010                    Respectfully submitted,

                                           BOIES, SCHILLER & FLEXNER LLP


                                           By: /s/ Stuart Singer

                                           *Attorney for Plaintiffs*

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

**Certificate of Service**

I hereby certify that on this 3rd day of November 2010, the foregoing has been served

via the CM/ECF system on counsel for Defendants at the following address:

| | |
|---|---|
| Cedric C. Chao<br>William L. Stern<br>James M. Schurz<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522<br>cchao@mofo.com<br>wstern@mofo.com<br><br>*Attorneys for Defendant Quixtar Inc.* | Donald W. Carlson<br>Edward F. Donohue<br>CARLSON, CALLADINE & PETERSON, LLP<br>353 Sacramento Street, 16th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 391-3911<br>Facsimile: (415) 391-3898<br>dcarlson@ccplaw.com<br>edonohue@ccplaw.com<br><br>*Additional counsel for Defendants James Ron Puryear, Georgia Lee Puryear, World Wide Group, L.L.C.* |
| James R. Sobieraj<br>Ralph J. Gabric<br>Julie L. Leichtman<br>BRINKS HOFER GILSON & LIONE<br>455 N. Cityfront Plaza Drive<br>Chicago, Illinois 60611<br>Telephone: (312) 321-4200<br>Facsimile: (312) 321-4299<br>jsobieraj@usebrinks.com<br><br>*Attorneys for Defendant Quixtar Inc.* | J. William Blue, Jr.<br>NORTHEN BLUE, L.L.P.<br>1414 Raleigh Road, Suite 435<br>The Exchange At Meadowmont<br>Chapel Hill, NC 27517<br>Telephone: (919) 968-4441<br>Facsimile: (919) 942-6603<br>jwb@nbfirm.com<br><br>*Additional counsel for Defendants World Wide Group, L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt, Peggy Britt* |
| C. Matthew Andersen<br>WINSTON & CASHATT<br>1900 Bank of America Bldg.<br>601 W. Riverside<br>Spokane, WA 99201<br>Telephone: (509) 838-6131, (800) 332-0534<br>Facsimile: (509) 838-1416<br>cma@winstoncashatt.com<br><br>*Additional counsel for Defendants James Ron Puryear, Georgia Lee Puryear, World Wide Group, L.L.C.* | Benjamin K. Riley<br>HOWREY LLP<br>525 Market Street, Suite 3600<br>San Francisco, CA 94105-2708<br>Telephone: (415) 848-4900<br>Facsimile: (415) 848-4999<br>rileyb@howrey.com<br><br>*Additional counsel for Defendants World Wide Group, L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt, Peggy Britt* |

/s/_____Stuart Singer_____

*Attorney for Plaintiffs*

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A