# Exhibit D to Settlement Agreement: Consent Judgment

1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 12<br>13<br>14<br>15<br>16<br>17 | JEFF POKORNY, LARRY BLENN<br>and KENNETH BUSIERE on behalf of<br>themselves and those similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>QUIXTAR INC., *et al.*,<br><br>              Defendants. | Case No.     C 07-00201 SC<br><br>**[PROPOSED] CONSENT<br>JUDGMENT AND DISMISSAL OF<br>ALL CLAIMS WITH PREJUDICE** |

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] CONSENT JUDGMENT AND
DISMISSAL OF CLAIMS; CASE NO. C 07-00201 SC
sf-2964837

1    The Court, having considered: (1) the Amended Class Action Settlement Agreement,

2    dated April 29, 2011 ("Settlement Agreement"), including all exhibits thereto; and (2) the Joint

3    Motion for Entry of Consent Judgment and Dismissal of all Claims with Prejudice filed by

4    Quixtar and Plaintiffs on _____, 2011 (the "Joint Motion"), and all of the supporting material

5    submitted in connection with that Joint Motion; and having held a Settlement Hearing on

6    _____, 2011,[1] and having considered the record of those proceedings, the representations,

7    arguments, and recommendations of counsel for the moving parties, and the requirements of law,

8    the Court hereby ORDERS, ADJUDGES, and DECREES that:

9         1.    The Court has jurisdiction over the subject matter and parties to this proceeding,

10   including all members of the Settlement Class, pursuant to 28 U.S.C. § 1331.[2]

11        2.    Venue is proper in this District.

12        3.    Quixtar is ordered, throughout the term of this Consent Judgment, except where a

13   different term is specified, as follows:

14             a.    Quixtar shall modify its agreements with its Independent Business Owners

15   ("IBOs") to provide not less than a 90-day refund period for registration fees. The 90-day refund

16   period for an IBO's registration fees will begin from the time that Quixtar receives the

17   registration fee from or on behalf of the IBO.

18             b.    The application form that new IBOs are required to execute to register as a

19   Quixtar IBO shall disclose the following information: (a) that income figures provided to

20   potential IBOs represent gross, not net income; (b) the availability of certain free company

21   provided training for IBOs in marketing and merchandising; (c) Quixtar's refund policies for

22   products purchased by IBOs; (d) the availability of a retail product price list schedule accessible

23

24

25

26        [1] At the Settlement Hearing, the Court also heard Class Counsel's Application for an
27   Award of Attorneys' Fees, Reimbursement of Expenses, and Named Plaintiff's Compensation.
     The Court rules on that Application in a separate order.

28        [2] Capitalized terms in this Order that are specifically defined in the Settlement Agreement
     (Dkt. No. __) shall have the same definition here.

1   on-line; and (e) that product purchases and purchases of Business Support Materials ("BSM") are

2   optional.[3]

3           c.          Quixtar shall:  (1) not compensate any IBO primarily for the act of

4   recruiting or registering other IBOs and (2) not require any IBO to purchase or maintain any

5   specified amount of inventory of products or BSM.  In addition, Quixtar shall maintain policies

6   prohibiting acts or practices which require a person to buy BSM as a condition to becoming an

7   IBO; and prohibiting acts or practices which discourage buy backs of product on commercially

8   reasonable terms.  In addition, when making sales based bonus payments or incentives to IBOs

9   who are below the Platinum PIN level, Quixtar will emphasize consumer sales by conditioning

10  such bonus payments and incentives on reasonably reliable reported levels of sales to end-user

11  consumers.  (The phrase "end user consumer" means any individual who intends to use or uses

12  Quixtar products.)  Quixtar shall maintain policies prohibiting Quixtar, its IBOs, and companies

13  that are authorized by Quixtar to provide training and support to IBOs from making statements or

14  representations or taking actions contrary to (i) the application form referenced in Paragraph 3(b)

15  above; (ii) the requirements of applicable state and federal law; or (iii) the requirements of

16  Paragraphs 3(b), (c), and (f) of this Consent Judgment.  Quixtar shall not be liable for contempt of

17  this Consent Judgment solely on the grounds that Quixtar's policies are breached by its IBOs or

18  others.

19          d.          Quixtar will maintain for twenty-four months from the Effective Date or

20  from June 30, 2011, whichever occurs first, a price reduction that averages at least 5% from

21  January 2007 pricing levels to distributors across Quixtar-branded products (existing SKUs,

22  excluding freight).  Because the reduction will be measured on an average reduction basis, this

23  provision allows for price increases on certain products to account for increases in the cost of

24  sales and competitive conditions, so long as, notwithstanding any such increases for particular

25  products, the average price for the group is at least 5% lower than the January 2007 price.

26

27  ———————————————

28  [3] BSM, as defined in the Settlement Agreement (Dkt. No. ___), are motivational and/or
    training aids in the form of books, magazines, other printed material, audio tapes, video tapes,
    software, CDs, other electronic media, rallies, meetings, functions, and seminars.

