# Exhibit F to Plaintiffs' Memorandum in Support of Joint Motion: VanderVen Declaration

CEDRIC C. CHAO (CA SBN 76045)
WILLIAM L. STERN (CA SBN 96105)
JAMES M. SCHURZ (CA SBN 145874)
S. RAJ CHATTERJEE (CA SBN 177019)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
E-mail: cchao@mofo.com
E-mail: wstern@mofo.com

JAMES R. SOBIERAJ (*Pro Hac Vice*)
BRINKS HOFER GILSON & LIONE
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
Telephone: 312.321.4200
Facsimile: 312.321.4299
E-mail: jsobieraj@usebrinks.com

Attorneys for Defendant
QUIXTAR INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFF POKORNY, LARRY BLENN and KENNETH BUSIERE on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUIXTAR INC., *et al.*,<br><br>Defendants. | Case No. C 07-00201 SC<br><br>**DECLARATION OF GARY VANDERVEN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date: June 10, 2011<br>Time: 10:00 a.m.<br>Room: 1, 17th Floor<br>Judge: Honorable Samuel Conti |

I, Gary VanderVen, declare as follows:

1. I am the Director, Amway Global Business Conduct and Rules and Business Support Materials Administration for Amway Corp. I have served in this position since 2002, and, prior to that, as Manager and Senior Manager, in the same department from 1996 to 2002.

1  From December 1986 to May 1996, I served in different capacities within the Amway Distributor
2  Relations Department, acting as a liaison between Amway and the independent distributors for
3  virtually all aspects pertaining to Amway distributorships. The defendant in this case is Quixtar
4  Inc., but it changed its name to Amway Corp. in 2008, after this lawsuit was filed.

5        2.      In its Order Requiring Supplemental Briefing, dated December 29, 2010 (Dkt. No.
6  157) ("Order"), the Court asked the parties for additional facts and information about the initial
7  proposed Settlement Agreement. I will be providing some of those answers, and Ray Alexander
8  will be providing other answers. In particular, I will address in paragraphs 3-16 the steps the
9  Company has taken to implement the injunctive relief provisions of the Amended Settlement
10 Agreement. I will also respond to the Court's question about other similar litigation against the
11 Company (Order, 17:20-18:7), and "[h]ow many members of the proposed class are eligible to
12 recover under the 'hardship' provision of the settlement?" (*Id.*, 24:7-8.) In addition, I will
13 answer the Court's question seeking information about the named plaintiffs. (*Id.*, 16:7-9, 21:20-
14 23.)

### Injunctive Relief—Changes to the IBO Registration Agreement

16        3.      The Amended Settlement Agreement, in Section 5.1, requires Amway to enter into
17 a Consent Judgment with certain injunctive relief. This section of my Declaration addresses
18 specific things Amway has done to ensure compliance with those injunctive provisions of the
19 Amended Settlement Agreement, and describes some of the cost to Amway of continued
20 compliance with those provisions.

21        4.      Section 5.1.1 requires Amway to modify its registration agreement with IBOs to
22 provide not less than a 90-day refund period for registration fees. For reference purposes, a true
23 and correct copy of the new "INDEPENDENT BUSINESS OWNER (IBO) Registration
24 Agreement," which is the form currently in use today, is attached hereto as Exhibit A. This
25 revised Registration Agreement form was modified in 2010 to expressly state that "The Business
26 Services & Support fee is fully refundable within 90 days of Amway's receipt of payment." The
27 disclosure that the registration fee is refundable for 90 days appears on page 1 of Exhibit A, under

the heading "Registration Package." The disclosure that the "IBOIA Support" fee is refundable for 90 days appears in paragraph 9 of Exhibit A.

5. The Registration Agreement form (Exhibit A) also shows how Amway has complied with the following disclosures in Section 5.1.2: (i) Gross income appears on page 1, just above the signature line; (ii) Availability of training appears on page 1, under the heading "Business Support Materials"; (iii) the availability of a retail price list appears in paragraph 5; and (iv) the disclosure that purchases of product and purchases of business support materials ("BSM") are optional appears in paragraph 1. The refund policy for product purchases does not currently appear in the Registration Agreement form (Exhibit A), but it is part of the Rules of Conduct, which are incorporated by reference in the agreement. We are in the process of adding this disclosure to the Registration Agreement form.

