IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF POKORNY, LARRY BLENN, and KENNETH BUSIERE, on behalf of themselves and those similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>QUIXTAR INC., et al.,<br><br>　　　　Defendants. | ) Case No. 07-0201 SC<br>)<br>) ORDER REQUIRING<br>) <u>SUPPLEMENTAL BRIEFING</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I.   **INTRODUCTION**

On November 3, 2010, Plaintiffs Jeff Pokorny, Larry Blenn, and Kenneth Busiere ("Plaintiffs") and Defendants Quixtar Inc., et al. ("Defendants") filed a Motion for Settlement. ECF No. 141 ("First Mot. for Settlement"). The parties sought class certification, appointment of class counsel, and preliminary approval of the class settlement. Id. at 1. In a December 29, 2010 order, the Court expressed concerns about some aspects of the settlement agreement and ordered supplemental briefing by the parties. ECF No. 157 ("Dec. 29, 2010 Order").

Now before the Court is a second Motion for Settlement in which the parties have sought to address the concerns expressed by the Court in its December 29, 2010 Order. ECF No. 162

("Mot."). Plaintiffs and Defendants separately filed briefs in support of the Motion. ECF Nos. 163 ("Pls.' Br."), 171 ("Defs.' Br."). The Court held a hearing on the Motion on June 24, 2011. ECF No. 192 ("June 24, 2011 Hearing Tr."). Having reviewed the materials provided by the parties in support of the Motion and having heard counsel's arguments at the June 24, 2011 hearing, the Court remains concerned about several aspects of the fairness of the proposed settlement. Accordingly, the Court CONTINUES the hearing date on the Motion currently scheduled for July 22, 2011 and requests additional information as follows.

## II. DISCUSSION

The Court set forth a detailed explanation of the factual and procedural background of this case, along with the basic components of the proposed settlement, in its December 29, 2010 Order. Accordingly, the Court does not repeat that discussion here and instead proceeds directly to its particular concerns.

### A. Attorneys' Fees

The Amended Settlement Agreement ("ASA") provides for Quixtar to establish a Cash Fund of $34 million and a Product Credit Fund with a retail value of $21 million. ASA §§ 5.2.1, 5.2.2. It also provides for Quixtar to make a number of changes to its business practices, which Quixtar estimates would cost the company $101 million. Id. § 5.1; Alexander Decl. ¶¶ 11-13.[1]

---

[1] Ray Alexander ("Alexander"), Director of Strategic Planning for Quixtar, submitted a declaration in support of the Motion. ECF No. 165.

2

Plaintiffs indicated at the hearing that they intend to request $20 million in attorneys' fees. June 24, 2011 Hearing Tr. at 9:24-10:2. Attorneys' fees would be paid out of the $34 million Cash Fund. ASA § 12.1.

While a motion for attorneys' fees is not yet before the Court, the apparent disproportion between the size of the Cash Fund and the amount of attorneys' fees counsel intend to request is so great as to call into question the fairness of the proposed settlement. A settlement structure that tethers class counsel's fee award to the number of claim forms actually submitted by the class would help ameliorate this concern. See, e.g., Kakani v. Oracle Corp., No. 06-06493, 2007 U.S. Dist. LEXIS 47515, *14-15 (N.D. Cal. June 19, 2007) (denying preliminary approval of class settlement in part because the amount of attorneys' fees might exceed benefits to the class); Walter v. Hughes, No. 09-2136, 2011 U.S. Dist. LEXIS 72290, *31 ("a settlement that ties the size of the class counsel's attorney fee award to the number of claim forms submitted or the amount disbursed to the class gives class counsel motivation to ensure that notice to the class is as effective as possible").

Given the apparent disproportion between the amount of attorneys' fees class counsel intend to request and the size of the Cash Fund, the Court orders the parties to provide the following information in supplemental briefing, with supporting evidence where necessary:

- Plaintiffs' counsel shall provide documentation of attorney and staff hours spent on the case, with associated billing rates.

- Plaintiffs' counsel shall provide an explanation of how the attorneys' fees will be allocated among the law firms involved.

B. <u>Lead Plaintiffs' Compensation</u>

Plaintiffs' counsel indicated at the June 24, 2011 hearing that they will request an award of approximately $20,000 for each of the named Plaintiffs. June 24, 2011 Hearing Tr. at 10:18-22. Again, while a motion for incentive payments is not currently before the Court, the disproportion between the incentive payments counsel intend to request and the likely average recovery of class members calls into question the fairness of the settlement. The Court therefore requests the following information from counsel:

- Plaintiffs' counsel shall provide an explanation of the work, efforts, and hours spent by the named plaintiffs as a result of their involvement in this case.

