# EXHIBIT #3

IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Stuart H. Singer, Esq. (*Pro Hac Vice*)
Carlos M. Sires, Esq. (*Pro Hac Vice*)
Sigrid S. McCawley, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com
E-mail: csires@bsfllp.com
E-mail: smccawley@bsfllp.com

David Boies, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
E-mail: dboies@bsfllp.com

David W. Shapiro (CA SBN 219265)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
E-mail: dshapiro@bsfllp.com

Willie E. Gary, Esq. (*Pro Hac Vice*)
Maria Sperando, Esq. (*Pro Hac Vice*)
GARY, WILLIAMS, FINNEY, LEWIS,
WATSON & SPERANDO
221 East Osceola Street
Stuart, Florida 34994
Telephone: (772) 283-8260
Facsimile: (772) 220-3343
E-mail: weg@williegary.com
E-mail: mps@williegary.com
E-mail: mad@williegary.com

*Attorneys for Plaintiffs Jeff Pokorny, Larry Blenn and Kenneth Busiere*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Jeff Pokorny, Larry Blenn, and Kenneth Busiere, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Quixtar, Inc., James Ron Puryear Jr., Georgia Lee Puryear, and World Wide Group, L.L.C., Britt Worldwide L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt and Peggy Britt,<br><br>Defendants. | **CASE NO. C 07-0201 SC**<br><br>**DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS' FEES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** |

I, CHARLES B. RENFREW, declare as follows:

1.     I have been retained as an expert by counsel for Plaintiffs to opine on the reasonableness of the attorneys' fees sought by counsel for the Plaintiffs in the above-captioned case.  In preparing this declaration, I have reviewed and relied upon the documents and

1

1  materials submitted to me by counsel for Plaintiffs, which include the papers filed by the

2  parties in connection with their motion for preliminary approval of the Amended Settlement

3  Agreement, this Court's orders on that motion, declarations of plaintiffs' counsel and time

4  records of plaintiffs' counsel.  I have also discussed this matter with counsel for Plaintiffs.  In

5  arriving at my opinion, I have assumed that the record will support certain values I have

6  assumed for various items which are part of the proposed settlement of this case.

7      2.      Based upon my analysis, if called as a witness, I could and would competently

8  testify as follows.

9      3.      I am an attorney at law duly licensed to practice before all of the courts of the

10  State of California.  I have been a member of the state bar of California since 1956.

11      4.      I graduated from the University of Michigan Law School in 1956.  Upon

12  graduation, I joined the law firm of Pillsbury, Madison & Sutro, and became a partner in

13  January 5 of 1965.  My practice was principally in the area of anti-trust law.

14      5.      From 1972 to 1980, I served as a United States District Court Judge for the

15  Northern District of California.

16      6.      In 1980, I became Deputy Attorney General of the United States, serving in that

17  capacity until 1981.  I then rejoined Pillsbury, Madison & Sutro.

18      7.      In 1983, I joined Chevron Corporation (then Standard Oil Company of

19  California).  I served as a director and vice-president responsible for legal affairs.  In 1993, I

20  joined the law firm of LeBoeuf, Lamb, Greene & McRae as a partner.  I remained there until

21  1997.  Since then, I have been in private practice and principally engaged in alternative dispute

22  resolution matters and corporate investigations.  I am on the Distinguished Neutrals Panel of

23  the CPR Institute for Dispute Resolution, a leading organization in the Alternative Dispute

24  Resolution field.  I also served as Chairman of the Board of Directors of that organization.

25      8.      While serving as United States District Court Judge, I taught a variety of

26  subjects at the Federal Judicial College in Washington, D.C. to newly appointed federal judges.

CASE NO. C 07-0201 SC    DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS'S FEES

1   During that time, I also taught trial advocacy and other courses at Boalt Hall Law School at the

2   University of California, Berkeley.

3         9.     I am a fellow and former president of the American College of Trial Lawyers.

4         10.    In connection with my private practice of law and service on the United States

5   District Court, I dealt with numerous applications for attorneys' fees.

6         11.    As the chief legal officer of a large international oil company, I had the ultimate

7   responsibility for approving the fees of outside attorneys, which totaled approximately

8   $100,000,000 a year.

9         12.    In my practice as a mediator and arbitrator, I have been involved in disputes

10  concerning attorneys' fees.  Perhaps my most significant service was as a permanent member

11  of the arbitration panels that awarded attorneys' fees in the state tobacco cases.  While I

12  dissented in a majority of the cases, over $14 billion in fees were awarded.

