# EXHIBIT #4

IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Stuart H. Singer. Esq. (*Pro Hac Vice*)
Carlos M. Sires. Esq. (*Pro Hac Vice*)
Sigrid S. McCawley, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale. Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com
E-mail: csires@bsfllp.com
E-mail: smccawley@bsfllp.com

David Boies. Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
E-mail: dboies@bsfllp.com

David W. Shapiro (CA SBN 219265)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street. Suite 900
Oakland. California 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
E-mail: dshapiro@bsfllp.com

Willie E. Gary. Esq. (*Pro Hac Vice*)
Maria Sperando. Esq. (*Pro Hac Vice*)
GARY, WILLIAMS, FINNEY. LEWIS,
WATSON & SPERANDO
221 East Osceola Street
Stuart. Florida 34994
Telephone: (772) 283-8260
Facsimile: (772) 220-3343
E-mail: weg@williegary.com
E-mail: mps@williegary.com
E-mail: mad@williegary.com

*Attorneys for Plaintiffs Jeff Pokorny, Larry Blenn and Kenneth Busiere*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Jeff Pokorny. Larry Blenn, and Kenneth Busiere, on behalf of themselves and those similarly situated, <br><br> Plaintiffs. <br><br> v. <br><br> Quixtar, Inc., James Ron Puryear Jr.. Georgia Lee Puryear, and World Wide Group, L.L.C., Britt Worldwide L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt and Peggy Britt, <br><br> Defendants. | CASE NO. C 07-0201 SC <br><br> **DECLARATION OF TERRY GODDARD** |

I, Terry Goddard, hereby declare, based on personal knowledge unless otherwise noted, as follows:

1. I have been retained by Plaintiffs' counsel to provide my "objective and independent analysis" of the proposed settlement between the parties in this case. I agreed to do so and have personally reviewed the pleadings, decisions and declarations in this case. I

1   submit this declaration in support of the parties' Joint Motion for Approval of Amended

2   Settlement Agreement.

3       2.     From January, 2003 through January, 2011, I served as the Attorney General of

4   the State of Arizona. Prior to that, I was an attorney in private practice; between 1984 and

5   1990 I was Mayor of the City of Phoenix, Arizona.

6       3.     During my eight (8) years as Arizona Attorney General, I was involved in many

7   high dollar settlements in the public interest. In some cases, I was the actual negotiator and in

8   all I was the ultimate approving authority for the State of Arizona. These settlements resolved

9   litigation with, among other defendants, Qwest Communications, Western Union, Honeywell

10   International, Wal-Mart, Auto Zone, Pulte Holmes, Labor Ready, numerous financial

11   institutions including Wells Fargo, Chase, Bank America and Ameriquest Mortgage, numerous

12   drug manufactures including Pfizer, Eli Lilly, Bayer and Merck, as well as multiple auto

13   dealers and land developers in Arizona. Many of the cases I settled involved complex fact

14   patterns and legal issues, and millions (in some cases hundreds of millions) of dollars in

15   claimed damages.

16       4.     Most of the settlements also involved significant injunctive relief and, often, the

17   appointment of a Master, Trustee or other administrator to make sure that the terms of the

18   settlement were carried out.

19       5.     In 2010, I received from the National Association of Attorneys General (NAAG)

20   that organization's highest honor, the Kelley-Wyman Award, a recognition given to the

21   Attorney General who has done the most to advance the organization's objectives. Since

22   retiring as Arizona Attorney General, I have been a private practice attorney and a Senior

23   Fellow at the National State Attorneys General Program at Columbia Law School.

24       6.     I set forth my background above to demonstrate that my perspective on the

25   settlement of this matter is rooted in significant experience in the resolution of litigation

26   brought in the public interest. The settlement proposed in this case is noteworthy given that it

27   involves some particularly difficult issues, including the varied interests of Quixtar, the current

28   IBOs, past IBOs and the BSM Companies, the scope and valuation of the economic and

2

1   injunctive components of the proposed settlement, and the scope and language of the proposed
2   release.

3         7.     Quixtar (Amway) is one of if not the largest and most successful direct
4   marketing companies in the world. Founded in 1959, it uses network marketing to sell a
5   variety of products, primarily in the health, beauty, and home care markets. Quixtar (Amway)
6   conducts business through a number of affiliated companies in more than 80 countries and
7   territories around the world. The company and its related family of companies reported sales of
8   $9.2 billion for the year ending December 31, 2010. According to declarations in this case,
9   there are currently 305,264 IBOs. The company was ranked No.114 among the largest global
10  retailers by Deloitte in 2006, and No. 32 among the largest private companies in the U.S. by
11  Forbes in 2010. As a world leader in direct marketing, changes made in the policy and
12  procedures at Quixtar will have a substantial effect on the future practices and procedures of
13  the direct marketing community.