1    e.    Quixtar will increase its annual IBO training budget for product, product

2 merchandising, business skills, and the compliance obligations imposed by Paragraphs 3(b), (c),

3 and (f) of this Consent Judgment and applicable State and Federal Law, by an average of $7

4 million or more over 2007 levels for twenty-four months from the Effective Date or from June 30,

5 2011, whichever occurs first, such training to be provided free to IBOs.

6    f.    Quixtar will maintain and enforce quality control over BSMs that are: (1)

7 sold or distributed by Quixtar IBOs or by companies authorized by Quixtar to provide training

8 and support to IBOs and (2) sold or distributed in a manner suggesting sponsorship, affiliation or

9 approval by Quixtar. Quality control shall include standards that are designed to prevent BSMs

10 from making factual assertions regarding the Quixtar business that contain either material

11 misrepresentations or omissions that render a statement materially misleading. Quality control

12 shall provide that BSMs comply with the standards and policies contained in Paragraphs 3(b), (c),

13 and (f) of this Consent Judgment. Quixtar shall not be liable for contempt of this Consent

14 Judgment based on (i) good faith determinations of what constitutes sale or distribution "in a

15 manner suggesting sponsorship, affiliation, or approval by Quixtar" of non-Quixtar authorized

16 BSMs or (ii) good faith efforts to "enforce quality control."

17    g.    Quixtar's compliance with the provisions in Subparagraphs 3(a)-(f) shall be

18 subject to monitoring through annual meetings between Quixtar and attorneys from Boies,

19 Schiller, and Flexner, LLP and Gary, Williams, Finney, Lewis, Watson & Sperando (collectively,

20 "Class Counsel"). Class Counsel shall be provided with unresolved complaints from IBOs

21 alleging violation of the terms of this Consent Judgment. Such unresolved complaints shall be

22 treated as confidential, except as necessary to enforce this Consent Judgment in a court of law.

23    h.    The provisions in Subparagraphs 3(a)-(g) are binding on Quixtar IBOs,

24 BSM Companies, and other Persons who are Released Parties or who are served with this

25 Consent Judgment pursuant to Federal Rule of Civil Procedure 65.

26    4.    Upon the Effective Date, by operation of this Consent Judgment, the Releasing

27 Parties shall release and forever discharge all Released Claims with respect to the Released

28 Parties. The Releasing Parties are barred from prosecuting any proceeding against any of the

1  Released Parties with respect to any Released Claim. The terms "Releasing Parties," "Released

2  Parties," and "Released Claim" are defined as follows:

3          a.      "Releasing Party" means: (1) all Identified BSM Companies; (2) all

4  members of the Settlement Class; and (3) all of their respective present or past heirs, executors,

5  estates, administrators, predecessors, successors, and assigns. "Releasing Party" does not include

6  members of the Settlement Class who opt out of the Settlement Agreement. "Releasing Party"

7  does not include Quixtar, except that Quixtar shall release any claims brought and that could have

8  been brought against Jeff Pokorny, Larry Blenn, and Kenneth Busiere in their individual

9  capacities.

10          b.      "Released Parties" means: (1) Quixtar; (2) the Identified BSM Companies

11  (however, BSM Companies who are identified in the Second Amended Complaint but who do not

12  sign the Settlement Agreement are not Released Parties even if they fall into another category

13  listed in this section); (3) all current or former IBOs who, at any time during the Class Period,

14  sold or marketed Quixtar products or BSM or who recruited or attempted to recruit other Persons

15  to register as an IBO (except for the principal owners of the BSM Companies who are identified

16  in the Second Amended Complaint but who do not sign the Settlement Agreement); (4) all BSM

17  Companies affiliated with the Quixtar business at any time during the Class Period and/or other

18  legal entities through which a current or former IBO, at any time during the Class Period, sold or

19  marketed Quixtar products or BSM or recruited or attempted to recruit other Persons to register as

20  an IBO (except for BSM Companies who are identified in the Second Amended Complaint but

21  who do not sign the Settlement Agreement); and (5) any and all of the present or past heirs,

22  executors, estates, administrators, predecessors, successors, parents, subsidiaries, affiliates,

23  directors, managing directors, officers, partners, principals, members, shareholders, legal

24  representatives, and assigns of the Persons identified above in this Paragraph.

25          c.      "Released Claims" means all claims (including "Unknown Claims" as

26  defined below), demands, rights, liabilities, suits, or causes of action as of the date of the final

27  approval of the Settlement Agreement that (1) were or could have been asserted in the complaints

28  filed in this Action against Quixtar, any of its current or former IBOs, or against any BSM

1   Company or its principal owners, or (2) that are based upon, arise out of, or reasonably relate to

2   (i) the purchase or sale or offer of sale of any Quixtar product during the Class Period other than

3   warranty claims or other claims for defective products, (ii) the purchase or sale or offer of sale of

4   any BSM during the Class Period, (iii) the payment of monies to Quixtar to register as a Quixtar

5   IBO during the Class Period, (iv) the IBOs' contract with Quixtar, including the Quixtar

6   Independent Business Owner Compensation Plan, the Biz Reference Guide, and the Rules of

7   Conduct, (v) Quixtar's and the BSM Companies' business operations during the Class Period,

8   (vi) any actual or potential recruitment of any Quixtar IBO during the Class Period, (vii) any

9   allegation that, during the Class Period, Quixtar and/or the BSM Companies operated, separately

10  or together, any type of illegal or fraudulent scheme, and/or (viii) any of the facts, schemes,

11  transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations,

12  omissions, or failures to act that have been or could have been alleged or asserted in the Action.