**Injunctive Relief—Amway's Oversight and Monitoring of BSM Compliance**

6. The Amended Settlement Agreement, in Section 5.1.6, provides that the Company "will maintain and enforce quality control over BSM Companies ... to prevent BSMs from making factual assertions ... that contain either material misrepresentations or omissions that render a statement materially misleading." This section will describe the steps Amway has taken already, and will continue to take, to ensure compliance with this provision.

7. In mid-2007, Amway launched a program called "Professional Development Accreditation Program" or "PDAP" for short. Under PDAP, qualifying IBOs and BSM Companies could participate in a voluntary program that imposed quality control obligations on both the IBOs and BSM Companies with respect the BSM offered to IBOs and promotion of the Amway business to prospects. IBOs and BSM Companies who successfully completed the application and certification process and complied with the program requirements were licensed to use Amway's Certification Mark, and their IBO members could qualify for additional sales rewards. To encourage participating in PDAP, Amway conditioned the payment of certain sales bonuses, known as QBI, on successful completion of the PDAP certification process. Applicants had to submit 100% of their proposed prospect, plan, and product materials and 25% of their proposed "motivational" materials for Amway's review. Those materials were submitted

pursuant to the PDAP program, and in the summer of 2008 Amway undertook an extensive review of those materials. That review required that Amway re-assign six employees during the year.

8. By 2010, Amway had made further improvements to its quality control efforts over BSM being sold by BSM Companies to other IBOs. These improvements were rolled out in a new program called Accreditation Plus, whose release coincided with the expiration of the PDAP agreements. Under the Accreditation Plus program, any BSM Companies, subject to certain exceptions, who wish to provide BSMs to an Amway IBO with a sense of affiliation or approval from Amway must execute a written contract (license agreement) to become an "Approved Provider" of AMWAY (brand) training. The new Accreditation Plus program requires all Approved Providers to submit to Amway all training materials sold to IBOs in a fixed format for audit, and it also subjects oral presentations to quality control standards.

9. The Accreditation Plus agreement provides Amway with a broad range of remedies in the event that training materials or presentations are found to fail its quality control standards. Such remedies include termination of the right to affiliate with the famous Amway brands and to use Amway trade secrets to sell to Amway IBOs. Based on my many years of experience in the multi-level marketing ("MLM") industry, I believe that requiring BSM providers to enter into an express quality contract with an MLM company, like Amway, is unprecedented and sets a new industry standard of responsibility and accountability for controlling the content and quality of BSM sold by third parties.

10. To become an Approved Provider, the applicant's training and education programs have to meet stringent criteria. In addition, an Approved Provider must (a) sign an "ACCREDITATION PLUS Approved Provider Agreement," (b) abide by Amway's written "Quality Assurance Standards" and the obligations and terms of the "Accreditation Plus" program; (c) comply with Amway's Quality Assurance Standards for BSM Content; (d) provide a balanced education curriculum that includes retailing, business-building, product training, and personal development elements; (e) use BSM compensation plans that are transparent, written,

and contractual; (f) participate in Best Practices training for all IBO leaders, and (g) comply with the Amway Rules of Conduct and Good Standing criteria

11. As part of Accreditation Plus, an Approved Provider must submit 100% of its plan and motivational materials for review by Amway to ensure that they comply with these standards. To this end, Amway has held numerous training sessions and regular meetings with Approved Providers and will continue to do so.

12. These additional tasks have imposed new burdens and responsibilities on Amway. As part of Accreditation Plus, Amway had to increase its staffing and enforcement budget and re-allocate existing resources. In 2010, we created an entirely new department for Provider Contract Administration and created a new position, called Manager/Accreditation Plus, and filled that position. The Manager/Accreditation Plus is primarily responsible for overall oversight of the Accreditation Plus program and for coordinating with other departments. In addition, we added a new position in the BSM Administration department, and the existing positions of Manager and ten other staff were given new responsibilities to support the program.

13. The administration of Accreditation Plus requires the support of a cross-functional team. It draws upon staff from other departments, including Legal, Business Conduct and Rules, and Sales. Each of those departments has assigned a liaison and responsible representative to work with the Manager/Accreditation Plus. In addition to those persons directly working on BSM Administration and supporting the Accreditation Plus program, the new program takes a significant amount of my time, as well as the time of other senior Amway managers

14. I have calculated the cost to my department of implementing the Accreditation Plus program during 2010 and 2011 at more than $3.8 million. This includes the new positions, the re-allocation of existing staff, one-third of my time, and associated expenses such as travel and training, This does not include expenses or re-allocation of resources involving other members of the Accreditation Plus team, such as Legal, Sales, etc.