C. <u>Injunctive Relief</u>

Under the proposed settlement, Quixtar and Plaintiffs would enter into a Consent Judgment pursuant to which Quixtar would modify a number of its business practices. ASA § 5.1. The parties disagree, however, as to what role the instant litigation played in prompting the changes to Quixtar's business practices listed as "injunctive relief" in § 5.1. Plaintiffs state that "the suit was a substantial cause or a 'catalyst' for the changes made by Quixtar." Pl.'s Mem. at 13 n.5 (internal citations omitted). By contrast, Quixtar maintains that it "began a transformation of its business prior to the filing of the action, including many of the injunctive relief provisions

4

of the proposed consent judgment." Def.'s Mem. at 19. The ASA itself simply states that "Quixtar stipulates that certain reforms in its business instituted after the filing of this action have been motivated by this Action." ASA § 12.2.

When explaining the basis for valuing the proposed injunctive relief at $101 million, Quixtar assigns a value to each of the business changes listed in § 5.1, even though it maintains that some of those changes did not result from this lawsuit. See Alexander Decl. ¶¶ 11-13. Of course, the economic value of changes that Quixtar was going to make regardless of this lawsuit cannot be considered a benefit to the class from proposed settlement. Additionally, as the Court noted at the June 24, 2011 hearing, it remains skeptical of the $101 million valuation of the proposed injunctive relief. June 24, 2011 Hearing Tr. at 8:8-25, 9:1-3. The Court also remains concerned that the proposed injunctive relief would only benefit the small portion of class members who remain affiliated with Quixtar. Accordingly, the Court orders the parties to provide the following information related to the proposed injunctive relief:

- Plaintiffs' counsel shall address whether they will continue to support the proposed settlement if the Court assigns zero economic value to the proposed injunctive relief.

- Quixtar shall provide an explanation of what changes it has undertaken specifically as a result of the instant litigation.

D. Product Credit Fund

The ASA provides that class members who were involved with

5

1 Quixtar for one year or less and have not received a refund of
2 their registration fee will be eligible to receive a bundle of
3 Quixtar vitamin, skincare, and home care products with a retail
4 value of $75.  ASA § 6.2.1.  The Court is concerned that many of
5 the class members who dropped out of Quixtar during the first
6 year may have done so because they were unable to sell the
7 Quixtar products they had purchased.  If that is the case,
8 sending these class members more of the same products would
9 confer little to no benefit upon them at all.  The Court also
10 remains concerned that class members simply may not want
11 skincare, home care, or vitamin products.  Accordingly, the
12 Court orders the parties to provide the following information in
13 supplemental briefing:

- The parties shall address whether providing class members with a $75 credit redeemable for any Quixtar products of their choice would render the proposed settlement fairer to class members.

E.   Notice Plan

Under the proposed notice plan, approximately 1.08 million class members would receive notice of the settlement via email only, unless their emails were returned as undeliverable, in which case they would be sent a postcard notice.  Holland Decl. ¶¶ 5, 8.[2]  In this era of spam-filters and mass email advertising, the Court is concerned that email notice alone may

---

[2] David C. Holland ("Holland"), Executive Vice President of Rust Consulting, submitted a declaration in support of the Motion. ECF 163-1.

be insufficient to draw the attention of class members.[3] The Court is also concerned that the amount of attorneys' fees sought by Plaintiffs' counsel is not displayed clearly enough in the notice documents. The Summary of Notice states: "Plaintiffs' attorneys anticipate seeking fees of 25% of the economic value of the settlement, plus a possible upward adjustment for the value of the business practice changes." ECF No. 162-4 ("Notice Documents"). This sentence is buried in a paragraph entitled "Your Other Rights." Id. Lastly, the Court is concerned that the Summary Notice simply informs recipients that they can opt out of the class or object to the settlement, without informing them how to go about doing so.

The Court cannot conclude that the proposed notice plan constitutes the best notice practicable under the circumstances. The Court's concerns would be mitigated by the following:

- Expert analysis demonstrating that the likely "reach percentage" of email notifications is comparable to that of postcard notifications, or a notice plan that provides for postcards to be sent to all class members for whom mailing addresses are available.

- A section in all notice documents clearly labeled

---

[3] Shannon Wheatman ("Wheatman"), Vice President of Kinsella Media, LLC, provided a declaration assessing the likely effectiveness of the proposed notice plan. ECF No. 163-2. According to Wheatman, research shows that 79 percent of recipients either read or scanned advertising mail sent to their home in 2009. However, Wheatman does not provide information about what percentage of recipients read or scanned email advertisements.

       "Attorneys' Fees" that states, in prominent text, the actual dollar amount that Plaintiffs' counsel intend to request from the Court.

- Information in the Summary Notice instructing recipients how they can object to the settlement and how they can opt out of the class.

## III. CONCLUSION

For the foregoing reasons, the Court DEFERS ruling on the parties' Motion for Settlement. The Court ORDERS the parties to submit supplemental briefing on the issues noted above within ninety (90) days of the date of this Order. These briefs should comply with Civil Local Rules 3-4 and 7-4. The factual allegations in these briefs should be supported with sworn declarations and documentary evidence.

The Court CONTINUES the hearing on the Motion until a date to be determined after the parties' supplemental briefs are filed.

IT IS SO ORDERED.

Dated: July 20, 2011

                                  UNITED STATES DISTRICT JUDGE