13        13.    I am familiar with the applicable federal law pertaining to the awarding of

14  attorneys' fees.  I am also familiar with applicable California law.  I argued the case of

15  *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), in the California Supreme Court on a *pro bono*

16  basis on behalf of a number of public interest attorneys.

17        14.    I have been asked to opine on attorneys' fees in a number of cases, but have

18  never testified in any of them.

19        15.    The proposed settlement in this case has a number of items of recovery for the

20  Class.  The major items are set forth below and the corresponding value that the parties have

21  agreed to for each item.  It is these values which I assume are correct and upon which I base my

22  opinion:

23  **Economic Relief**

24      •    $34 million cash fund

25      •    $21 million product fund.  This number represents the retail value of the
26           product bundles to be distributed to eligible Class members.  Quixtar has
         estimated its cost of such products to be $13,348,000.

27

28

CASE NO. C 07-0201 SC        DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS'S FEES

**Injunctive Relief**

- 5% price reduction for Quixtar products from the January, 2007, pricing levels to distributors, valued at $53 million.

- Increase in the annual Independent Business Owners ("IBO") training budget of an average of $7 million or more over 1007 levels, valued at $34.8 million.

- Increased quality control with respect to the business support materials not supplied by Quixtar, valued at $13 million.

- An increase in the refund period from thirty (30) days to ninety (90) days, no quantification of value placed.

- Injunctive relief to orient commissions and bonuses more toward actual sales to end-users, no quantification of value placed.

- A change in the alternative dispute procedures, no quantification of value placed.

16.    I do not intend, at this time, to discuss in any detail the ability or qualifications of Plaintiffs' counsel, nor the effort they made during the trial preparation, motion practice, hearings and appellate phases of this litigation. Similarly, I do not address the legal complexity and number of issues involved. I understand that may be appropriate in connection with the actual application for an attorneys fee award in connection with final approval of the settlement.

17.    The award of attorneys' fees is within the sole discretion of this Court, which has had the opportunity to observe counsel in this matter and is in a far better position to evaluate their work and its worth. Through this declaration, I hope to point out certain factors which I believe the Court should consider in arriving at its decision and upon which I have based my opinion.

18.    This case is a common fund case where the attorneys' fees and costs are taken from the recovery by the Class. In the Ninth Circuit, such cases may permit attorneys' fees with a benchmark of twenty-five percent (25%) of the value of the recovery. See, *Staton v. Boeing*, 327 F.31 938, 968 (71h Cir. 2003).

4

19.    In my opinion, there is not a single precise amount of the attorneys' fees that may be awarded.  Instead, there is a range within which attorneys' fees may be reasonable.  The greater the agreement as to the values received by the Class, the narrower the range.  Where, as here, there a dispute as to the value, the range will be larger.

20.    In this case, depending upon the value given the injunctive relief, the range is quite large.  If only the amount of the cash and product funds are considered – $55 million– 25% would be $13,750,000.  If the cost to Quixtar was used instead of the retail value of the products to be distributed, 25% of that amount is $11,387,000.  On the other hand, if the full $100 million value of the injunctive relief asserted by Quixtar was used, an award of attorneys' fees could exceed $30,000,000.  However, fees in this amount would exhaust the cash proceeds and be unreasonable.  Under Ninth Circuit precedent, however, the value of the injunctive relief is a "relevant circumstance" that reasonably supports an increase in the percentage from the 25% benchmark and even if viewed conservatively, the injunctive relief provided easily could justify a percentage enhancement of the 25% benchmark sufficient to support an attorneys' fee in the $15 million range.

21.    In arriving at my opinion, I have used the value of the injunctive relief asserted by Quixtar.  Although Quixtar contended that it had initiated some of the changes in its practices and procedures prior to the litigation, it conceded that the injunctive relief provided in the proposed settlement was valued at approximately $100,000,000.  I am not in a position to provide the Court with a personal evaluation of the value of that injunctive relief. I am not familiar with the entire record in this case, nor do I know the industry or business is involved.  Instead, I have used the Quixtar stated values.

22.    Those values were agreed to by Quixtar, attested to by its witnesses in declarations, and provided to the Court by lead counsel for Quixtar, Mr. Cedric Chao, a highly respected and competent attorney who is known to me to be a leader at the Bar.

23.    I have also relied upon the declaration of Judge Weinstein that the proposed settlement is fair, reasonable and adequate.  Judge Weinstein cited both the "meaningful

CASE NO. C 07-0201 SC          DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS'S FEES

1   monetary consideration" and the "significant injunctive relief" in concluding that the settlement
2   was a fair and reasonable result for all the parties involved.