14        8.     In the face of the aforementioned complications and difficulties, and the
15  substantial resources of the Defendants to mount a vigorous defense, the parties have reached a
16  settlement which provides the members of the class a substantial economic benefit of
17  approximately Fifty-Five Million Dollars ($55,000,000) in cash and product and significant
18  injunctive relief.

19        9.     It is my opinion that, the injunctive relief obtained in this proposed settlement is
20  even more valuable than the substantial economic relief. Properly monitored by Plaintiffs, as
21  the proposed settlement envisions, the injunctive relief promises to change the corporate culture
22  of Quixtar, set a new standard of practice in the direct marketing community and go a long way
23  toward preventing in the future the abuse of IBO recruits that is alleged in the complaint.

24       10.    In my experience as a state Attorney General, multi-level sales schemes are a
25  significant and largely unmet challenge for state consumer protection officials. In spite of the
26  significant number of victims each year from such schemes, the difficulty of proof and the zeal
27  of many current participants in the schemes makes state consumer actions relatively rare. For
28  this reason, the precedent established by this case at the District Court and affirmed on appeal

3

1    to the Ninth Circuit determining that the dispute resolution procedures imposed on the IBOs by

2    Quixtar were "substantively unconscionable" and the change in Quixtar corporate culture that

3    will result from the proposed settlement are particularly significant.

4        11.    Among the requirements of the injunctive relief in the proposed Settlement are:

5          • Extension of the period (from 30 to 90 days) in which an IBO can obtain a

6            refund of the initial enrollment fee;

7          • Better clarity in the application form disclosures, including that references to

8            income are to specify that they refer to gross (not net) income;

9          • Notice of the availability of free, company-provided training for IBOs in

10           marketing and merchandising and a substantial increase in the amount

11           provided by Quixtar for such training;

12         • Clear notice of the company's refund policy for products purchased by

13           IBOs;

14         • Posting of the entire product price list on line and price reductions provided

15           in the settlement;

16         • Prohibiting acts or practices which discourage the buyback of products from

17           IBOs seeking to leave the business under commercially reasonable terms;

18           and

19         • A clear statement that purchases of Business Support Materials (BSM)

20           products are optional for IBOs.

21         • In addition, the settlement preserves the district court and Ninth Circuit

22           opinions with respect to the mediation and arbitration provisions, which

23           decisions require substantial reforms in those dispute resolution processes.

24       12.    Taken together, these proposed requirements will create significant changes in

25   the experience of new and existing Quixtar IBOs.

26         • They will have a far more realistic view of the requirements and risks of the

27           business they are participating or entering and, if they choose to continue, be

28           better equipped to succeed. Because of these proposed requirements, it is

4

probable that fewer participants will be swept up in the emotional frenzy that is often attributed to the Quixtar (Amway) recruitment practices and be able to make a clear assessment of what they are getting into or have signed up for before committing large sums to training materials and products. The extended refund period allows a better opportunity for 'buyer's remorse' once the financial realities of operating a Quixtar business become clear.

- The gross/net income representation puts in perspective, from the beginning, the large costs of maintaining a Quixtar sales business. The new emphasis on free, company provided training, together with the statement that purchase of BSM products is not required, goes a long way toward breaking the stranglehold on new and existing IBOs of the BSM sellers. Allegedly, in the past, new IBOs were given the impression that the purchase of BSM items was a condition of success at Quixtar. The free company provided training program (together with a substantial increase in the training budget for two years) considered in connection with the statement that the purchase of BSM products is optional for the IBOs, allows IBOs to make a more informed choice of which, if any, BSM products they elect to purchase.

- The refund provisions will make it easier for an IBO to withdraw from the program without financial consequences.

- Finally, a price list of all products posted on the web makes comparison to similar products offered by other companies much easier. IBOs can quickly determine if the Quixtar offerings are not competitively priced, as alleged. In that case, the IBO can quickly determine whether they can successfully market these products to end users.

13.    Important additional proposed settlement provisions provide that no IBO will be compensated PRIMARILY for recruitment and that bonuses must be based on "reasonably reliable reported levels" of end user sales. These requirements have the potential to transform precisely those aspects of the Defendants' behavior that have been alleged to be an illegal

5

1  pyramid scheme. To be effective, these provisions will require a vigorous post-settlement

2  education program for the IBOs and resolution of t what is meant by "primarily" and how to

3  determine which sales are to end users and which are to down line IBOs. Provided these issues

4  are resolved and that complaints are submitted to Plaintiffs, investigated thoroughly and

5  brought to the company's attention at the annual meetings, these provisions will be a significant

6  benefit to current and future IBOs.

7         14.     The last major area of improvement provided by the proposed settlement relates

8  to the Business Support Materials. Allegedly, these training and motivational products

9  produced and sold not by Quixtar but by the senior level marketers were required for success in

10  the business. The proposed settlement agreement makes clear that purchase of BSM products

11  is not required. Further, the company will take responsibility for allegations made in the BSM

12  products. This new responsibility for the quality control of statements made by authorized  but

13  independent BSM companies goes a long way towards controlling irresponsible or inaccurate

14  statements made to attract or retain Quixtar IBOs.