13  "Released Claims" do not include claims that may exist as of the Effective Date that arise from

14  the following: (a) The calculation of bonuses or payments for the sale of Quixtar Products owed

15  by Quixtar or other Released Party to any individual IBO under Quixtar's agreements with the

16  IBO, (b) an allegation that a Quixtar product was defective or delivered improperly, (c) claims of

17  workplace discrimination or sexual harassment; (d) claims relating to any health care or pension

18  plan; or (e) a dispute between Settlement Class Members and Released Parties that is entirely

19  unrelated to any of the claims, issues, or factual allegations raised in any of the complaints in the

20  Action.

21          For purposes of this Consent Judgment, "Unknown Claims" means claims that could have

22  been raised in this Action and that any Releasing Party does not know or suspect to exist, which,

23  if known by it, might affect its agreement to release the Released Parties or the Released Claims

24  or might affect its decision to agree, object or not to object to the Settlement.  Upon the Effective

25  Date, all Releasing Parties shall be deemed to have, and shall have, expressly waived and

26  relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542

27  of the California Civil Code,  which provides as follows:

28                          A  GENERAL  RELEASE  DOES  NOT  EXTEND  TO
                            CLAIMS  WHICH  THE  CREDITOR  DOES  NOT  KNOW

OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Released Claims encompass, without limitation, claims that are accrued or unaccrued, fixed or contingent, direct, individual or representative, asserted by or on behalf of unnamed Settlement Class Members in a putative or certified class action, in law or in equity, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaints in this Action. By way of illustration, Released Claims include, without limitation, claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, the Securities Act of 1933 and the Securities and Exchange Act of 1934 and any other law that concerns the sale of securities, any state franchise relations laws, any state franchise investment laws, any state business opportunity plan laws, any state seller-assisted marketing plan laws, Federal Trade Commission's Franchise Disclosure Rule, 16 C.F.R. Part 436, the Federal Trade Commission's Business Opportunity Disclosure Rule, 16 C.F.R. Part 437, any mail fraud or wire fraud statutes, any unfair and deceptive acts and practices statutes, such as, California Bus. & Prof. Code §§ 17200 and 17500, *et seq.*, any false advertising laws, and any statutes regarding the operation of fraudulent schemes (including "chain distributor schemes" or "endless chain schemes") such as California Penal Code § 327. Released Claims also include, without limitation, claims for fraud, deceit, negligent misrepresentation, negligence, gross negligence, professional negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, breach of fiduciary duty, fiduciary abuse, mismanagement, breach of contract, breach of implied contract, promissory estoppel, unjust enrichment, breach of the covenant of good faith and fair dealing, negligent supervision, declaratory relief, indemnification, defense, or contribution.

5.     [Placeholder: Following the Settlement Hearing, this Subsection will provide a discussion of whether the Settlement was reached in "good faith," for purposes of determining

1   whether joint tortfeasors should be barred from asserting contribution or indemnification claims

2   against Quixtar or the Identified BSM Companies].

3       6.      The Court shall retain exclusive jurisdiction to resolve any disputes or challenges

4   that may arise as to the performance of Quixtar and Plaintiffs with respect to the Settlement

5   Agreement or any challenges to the validity, interpretation, administration, enforcement, or

6   enforceability of this Consent Judgment or the Settlement Agreement.

7       7.      This Consent Judgment shall not be construed or used as an admission,

8   concession, or declaration by or against Quixtar or any of the Identified BSM Companies of any

9   finding of fault, wrongdoing, or liability.  This Consent Judgment shall not be construed or used

10  as a waiver or admission as to any arguments or defenses that might be available to Quixtar or

11  any of the Identified BSM Companies, including any objections to class certification in the event

12  that the Settlement is terminated.

13      8.      With respect to any continuing duties, rights, obligations, or prohibitions set forth

14  herein, this Consent Judgment shall expire four years after the date that it is entered by the Court,

15  except for the provisions under Paragraph 4 (Releases), Paragraph 5 (Bar Order), and Paragraph 7

16  (Use of the Consent Judgment).  The running of the four-year term of the Consent Judgment shall

17  be tolled during any stay of the Consent Judgment.

18      9.      Final Judgment in this action is hereby entered.  All claims asserted by Plaintiffs

19  are dismissed on the merits with prejudice.   This dismissal shall have no impact on the other

20  provisions of this Consent Judgment or of this Court's prior rulings in this Action, including this

21  Court's Order Denying Quixtar's Motion to Dismiss or Compel Arbitration, as affirmed by the

22  Ninth Circuit Court of Appeals in *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010).

23

24      IT IS SO ORDERED this ___ of _____, 2010.

25

26

                                        _____
27                                          Hon. Samuel Conti
                                        United States District Judge

28