15. The Program Team (as just described) has responsibility for finalizing all processes and documents to support implementation and administration of the Accreditation Plus program, with input from each functional representative, and for providing support to the

Manager/Accreditation Plus in the general administration of the Accreditation Plus Program. If there are disagreements within the Program team, they get escalated to the Steering Committee, which is comprised of executive representatives from Sales, Business Conduct & Rules (including BSM Administration), and Legal. Ultimate oversight for the program resides in the Oversight Committee, which consists of the Managing Director, North America, and Amway's General Counsel.

16. The process for the enforcement of these new requirements depends on whether there is a breach of the IBO Rules of Conduct or a breach of the Accreditation Plus contract. For the former, enforcement of breaches of the IBO Rules of Conduct resides in my department, and we have at our disposal an array of sanctions starting with a simple warning letter to a more serious charge in which the violation is detailed, the individual is given an opportunity to respond, and afterward a sanction is weighed, which can include a number of remedies, including termination of an IBO's Amway business. Under the prior system, only IBOs were subject to enforcement action; now, non-IBO Approved Providers are too. For the latter, enforcement of breaches of the Accreditation Plus contract involves a similar system of progressive enforcement steps, except that the initiation is instigated by the Legal Department instead of the Rules Department, and the most extreme sanction (for a non-IBO Approved Provider) is termination of their provider status.

**Other Litigation Brought by IBOs**

17. In its Order at 17:7:-18:7, the Court asks whether there is other litigation brought by IBOs against Quixtar that raise similar sorts of claims as those that are asserted in the First Amended Complaint or that would be precluded under the Settlement. There are two pending lawsuits involving Quixtar and former IBOs responsive to the Court's questions.

18. The first lawsuit is captioned *Jann G. Newton, William P. Newton, and Interactive Marketing System, L.C. v. Amway Corp, f/k/a Quixtar Inc., James McAnarney, Marcia McAnarney, George Peinter and Melody Peintner*. This matter was filed in the Eighteenth Judicial District, District Court, Sedgwick County, Kansas (Civil Division), and assigned case no.

1  09 cv 3049. According to their Amended Petition, filed August 27, 2009, Plaintiffs Jann and
2  William Newton (former IBOs) and their corporation, Interactive Marketing, allege among other
3  things that: (a) the Newtons registered as Amway distributors in March 1, 1987; (b) that in 2007,
4  they "tr[ied] to work with Quixtar to find products that could be purchased by IBOs at prices that
5  would permit IBOs to resell products at retail"; (c) that the corporation wrongfully terminated
6  their distributorship; and (d) that as a result, the corporation breached their contract with plaintiffs
7  and engaged in other wrongful acts. The other defendants are IBOs upline of the Newtons in the
8  Quixtar Line of Sponsorship and are alleged to have coordinated with Quixtar to assert invalid
9  reasons for plaintiffs' termination as IBOs and to engage in other wrongful acts. The Kansas state
10 court has granted the defendants' motion to compel the matter to arbitration under the Rules of
11 Conduct. Based on the factual allegations in the Newton's complaint, the Company believes that
12 the range of claims that could be asserted against Amway in the *Newton* litigation would be
13 precluded under the release set forth in the Amended Settlement Agreement. However, the
14 Company also would not object if the *Newton* Plaintiffs elect to opt-out of the Settlement and
15 pursue their claims in arbitration.

16        19.    The second lawsuit is captioned *Amway Corp. v. Scott E. Johnson*. This matter
17 was filed in the District Court for the 199th Judicial District for Collin County, Texas, and
18 assigned cause no. 199-03090-2010. While the claims asserted by Amway in that case do not
19 raise the range of claims asserted in the Complaint or that would be precluded under the
20 Settlement, Defendant Johnson in his Second Amended Answer and Counterclaim asserts, among
21 other things, that he was an IBO between January 21, 1993 and September 18, 2009; that he "paid
22 exorbitant amounts for 'tools' ...", that IBOs upline of Johnson, with the company's knowledge,
23 misrepresented the business opportunity to him , and that he "detrimentally relied upon false
24 representations that were made to him by paying substantial sums for tools and staying involved
25 with Plaintiff [Amway] much longer than he would have had he known the truth." While the
26 Texas state court has retained jurisdiction of the Company's claims against Defendant Johnson, it
27 has granted the Company's motion to compel binding arbitration under the Rules of Conduct of
28 all claims raised by Defendant Johnson is his counterclaim and has stayed all court action on that

counterclaim. Based on the factual allegations in Johnson's counterclaim, the Company believes that Johnson's Counterclaim could raise the range of claims asserted in the Pokorny Complaint and would be precluded under the release set forth in the Amended Settlement Agreement. However, the company also would not object if Johnson elects to opt-out of the Settlement and pursue his counterclaims in arbitration.