3       24.    Judge Weinstein also noted that the issue of attorneys' fees was not discussed
4   until the parties reached settlement on the substantive issues.  It was his clear understanding
5   that the amount of attorneys' fees was an issue to be decided by this Court.  He recommended
6   approval of the proposed settlement and stated that "the settlement represented the highest
7   settlement amount that the putative class could have achieved at this time."  (Weinstein Dec.
8   ¶21).  Judge Weinstein also stated that he believed that "[l]ead counsel's skill, expertise, and
9   persistence played a substantial role in achieving this significant statement and benefits
10  secured on behalf of the putative class."  (Weinstein Dec. ¶22).

11      25.    I also relied upon the declaration of Attorney General Goddard, who testified
12  that "the injunctive relief obtained in this proposed settlement is even more valuable than the
13  substantial economic relief," as it "change[s] the corporate culture of Quixtar, set[s] a new
14  standard of practice in the direct marketing community and go[es] a long way toward
15  preventing in the future the abuse of IBO recruits that is alleged in the complaint."

16      26.    I, too, recognize that it is this Court that will set the attorneys' fees, as part of
17  the final approval of the proposed settlement.  At this stage of the proceeding the general
18  practice is to set forth in the notice to the Class that attorneys' fees will be no more than a
19  stated amount.  The Court has the authority and responsibility to award a lesser amount if it
20  feels that that amount constitutes reasonable attorneys' fees under all of the circumstances.

21      27.    It is my understanding that the parties initially recommended that the attorneys'
22  fees be set as not to exceed $20,000,000 to be contained in the notice to the Class.  I further
23  understand that the Court was concerned about the relationship of the cash portion of the award
24  with the requested attorneys' fees.

25      28.    I understand that counsel for Plaintiffs will reduce their requested attorney's fees
26  from $20 million to $15 million in light of the Court's concerns.

27
28
                                    6
CASE NO. C 07-0201 SC       DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS'S FEES

29.     Based upon the above, and upon the assumptions I have made, the $15 million falls within a reasonable range for attorneys' fees.

30.     Some courts have applied the lodestar method as a check on the reasonableness of attorneys' fees in a common fund case. I understand that typically this analysis is performed at the time of final settlement approval, but that the Court has requested that Plaintiffs' counsel submit documentation regarding their lodestar at this time.

31.     The lodestar determination is based upon the careful compilation of time spent and the reasonable hourly compensation each attorney and staff involved in the case.

32.     For purposes of calculating the lodestar, the time spent should be carefully documented and be reasonably necessary in order to reach the result obtained. Inefficiencies or duplicative efforts are not entitled to compensation. The hourly rate is the hourly rate charged by attorneys of like staff in the area for comparable services. The lodestar may be enhanced by a reasonable multiplier in appropriate cases.

33.     I have had the opportunity to review the time records provided by the attorneys working on this case at the Boies, Schiller & Flexner ("BSF") firm. Those time amounts are documented by the declaration of Stuart H. Singer and the exhibits to that declaration. The lodestar amounts for the BSF attorneys on this case is $5,237,459 (which includes $4,791,961 directly on this matter, and $445,498 of time on the related Bussiere case that I understand was essentially consolidated with this matter).

34.     The hourly rates for lawyers at the BSF firm used in their lodestar calculation are $750 for partners Stuart H Singer and Carlos Sires, and $670 for partners William Dzurilla, which are the three partners who devoted the most time to this matter. Associate time was billed at rates generally in the $450-460 range, and paralegal rates were $150.

35.     There are three partners at the Gary, Williams firm, co-counsel for Plaintiff, who also have worked on this matter: Willie Gary, CK Hoffer, and Maria Sperando. I understand, based on Mr. Gary's declaration, that the lodestar for the Gary, Williams firm on this matter is $1,021,950, utilizing a $750 rate for each of the three partners. I note from

7

1  Mr. Gary's declaration that, although contemporaneous time records were not maintained, they

2  have sought to be conservative in setting forth the time expended on this matter.

3        36.     The rates for counsel identified here are for the most current year in which work

4  was performed on this case (the current standard rates for BSF lawyers are higher).   The

5  current rates are used rather than the historic rates.  This is appropriate because it has been

6  almost five years to obtain the resolution of this case.  These rates are within the rates charged

7  by lawyers of comparable skill and experience involved in major cases like the instant case.