15         15.     The effectiveness of the proposed injunctive relief depends on vigorous

16  enforcement by the Plaintiffs after a settlement is approved. In the proposed settlement,

17  enforcement is done through complaints received by the plaintiff representatives and resolved

18  in meetings with defendants annually for four years. Such an enforcement mechanism will

19  depend on clear communications with the IBO community as to the requirements of the

20  settlement and the adoption of an unambiguous whistleblower agreement protecting current

21  IBOs who report or come forward to answer follow-up questions about noncompliance with

22  settlement terms or former IBOs, such as the named plaintiffs, reporting such noncompliance.

23         16.     The proposed settlement terms provide fair and reasonable relief to the Plaintiff

24  class. The economic relief (cash payments and products) to the class are substantial. The

25  injunctive terms are potentially transformative, not just for Quixtar, but for the entire direct

26  marketing community. Further, in light of the sophisticated factual and legal issues involved,

27  the proposed settlement benefits the class by avoiding years of uncertainty from litigation and

28

1   appeals that would undoubtedly take place absent a settlement, costing Plaintiffs extraordinary

2   amounts of time.

3       17.    Based on my experience, I believe that the total of approximately Fifty-Five

4   Million Dollars obtained in cash and product for the Class through the settlement, along with

5   the proposed injunctive relief, represents a fair and reasonable result for the Plaintiff class. I

6   respectfully recommend that this settlement be approved by the District Court.

7       I declare, under penalty of perjury, that to the best of my knowledge the foregoing facts

8   are true and correct under the laws of the United States of America.

9       Executed this 15 day of November, 2011 at Phoenix, Arizona.

10

11

12                                              TERRY GODDARD

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

1

## CERTIFICATE OF SERVICE

2

     I hereby certify that on this 16th day of November, 2011, the foregoing has been served

3

via the CM/ECF system on counsel for Defendants at the following address:

| | |
|---|---|
| 4<br>5<br>6<br>7<br>8<br>9<br>10 | Cedric C. Chao<br>William L. Stern<br>James M. Schurz<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522<br>cchao@mofo.com<br>wstern@mofo.com<br><br>*Attorneys for Defendant Quixtar Inc.* | Donald W. Carlson<br>Edward F. Donohue<br>CARLSON, CALLADINE & PETERSON, LLP<br>353 Sacramento Street, 16th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 391-3911<br>Facsimile: (415) 391-3898<br>dcarlson@ccplaw.com<br>edonohue@ccplaw.com<br><br>*Additional counsel for Defendants James<br>Ron Puryear, Georgia Lee Puryear,<br>World Wide Group, L.L.C.* |
| 11<br>12<br>13<br>14<br>15<br>16<br>17 | James R. Sobieraj<br>Ralph J. Gabric<br>Julie L. Leichtman<br>BRINKS HOFER GILSON & LIONE<br>455 N. Cityfront Plaza Drive<br>Chicago, Illinois 60611<br>Telephone: (312) 321-4200<br>Facsimile: (312) 321-4299<br>jsobieraj@usebrinks.com<br><br>*Attorneys for Defendant Quixtar Inc.* | J. William Blue, Jr.<br>NORTHEN BLUE, L.L.P.<br>1414 Raleigh Road, Suite 435<br>The Exchange At Meadowmont<br>Chapel Hill, NC 27517<br>Telephone: (919) 968-4441<br>Facsimile: (919) 942-6603<br>jwb@nbfirm.com<br><br>*Additional counsel for Defendants World<br>Wide Group, L.L.C., American<br>Multimedia Inc., Britt Management, Inc.,<br>Bill Britt, Peggy Britt* |
| 18<br>19<br>20<br>21<br>22<br>23<br>24 | C. Matthew Andersen<br>WINSTON & CASHATT<br>1900 Bank of America Bldg.<br>601 W. Riverside<br>Spokane, WA 99201<br>Telephone: (509) 838-6131, (800) 332-0534<br>Facsimile: (509) 838-1416<br>cma@winstoncashatt.com<br><br>*Additional counsel for Defendants James<br>Ron Puryear, Georgia Lee Puryear,<br>World Wide Group, L.L.C.* | Benjamin K. Riley<br>HOWREY LLP<br>525 Market Street, Suite 3600<br>San Francisco, CA 94105-2708<br>Telephone: (415) 848-4900<br>Facsimile: (415) 848-4999<br>rileyb@howrey.com<br><br>*Additional counsel for Defendants World<br>Wide Group, L.L.C., American<br>Multimedia Inc., Britt Management, Inc.,<br>Bill Britt, Peggy Britt* |

25

26                             /s/Stuart Singer
                             *Attorney for Plaintiffs*

27

28

CASE NO. C 07-0201 SC        DECLARATION OF TERRY GODDARD