### The Number of Class Members Eligible to Recover Under The 'Hardship' Provision

20. The Court asked "[h]ow many members of the class are eligible to recover under the 'hardship' provision of the settlement." (Order, 24:7-8.) It is my understanding that the parties have revised the "hardship" provision. Given the Court's question the last time, I will assume the Court would ask as to the Amended Settlement Agreement, "How many members of the class are eligible to recover under the new 'hardship' definition?"

21. Eligible class members are defined in the Amended Settlement Agreement as those class members who "either (i) can show that their recruitment into and operations of their Quixtar business caused them to file for personal bankruptcy or (ii) can show a loss of at least $10,000 from operating their Quixtar business...." It is not possible for Amway to know from its business records, or even to make an estimate, of the number of class members who meet this requirement.

### Information About The Named Plaintiffs

22. The Court asked the parties to provide further information about the named plaintiffs. (*See* Order, 15:19-22.) I have reviewed the business records maintained by Amway in the ordinary course of business and, based on that, the circumstances of the named plaintiffs' history with Amway is as follows:

    a) **Jeff Pokorny.** Mr. Pokorny first registered as an IBO on October 5, 1994. He continued as an IBO through calendar year 2007, because he agreed to automatically renew his distributorship on September 26, 2006. Per the Company's auto-renewal program, his credit card was charged the renewal fee for 2007.

b) **Larry Blenn.** Mr. Blenn first became an IBO in 2005. His wife appears to have first registered on October 20, 2004. He was added to his wife's IBO business on May 4, 2005. He stopped automatically renewing his distributorship and was removed from our records on January 7, 2006.

c) **Kenneth Busiere.** Mr. Busiere first became an IBO on October 16, 2005. He stopped automatically renewing his distributorship on September 10, 2006, and was removed from our records on January 6, 2007.

I declare under penalty of perjury that the foregoing is true and correct and that I am competent to testify to the facts contained in this Declaration of called as a witness. Executed on this 28th day of April, 2011, in Ada, Michigan.

*/s/ Gary VanderVen*

Gary VanderVen

DECL. OF GARY VANDERVEN ISO. MOT. FOR PRELIM. APPROVAL OF SETTLEMENT
CASE NO. C 07-00201 SC

9

# EXHIBIT A

# Amway

## INDEPENDENT BUSINESS OWNER (IBO)
### Registration Agreement

Please enter assigned IBO ID number if pre-registered online at www.amway.com or by phone (800)253-6500.

IBO ID NO. ☐☐☐☐☐☐☐☐☐

INVOICE NO. ☐☐☐☐☐☐☐☐☐

**W11**

PLEASE PRINT USING BLACK INK.

### SPONSORING IBO INFORMATION

SPONSORING IBO ID NO. ☐☐☐☐☐☐☐☐☐   LAST NAME ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   FIRST NAME ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

If Sponsor resides outside the U.S., Canada, Puerto Rico, U.S. Virgin Islands, Jamaica, Guam, the Pacific Islands of American Samoa, Federal States of Micronesia, Marshall, Northern Mariana, Palau, Wake, Dominican Republic, or other authorized Atlantic and Caribbean Islands operating under the Independent Business Owner Compensation Plan for North America, OR, if Registrant has a primary business in another country, complete the information below:   ○ This is my Primary Business.

Country _____   International Sponsor ID No. ☐☐☐☐☐☐☐☐☐   International Sponsor _____

### REGISTRANT(S) INFORMATION

LAST NAME ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   FIRST NAME ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   SOCIAL SECURITY NO.* ☐☐☐-☐☐-☐☐☐☐

CO-REGISTRANT'S LAST NAME (if applicable) ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   CO-REGISTRANT'S FIRST NAME (if applicable) ☐☐☐☐☐☐☐☐☐☐☐☐☐   CO-REGISTRANT'S SOCIAL SECURITY NO.* ☐☐☐-☐☐-☐☐☐☐

STREET ADDRESS ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   DAYTIME TELEPHONE NUMBER ☐☐☐-☐☐☐-☐☐☐☐

CITY ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   STATE ☐☐   ZIP CODE ☐☐☐☐☐   EVENING TELEPHONE NUMBER (optional) ☐☐☐-☐☐☐-☐☐☐☐

E-MAIL ADDRESS* ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

*Social Security Number - Failure of the primary registrant to provide a Social Security Number will result in withholding a percentage of all bonus payments. Email Address - To receive order confirmations, product updates and special offers, it is important that Amway has a unique email address for every IBO. Amway will not share this information with any non-affiliated third parties or send any unwanted emails.