8        37.     I have been informed that counsel for Plaintiffs have represented that the

9  lawyers performing work in this case were at the appropriate level, so that partners were not

10  doing work that associates could have done or the attorneys did work that paralegals could have

11  done.

12        38.     The combined lodestar of the two firms involved is therefore approximately

13  $6.2 million.  This does not include additional time required to be expended in the future in the

14  settlement approval process or in monitoring obligations under the settlement agreement.  If an

15  attorneys fee of $15,000,000 were awarded to plaintiffs, that would represent that lodestar

16  incurred to date a multiplier of 2.42.

17        39.     A multiplier of 2.42 is reasonable in a case of this magnitude.  There was not a

18  government case that precedes this case and on which the Plaintiffs could attach their case.

19  The case was complex and difficult.  Judge Weinstein, for whom I have the greatest respect,

20  after ten (10) mediation sessions, opined that the proposed settlement was fair, based upon "due

21  consideration to the complexity of the facts and legal contentions and issues".  It also avoided

22  years of protracted litigation.

23                                    **CONCLUSION**

24        40.     For the reasons stated above, it is my opinion that an attorneys' fee of

25  15,000,000 is reasonable and if this Court gives preliminary approval to the settlement, it

26

27

28

CASE NO. C 07-0201 SC          DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS'S FEES

1 | would be proper to state in the notice to the Class that the attorneys' fees will not exceed

2 | $15,000,000.  The actual award will be determined by this Court at the final hearing.

3 |

4 | Dated:  November 15, 2011

5 |

6 |                                              CHARLES B. RENFREW

CASE NO. C 07-0201 SC           DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS'S FEES

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this 15th day of November, the foregoing has been served via

3

the CM/ECF system on counsel for Defendants at the following address:

4

| | |
|---|---|
| 5    Cedric C. Chao<br>William L. Stern<br>6    James M. Schurz<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>7    San Francisco, California 94105-2482<br>Telephone: (415) 268-7000<br>8    Facsimile: (415) 268-7522<br>cchao@mofo.com<br>9    wstern@mofo.com<br><br>10    *Attorneys for Defendant Quixtar Inc.* | Donald W. Carlson<br>Edward F. Donohue<br>CARLSON, CALLADINE & PETERSON, LLP<br>353 Sacramento Street, 16th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 391-3911<br>Facsimile: (415) 391-3898<br>dcarlson@ccplaw.com<br>edonohue@ccplaw.com<br><br>*Additional counsel for Defendants James Ron Puryear, Georgia Lee Puryear, World Wide Group, L.L.C.* |
| 12    James R. Sobieraj<br>Ralph J. Gabric<br>13    Julie L. Leichtman<br>BRINKS HOFER GILSON & LIONE<br>455 N. Cityfront Plaza Drive<br>14    Chicago, Illinois 60611<br>Telephone: (312) 321-4200<br>15    Facsimile: (312) 321-4299<br>jsobieraj@usebrinks.com<br>16<br>*Attorneys for Defendant Quixtar Inc.*<br>17 | J. William Blue, Jr.<br>NORTHEN BLUE, L.L.P.<br>1414 Raleigh Road, Suite 435<br>The Exchange At Meadowmont<br>Chapel Hill, NC 27517<br>Telephone: (919) 968-4441<br>Facsimile: (919) 942-6603<br>jwb@nbfirm.com<br><br>*Additional counsel for Defendants World Wide Group, L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt, Peggy Britt* |
| 19    C. Matthew Andersen<br>WINSTON & CASHATT<br>1900 Bank of America Bldg.<br>601 W. Riverside<br>Spokane, WA 99201<br>Telephone: (509) 838-6131, (800) 332-0534<br>Facsimile: (509) 838-1416<br>cma@winstoncashatt.com<br><br>*Additional counsel for Defendants James Ron Puryear, Georgia Lee Puryear, World Wide Group, L.L.C.* | Benjamin K. Riley<br>HOWREY LLP<br>525 Market Street, Suite 3600<br>San Francisco, CA 94105-2708<br>Telephone: (415) 848-4900<br>Facsimile: (415) 848-4999<br>rileyb@howrey.com<br><br>*Additional counsel for Defendants World Wide Group, L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt, Peggy Britt* |

26

27                             /s/Stuart Singer
                            *Attorney for Plaintiffs*

28

CASE NO. C 07-0201 SC    DECLARATION OF CHARLES B. RENFREW RE ATTORNEYS'S FEES