- Has either of the registrants ever been affiliated with Amway?   ○ Yes   ○ No
- If "Yes", please provide date of last activity: Month _____ Year _____   Previous ID No. ☐☐☐☐☐☐☐☐☐
- What is your preferred language for select communications when available?   ○ English   ○ Spanish   ○ Korean   ○ Mandarin

### REGISTRATION PACKAGE

| | | |
|---|---|---|
| ● | Amway Business Services & Support* | $50.00 |
| ● | IBOAI Support (see reverse side for information) | $12.00 |
| ○ | Welcome Product Kit* (including delivery charge) | $97.74 |
| ○ | | |
| | SUBTOTAL | |
| | Sales Tax (as applicable) | |
| | TOTAL | |

*The optional Welcome Product Kit helps jump start your business by introducing you to some of the top selling products. The Business Services & Support fee is fully refundable within 90 days of Amway's receipt of payment.

### METHOD OF PAYMENT (Select only one)

○ Cashier's Check/Money Order (enclosed)
○ Discover®   ○ MasterCard®   ○ Visa®   ○ American Express®   ○ Diners Club®

☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐ - ☐☐☐
CARD NUMBER                                    EXPIRATION DATE (mm - yy)

(PLEASE TYPE OR PRINT) CARDHOLDER'S NAME

CARDHOLDER'S SIGNATURE

X

### AUTHORIZATION AND AGREEMENT (REGISTRANT(S) MUST READ AND SIGN)

**AGREEMENT TO MEDIATE AND ARBITRATE DISPUTES** - Amway Corp. ("Amway") and its IBOs mutually agree to resolve all claims and disputes arising out of or relating to an Independent Business, the Amway Independent Business Owner Compensation Plan ("IBO Compensation Plan"), or the Rules of Conduct, as well as disputes involving Business Support Materials ("BSM"), as defined in Rule 7 of the Rules of Conduct, under the Dispute Resolution Procedures described in the Rules of Conduct, specifically Rule 11. The Rules of Conduct shall be part of this IBO Registration Agreement and are incorporated by reference. A copy of the Rules of Conduct is available to review at www.amway.com.

I agree to submit any dispute I may have with another IBO, Amway, or an Approved Provider of BSM, as defined in Rule 7 of the Rules of Conduct, that is not resolved informally under Rule 11.1, to conciliation under Rule 11.2. The conciliation requirement is reciprocal and binds Amway, IBOs and Approved Providers.

I further agree that if any dispute cannot be resolved by good faith efforts in Conciliation under Rule 11.2, I will submit any remaining claim or dispute arising out of or relating to my Independent Business, the IBO Compensation Plan, or the IBO Rules of Conduct (including any claim against another IBO, or any such IBO's officers, directors, agents, or employees; or against Amway Corp. and any parent, subsidiary, affiliate, predecessor or successor thereof, or any of their officers, directors, agents, or employees) as well as disputes involving BSM or Approved Providers of BSM, to binding arbitration in accordance with Rule 11.3. The arbitration award shall be final and binding and judgment may be entered upon it by any court of competent jurisdiction. Demand for arbitration shall be made within 2 years after the claim arose, but in no event after the date when the initiation of legal proceedings would have been barred by the applicable statute of limitations, subject to the tolling provision in Rule 11.3.4. I acknowledge that this Agreement evidences a transaction involving interstate commerce. The United States Arbitration Act shall govern the interpretation and enforcement of the arbitration rules and arbitration proceedings. If I become involved in a claim or dispute under Rule 11, I will not disclose to any other person not directly involved in the conciliation or arbitration process (a) the substance of, or basis for, the claim or dispute; (b) the content of any testimony or other information obtained through the dispute resolution process; or (c) the resolution (whether voluntary or not) of any matter that is subject to the dispute resolution process. However, nothing in the Rules shall preclude a party from, in good faith, investigating a claim or defense, including interviewing witnesses and otherwise engaging in discovery. The Confidentiality Agreement is reciprocal and binds Amway, IBOs and Approved Providers. The agreement to arbitrate and conciliate under Rule 11 is reciprocal and binds Amway, IBOs and Approved Providers.

The Arbitrator shall have exclusive authority to resolve any dispute relating to the enforceability of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable.

**BUSINESS SUPPORT MATERIALS** - In addition to optional training offered by Amway, some IBOs and Amway accredited third-party providers ("Approved Providers") offer optional BSM to IBOs (See Rule 7 of the Rules of Conduct for more information). I UNDERSTAND THAT I DO NOT HAVE TO BUY BSM TO BECOME AN IBO AND THAT BSM MAY BE HELPFUL BUT ARE NOT NECESSARY TO BE A SUCCESSFUL IBO. BSM ARE OFFERED SEPARATELY FROM THE AMWAY BUSINESS BY IBOS AND APPROVED PROVIDERS THAT ARE NOT OWNED OR OPERATED BY AMWAY. I further understand that Amway receives no money from my purchase of BSM from IBOs or Approved Providers; some IBOs and Approved Providers earn income (which is not paid by Amway) from the sale of BSM to IBOs; IBOs and Approved Providers are required to meet Amway's quality standards for BSM (See Rule 7 of the Rules of Conduct); I may have rights to a refund from the seller under certain circumstances; in deciding whether or not to purchase BSM I will use my own good judgment and ensure that expenditures are consistent with my goals and with the profitability of my business; and, if I choose to purchase BSM, I will do so only after I have registered as an IBO, and after I have assessed my own needs for BSM.

**REGISTRANT(S)** - I certify that all of the information above is complete and correct, including my sponsoring IBO. I have read and agree to adhere to the terms of this Agreement, including the Amway Terms and Conditions printed on the reverse side (Page 2 of 2). I need only select the Business Services & Support portion of the Amway Registration Package to become an IBO. I certify that in deciding to become an IBO I have relied solely on the earnings representations and information contained in the IBO Compensation Plan. I certify that I have received, read, and understood the Amway Business Opportunity Brochure. I understand that the average monthly gross income earned by "active" IBOs was $115.

X _____   _____
REGISTRANT'S SIGNATURE*                    DATE

X _____   _____
CO-REGISTRANT'S SIGNATURE (if applicable)   DATE

*Registrant(s) must be 16 or older (see Rules of Conduct; Rule 3.3.3). If under 18, enter birth date(s) (mm-dd-yy) here:

REGISTRANT'S BIRTH DATE ☐☐-☐☐-☐☐   CO-REGISTRANT'S BIRTH DATE ☐☐-☐☐-☐☐

**Return Instructions:** After you have read the IBO Registration Agreement, verified the information you are supplying is complete and signed the agreement, fax the signature page to Amway at 800-253-4673 or mail to Customer Support (58C-2A), 7575 Fulton Street East, Ada, MI 49355. Retain a copy for your records.

X _____   _____
PARENT OR GUARDIAN SIGNATURE              DATE
(Required if Registrant(s) is under 18.)

## AMWAY TERMS AND CONDITIONS

1. **Authorization and Contract.** The Amway business opportunity is available in the U.S., Canada, Puerto Rico, U.S. Virgin Islands, Jamaica, Guam, and the Pacific Islands of American Samoa, Federal States of Micronesia, Marshall, Northern Mariana, Palau, Wake, and all authorized Atlantic & Caribbean Islands operating under the IBO Compensation Plan for North America (the "Region"). By executing the IBO Registration Agreement, you apply for legal authorization to become an Amway IBO and enter into contract with Amway Corp. ("Amway"). You acknowledge that prior to signing you have received, read and understood the Amway Business Opportunity Brochure, that you have read and understood the Amway Business Reference Guide including the Rules of Conduct, which are incorporated into this Agreement and made a part of it as if restated in full, as posted on www.amway.com, and that you have read and agree to all terms set forth in this IBO Registration Agreement. You understand that to become an IBO you need only select the Business Services & Support portion of the Amway Registration Package, and that additional products or support items are optional. Amway reserves the right to reject any application for any reason within 30 days of receipt.

2. **Expiration and Renewal.** You must maintain a current authorization in order to preserve your rights as an IBO, including all rights of sponsorship with your registered IBOs and customers. Your authorization expires on December 31st each year. To remain an IBO, you must annually submit prior to December 31st your renewal agreement along with the required Annual Business Fee. In the event you elect automatic renewal, you agree to continue to abide by the terms of your IBO Registration Agreement, as they may be amended from time to time in accordance with Rule 1 of the Rules of Conduct. Failure to annually renew your authorization on time will result in the loss of your rights as an IBO, including all rights of sponsorship with your registered IBOs and customers. Note that if your IBO Registration Agreement is processed between August 1 and December 31, your authorization will automatically include the next calendar year.

3. **Independent Contractor Status.** You agree this authorization does not make you an employee, agent, or legal representative of Amway, your Sponsoring IBO, or any other IBO. As a self-employed independent contractor, you will be operating your own independent business, buying and selling products available through Amway on your own account. You have complete freedom in determining the number of hours that you will devote to your business, and you have the sole discretion of scheduling such hours. Amway will not provide you with a place of business, and if you desire a place of business other than your own residence, you will be responsible for procuring, furnishing, and paying the rental for such place of business. With respect to services performed by you under this IBO Registration Agreement, you will not be treated as an employee for federal or state tax purposes, and you will be responsible for payment of any self-employment and other income taxes. You will receive IRS Form 1099-MISC reflecting the amount of income paid to you during the calendar year by Amway, your Sponsoring IBO, or your Platinum IBO. It will be your sole responsibility to account for such income on your individual income tax returns.

4. **Presenting the Plan.** You agree when presenting the Amway IBO Compensation Plan to present it in its entirety as outlined in officially authorized Amway materials, emphasizing that there is only one Amway IBO Compensation Plan for all IBOs, and that sales to end consumers are a requirement to receiving compensation in the form of Performance Bonus on downline IBO volume. In presenting the plan to prospects, you agree not to utilize any literature, materials or aids not produced or specifically authorized in writing by Amway. You agree to instruct all prospective IBOs to review the Amway Business Opportunity Brochure, and to inform them of the average monthly gross income for "active" IBOs.

5. **Selling Product.** You agree that you will not sell any Nutrilite® Food Supplement products until you have read the Responsibility Statement included in the Business Reference Guide, and you agree to make no representations or claims about any products beyond those shown on product labels and/or in official Amway literature. You further agree to sell products available through Amway only in authorized territories, including all of the countries and territories of the Region except for Canada and the Dominican Republic, and to be bound by all sales tax collection agreements between Amway and the various taxing jurisdictions, as well as the related rules and procedures established from time to time by Amway to effectuate those agreements. A price list of retail products, which are optional, is available at www.amway.com.

6. **Amway's Proprietary Information and Trade Secrets.** You recognize and agree that, as further set forth in Rule 4.27 of the IBO Rules of Conduct, LOS information (as defined in Rule 4.27.1), constitutes a commercially advantageous, unique and proprietary trade secret owned by Amway. During the term of your contract with Amway, in accordance with and subject to compliance with Rule 4.27 of the Rules of Conduct and any other related Rules or procedures, Amway grants you a personal, non-exclusive, non-transferable and revocable right to use LOS Information and other Proprietary Information, such as confidential business reports, manufacturing and product developments, and IBO sales, earnings and other financial reports to facilitate your Amway IBO business as contemplated under the Rules of Conduct and other terms of your contract with Amway. You acknowledge the substantial value of LOS Information and other Proprietary Information to Amway and agree to maintain all LOS Information and other Proprietary Information in strictest confidence and to use it only as authorized by Amway and the Rules of Conduct. You further agree to not disclose any LOS Information or other Proprietary Information to any third party, or to use LOS Information or other Proprietary Information in connection with any other businesses or to Compete (as that term is used in Rule 6.5), directly or indirectly, with the business of Amway. Upon resignation, non-renewal, or termination of your Independent Business, you agree promptly to return any and all LOS Information and other Proprietary Information to Amway. This covenant shall survive the expiration or termination of your authorization and contract with Amway.

7. **Non-Competition Agreement.** In accordance with Rule 6.5 of the Rules of Conduct, you agree that during the period while you are an IBO, and for six months following resignation, non-renewal, or termination of your Independent Business, you will not Compete with Amway. This covenant shall survive the expiration or termination of your authorization and contract with Amway.

8. **Non-Solicitation Agreement.** In accordance with Rules 4.14 and 6.5 of the Rules of Conduct, you agree that during the period while you are an IBO, and for two years following resignation, non-renewal, or termination of your Independent Business, you will not encourage, solicit, or otherwise attempt to recruit or persuade any other IBO to Compete with the business of Amway, and, while an IBO, you agree not to solicit, directly or indirectly, other IBOs whom you did not personally register in order to sell, offer to sell, or promote other products, services, or business opportunities, investments, securities, or loans not offered or marketed by Amway. This covenant shall survive the expiration or termination of your authorization and contract with Amway.

9. **Independent Business Owners Association International (IBOAI).** As an Amway IBO, you may support your trade association, the IBOAI, which through its Board of Directors provides IBOs a channel of communication with Amway on key issues affecting the business. The annual fee is included in your registration and renewal fees. If you do not wish to support the IBOAI, you may send a refund request within 90 days of registration or renewal to Customer Support (58C-2A), 7575 Fulton Street East, Ada, MI 49355, and Amway will issue a check or credit to refund the annual fee.

10. **Images / Recordings / Consents.** You agree to permit Amway to obtain photographs, videos, and other recorded media of you or your likeness. You acknowledge and agree to allow any such recorded media to be used by Amway for any lawful purpose, and without compensation. You understand that you may cancel this authorization by sending a certified letter stating such cancellation to Business Communications (SC-2N), 5101 Spaulding Plaza, Ada, MI 49355. You agree that, subject to Amway's policies and procedures and Privacy Statements, Amway may obtain, record, use, hold, transfer, dispose of and otherwise process other Amway IBOs, Amway affiliates and third parties, such personal and business information as may be necessary to enable Amway to fulfill its obligations under your contract, or which Amway determines is expedient to support its business operations and the management of the Line of Sponsorship.

11. **Personal and Business Data.** You agree to obtain, record, use, hold, transfer, dispose of and otherwise process personal information about customers, other Amway IBOs or any other person (however and whomever obtained from) only in accordance with Amway's policies relating to the handling of such information. Unless otherwise provided by Amway, the Amway IBO shall (i) only use such personal information for his/her own Amway business and for no other purpose(s); (ii) comply with Amway's privacy and data security policies as updated from time to time; and (iii) comply with like data security obligations to those imposed on Amway under applicable laws in respect of such information.

12. **Termination by Notice or Upon Breach.** You or Amway may terminate the Agreement at any time and for any reason by giving 30 days written notice to the other party, or without prior notice and with immediate effect as a result of breach of any of the provisions herein. Amway may also take actions short of termination of the Agreement, if the Amway IBO breaches any of its provisions. In determining what actions to take in the event of breach of the Agreement, Amway may consider without limitation the nature and severity of the breach, whether the breach can be or has been cured following notification by Amway of the existence of the same, and whether there are multiple simultaneous, serial or repeating breaches. If you do not agree with action taken by Amway under this paragraph, you may submit your dispute to Conciliation as provided in Rule 11 of the Rules of Conduct.

13. **Modification of Terms.** The terms of this Agreement may be modified as specified in Rule 1 and Rule 11 of the Rules of Conduct.

14. **Jurisdiction and Governing Law.** The formation, construction, interpretation, and enforceability of your contract with Amway as set forth in this IBO Registration Agreement and any incorporated documents shall be governed by and interpreted in all respects under the laws of the State of Michigan without regard to conflict of laws provisions. Notwithstanding the language of this Registration Agreement, the English language version of the IBO Registration Agreement shall govern.

15. **Miscellaneous.** The provisions of your contract with Amway are severable. In the event that any term or provision of your contract with Amway is determined by a court or arbitrator of competent jurisdiction to be invalid or unenforceable in whole or in part, that provision shall be construed or limited in such a way as to make it enforceable and consistent with the manifest intentions of the parties. If such construction or limitation is impossible, the unenforceable provision will be stricken, and the remaining provisions of this Agreement will remain valid and enforceable. No waiver of any default or breach of any provision of this Agreement, or failure to enforce rights contained herein, shall operate as or be deemed a waiver of any subsequent default or breach. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. The provisions of this IBO Registration Agreement, including all documents incorporated herein by reference, embody the whole agreement between you and Amway and supersede any prior agreements, understandings and obligations between you and Amway concerning the subject matter of your contract with Amway.

---

### RETURN THIS COMPLETED FORM TO AMWAY TO FINALIZE YOUR IBO REGISTRATION.

**Pre-registered IBOs:**

If you have already been assigned your IBO ID number (either online at www.amway.com or by phone at 800-253-6500), you are temporarily authorized to act as an IBO for 90 days, subject to the Rules of Conduct. To maintain your IBO authorization without interruption, **Amway must receive and process your completed signature page within 90 days from the date your registration was phoned in or completed online.**