# EXHIBIT #6

IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Stuart H. Singer, Esq. (*Pro Hac Vice*)
Carlos M. Sires, Esq. (*Pro Hac Vice*)
Sigrid S. McCawley, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com
E-mail: csires@bsfllp.com
E-mail: smccawley@bsfllp.com

David Boies, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
E-mail: dboies@bsfllp.com

David W. Shapiro (CA SBN 219265)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
E-mail: dshapiro@bsfllp.com

Willie E. Gary, Esq. (*Pro Hac Vice*)
Maria Sperando, Esq. (*Pro Hac Vice*)
GARY, WILLIAMS, FINNEY, LEWIS,
WATSON & SPERANDO
221 East Osceola Street
Stuart, Florida 34994
Telephone: (772) 283-8260
Facsimile: (772) 220-3343
E-mail: weg@williegary.com
E-mail: mps@williegary.com
E-mail: mad@williegary.com

*Attorneys for Plaintiffs Jeff Pokorny, Larry Blenn and Kenneth Busiere*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Jeff Pokorny, Larry Blenn, and Kenneth Busiere, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Quixtar, Inc., James Ron Puryear Jr., Georgia Lee Puryear, and World Wide Group, L.L.C., Britt Worldwide L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt and Peggy Britt, <br><br> Defendants. | CASE NO. C 07-0201 SC <br><br> **SUPPLEMENTAL DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON SETTLEMENT NOTICE PLAN** |

1      I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

2      1.      I am a Vice President of Kinsella Media, LLC ("KM"), an advertising and

3      notification firm in Washington, D.C. specializing in the design and implementation of

4      notification programs. My business address is 2120 L Street, NW, Suite 860, Washington, D.C.

5      20037. My telephone number is (202) 686-4111.

6      2.      I was asked by Class Counsel in this action to design the Notices and Notice

7      Plan to inform Class Member about their rights in the litigation. I submitted a declaration

8      entitled "Declaration of Shannon R. Wheatman, Ph.D. on Adequacy of Notice and Proposed

9      Settlement Notice Program" dated April 28, 2011. In that Declaration, I detailed my class

10     action notice experience, my leadership in the form and content of class action notice, and my

11     publications on class action notice and due process. I also provided my educational and

12     professional experience relating to notice of class actions and my qualifications to render

13     opinions on the overall adequacy of notice programs.

14     3.      In my previous declaration I discussed my work with the Federal Judicial Center

15     ("FJC") where I worked with The Civil Rules Advisory Committee on illustrative plain

16     language notices. The model notices are available at www.fjc.gov.

17     4.      I have personally been involved in class actions where the court approved the

18     use of email notice, including: *In re: Online DVD Rental Antitrust Litigation*, MDL No. 2029

19     (N.D. Cal.), *Blessing v. Sirius XM Radio Inc.*, No 09-CV-10035 HB (S.D.N.Y.), and *Nelson v.*

20     *Mead Johnson & Company, LLC*, No. 09-cv-61625 (S.D. Fla.).

21     5.      The Court asked some questions about the proposed Notice Plan in the "Order

22     Requiring Supplemental Briefing." I will address them below.

23            a.      The Court is concerned about email notice and thinks that it "may be

24            insufficient to draw the attention of class members." I understand the Court's concern

25            about email, which is why I included supplemental paid media in the proposed notice

26            plan. I also took steps to ensure the Email Notice will be noticed by Class Members

27            and will be easy to read and understand.

28

1        i.      To design the paid media segment of the notice plan, KM

2    reviewed data from the Direct Selling Association ("DSA").[1]  DSA's 2010 Fact

3    Sheet shows that 81.8% of direct sellers are female and 86.4% of them are 30

4    years of age or older.[2]

5        ii.     KM also analyzed syndicated data available from the GfK MRI's

6    2010 *Doublebase Study*. GfK MRI is a nationally accredited media and

7    marketing research firm that provides syndicated data on audience size,

8    composition, and other relevant factors pertaining to major media including

9    broadcast, magazines, newspapers, and outdoor advertising. GfK MRI provides

10   a single-source measurement of major media, products, services, and in-depth

11   consumer demographic and lifestyle/psychographic characteristics.

12       iii.    Using GfK MRI, media vehicles were selected for their strength

13   and efficiency in reaching potential class members.

14       iv.     The proposed paid media campaign (*Family* Circle, *Ladies'*

15   *Home Journal*, and *TV Guide*) will reach:  28.1% of Women who are 35 years

16   and older; 25.6% of Women who are 25 years and older; and 15.9% of adults

17   who are 18 years and older.

18       v.      Although the U.S. Postal Service has conducted surveys on the

19   "read or scan" percentage of postal mailings (surveys on which I commented on

20   in my prior declaration), I am not aware of any similar research that has been

21   done with respect to email.  However, in the "Supplemental Declaration of

22   David C. Holland Regarding Email Notice Delivery Rates" it is reported that, in

23   Rust Consulting, Inc.'s experience, the average undeliverability rate for email

24   notice campaigns is less than 20%.

25

26

27   [1] "The Direct Selling Association (DSA) is the national trade association of the leading firms that manufacture and distribute goods and services sold directly to consumers."

28   [2] Direct Selling Association, *2010 Fact Sheet*, available online at http://www.dsa.org/research/industry-statistics/#GENDER (last visited Nov. 2, 2011).

2

vi.      The proposed Email Notice was designed to come to the attention of the class member with a short subject line: "Amway/Quixtar Settlement." Furthermore, the Email Notice was written so it would not be caught up in SPAM filters.

vii.     The Email vendor in this case, Vertis Communications, conducted a SPAM filter test on the proposed Email Notice. This filter test looks at the content, format and key words used in the message to determine how likely it is to be blocked by a SPAM filter. Vertis reports that the Email Notice would likely get through 89% of SPAM filters.

viii.    The Email Notice was written in plain language to ensure class members can quickly read and understand it. I measured the readability of the Email Notice using the Flesch-Kincaid readability test.[3]  The measure of readability used here is the indication of number of years of education that a person needs to be able to understand the text easily on the first reading (a score of 12 means the text can be understood by a high school graduate, a score greater than 12 means the text can be understood by someone with a college education).  According to the readability test, the Email Notice will be understood by anyone with an 8th grade reading level.

b.      The Court does not think the attorneys' fees are "displayed clearly enough in the notice documents."

i.      The language used to describe the attorneys' fees is similar to the language used in the FJC's model notices. *See* Exhibit 1 for a copy of an FJC model summary notice.

ii.      However, to make the attorneys' fee language more noticeable it has been placed in a standalone section in bold print in the Email Notice

---

[3] The two most widely used readability scales are the Flesch-Kincaid Grade Level Readability Test and the Gunning Fog Index. The formula for calculating Flesch-Kincaid analyzes the average sentence length and the average number of syllables per word. The Fog Index, measures readability by manipulating two factors: the average sentence length and the percentage of hard words.

1   (Exhibit 2), the Postcard Notice (Exhibit 3), and the Publication Notice (Exhibit
2   4) (collectively the "Summary Notices").[4]

3       c.      The Court does not think the Summary Notices provide enough
4   information for the recipient to understand how to "opt out of the class or object to the
5   settlement."

6       i.      The Summary Notices have been updated to include the bolded
7   reference: "**The detailed notice, available at www.QuixtarClass.com or by**
8   **calling 1-800-000-0000, explains how to exclude yourself or object.**"[5]

9       ii.     This language closely follows that used in the FJC's model plain
10  language Summary Notices. *See* Exhibit 1 for a copy of an FJC model summary
11  notice.

12      iii.    The complete objection/exclusion procedure cannot be put in the
13  email and publication notices, as the court requested, because they would not fit
14  unless the font is reduced to an unacceptably small size.

15  6.  The revised Long Form Notice is attached as Exhibit 5.

16  7.  The revised Notices effectively communicate information about the *Quixtar* Settlement.

17  8.  It is my opinion that the paid media program in combination with the direct notice will
18  effectively reach at least 80% of the Class.

20      I declare under penalty of perjury under the laws of the United States of America that
21  the foregoing is true and correct.

23  *Shan Wh*

25  SHANNON R. WHEATMAN

26  Executed in Washington, D.C. this 11th day of November, 2011.

---

[4] If a class member has chosen to only receive emails in plain text the bold formatting will not show up.
[5] If a class member has chosen to only receive emails in plain text the bold formatting will not show up.

4

# EXHIBIT 1

LEGAL NOTICE

# If you bought XYZ Corp. stock in 1999, you could get a payment from a class action settlement.

## Para una notificación en Español, llamar o visitar nuestro website.

A settlement has been proposed in a class action lawsuit about the price of XYZ Corporation stock. The settlement will provide $6.99 million to pay claims from XYZ investors who bought the company's stock during 1999. If you qualify, you may send in a claim form to get benefits, or you can exclude yourself from the settlement, or object to it.

The United States District Court for the District of State authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

### Who's Included?

You are a Class Member and could get benefits if you bought shares of XYZ stock during 1999. You are a Class Member only if you bought shares of XYZ stock individually, not simply through a mutual fund. If you sold XYZ stock during 1999, you are a Class Member only if those shares you sold were purchased in 1999. XYZ officers and directors, as well as immediate family members of directors of XYZ during 1999, are not Class Members.

Contact your broker to see if you had shares of XYZ stock. If you're not sure you are included, you can get more information, including a detailed notice, at www.XYZsettlement.com or by calling toll free 1-800-000-0000.

### What's this About?

The lawsuit claimed that XYZ and its Chief Executive Officer, Anne Adams, misled investors by intentionally overstating the profits that the company expected to earn in the future. The lawsuit also claimed XYZ issued false and misleading information about income and earnings per share for 1999, and that XYZ executives sold their personal shares at inflated prices during that time. XYZ and Ms. Adams deny they did anything wrong. The Court did not decide which side was right. But both sides agreed to the settlement to resolve the case and get benefits to investors. The two sides disagree on how much money could have been won if the investors had won at a trial.

### What does the Settlement Provide?

XYZ agreed to create a fund of $6.99 million to be divided among all Class Members who send in valid claim forms. A Settlement Agreement, available at the website below, describes all of the details about the proposed settlement.

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. Generally, if you bought more shares and have more Net Recognized Losses (as explained in the detailed notice), you will get more money. If you bought fewer shares and have fewer Net Recognized Losses, you will get less. All of the $6.99 million will be paid out.

If every eligible Class Member sends in a valid claim form, the average payment will be 17½ cents for each share of stock bought in 1999. The number of claimants who send in claims varies widely from case to case. If less than 100% of the Class sends in a claim form, you could get more money.

### How do you Ask for a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. To qualify for a payment, you must send in a claim form. **Claim forms are due by Month 00, 0000.**

### What are your Other Options?

If you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000**, or you won't be able to sue, or continue to sue, XYZ about the legal claims in this case. If you exclude yourself, you can't get money from this settlement. If you stay in the settlement, you may object to it by **Month 00, 0000**. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (*North v. XYZ Corp.*, Case No. CV-00-5678) on **Month 00, 0000**, to consider whether to approve the settlement and a request by the lawyers representing all Class Members (Lawfirm LLP, of City, ST) for $3,010,000 (7½ cents per share) in attorneys' fees and costs, for investigating the facts, litigating the case, and negotiating the settlement. The fees and costs won't reduce the settlement fund. You may ask to appear at the hearing, but you don't have to. For more information, call toll free 1-800-000-0000, visit the website www.XYZsettlement.com, or write to XYZ Settlement, P.O. Box 000, City, ST 0000-0000.

**1-800-000-0000          www.XYZsettlement.com**

# EXHIBIT 2

To:
From:      Amway/Quixtar Settlement Administrator
Subject:   Amway/Quixtar Settlement

### If You Were an Amway/Quixtar Distributor at Any Time Between
### January 1, 2003 and Month 00, 201_, You Could Get Benefits from a Settlement.

*[Headline will be translated into Spanish.] Para una notificación en Espanol, llamar 1-800-000-0000 o visitar www.QuixtarClass.com*

Records show that you are a current or former Amway/Quixtar distributor. A lawsuit was filed against Quixtar, Inc., ("Quixtar") over its pricing of goods and its recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs"). Quixtar denies that it did anything wrong. The Settlement includes $34 million in cash, $21 million (retail value) in free products, and a legal commitment from Quixtar that it will change certain business practices. Go to www.QuixtarClass.com for more information and to file a claim online.

**Who's Included?** You are included in the Settlement if at any time between January 1, 2003 and Month 00, 201_, you were an IBO or a legal entity through which an IBO conducted a Quixtar-related business.

**What Can You Get?** Former IBOs who quit Quixtar before April 29, 2011 may be eligible to receive a cash payment and/or free products. Former IBOs may be eligible to get (1) up to $75 in free products if you paid a registration fee which was not refunded and if you did not renew your Quixtar distributorship; (2) up to $2,000 to repay you for the purchase of business support materials, and (3) up to $10,000 if you lost more than $10,000 or filed for bankruptcy because of your participation as an IBO. Current IBOs are not eligible to receive compensation from the Settlement, however, they will benefit from certain business reforms.

**How to Get Benefits?** You must submit a Claim Form to get benefits. The Claim Form is available at www.QuixtarClass.com or by calling 1-800-000-0000. You can submit a Claim Form online or by mail. The deadline to submit a Claim Form is **Month 00, 201_**.

**Your Other Rights.** If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself is **Month 00, 201_**. If you do not exclude yourself you will not be able to sue Quixtar and sellers of "business support materials" for any claim relating to the lawsuit. If you stay in the Settlement, you may object to it by **Month 00, 201_**. **The detailed notice, available at www.QuixtarClass.com or by calling 1-800-000-0000, explains how to exclude yourself or object.** The Court will hold a hearing on **Month 00, 201_** to consider whether to approve the Settlement and award attorneys' fees. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**Attorneys' Fees. The Plaintiffs' attorneys anticipate seeking fees of $15,000,000 (15 million dollars). Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund.**

### For more information or a Claim Form:   1-800-000-0000   www.QuixtarClass.com

# EXHIBIT 3

# If You Were an Amway/Quixtar Distributor At Any Time Between January 1, 2003 and Month 00, 201_, you could get benefits from a Settlement.

Records show that you are a current or former Amway/Quixtar distributor. A lawsuit was filed against Quixtar, Inc. ("Quixtar") over its pricing of goods and its recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs"). Quixtar denies that it did anything wrong. The Settlement includes $34 million in cash, $21 million (retail value) in free products, and a legal commitment from Quixtar that it will change certain business practices. Go to www.QuixtarClass.com for more information and to file a claim online.

**Who's Included?** You are included in the Settlement if at any time between January 1, 2003 and Month 00, 201_, you were an IBO or a legal entity through which an IBO conducted a Quixtar-related business.

**What Can You Get?** Former IBOs who quit Quixtar before April 29, 2011 may be eligible to receive a cash payment and/or free products. Former IBOs may be eligible to get (1) up to $75 in free products if you paid a registration fee which was not refunded and if you did not renew your Quixtar distributorship; (2) up to $2,000 to repay you for the purchase of business support materials, and (3) up to $10,000 if you lost more than $10,000 or filed for bankruptcy because of your participation as an IBO. Current IBOs are not eligible to receive compensation from the Settlement, however, they will benefit from certain business reforms.

**How to Get Benefits?** You must submit a Claim Form to get benefits. The Claim Form is available at www.QuixtarClass.com or by calling 1-800-000-0000. You can submit a Claim Form online or by mail. The deadline to submit a Claim Form is **Month 00, 201_**.

**Your Other Rights.** If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself is **Month 00, 201_**. If you do not exclude yourself you will not be able to sue Quixtar and sellers of "business support materials" for any claim relating to the lawsuit. If you stay in the Settlement, you may object to it by **Month 00, 201_**. **The detailed notice, available at www.QuixtarClass.com or by calling 1-800-000-0000, explains how to exclude yourself or object.** The Court will hold a hearing on **Month 00, 201_** to consider whether to approve the Settlement and award attorneys' fees. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**Attorneys' Fees. The Plaintiffs' attorneys anticipate seeking fees of $15,000,000 (15 million dollars). Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund.**

**For more information or a Claim Form:**       **1-800-000-0000**       **www.QuixtarClass.com**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

*Court-Ordered Legal Notice*

**CLAIMS ADMINISTRATOR**
**PO BOX 0000**
**MINNEAPOLIS, MN 00000-0000**

**Important Notice About**
**Quixtar (Amway) Settlement**

*[Translate Headline into Spanish]*
*Para una notificación en Español,*
*llamar 1-800-000-0000 o visitar*
*www.QuixtarClass.com*

NAME
ADDRESS
CITY STATE ZIP CODE

# EXHIBIT 4

# If You Were an Amway / Quixtar Distributor

## at Any Time Between January 1, 2003 and Month 00, 201_,

## You Could Get Benefits from a Settlement.

A lawsuit was filed against Quixtar, Inc., ("Quixtar") over its pricing of goods and its recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs"). Quixtar denies that it did anything wrong. The Settlement includes $34 million in cash, $21 million (retail value) in free products, and a legal commitment from Quixtar that it will change certain business practices. Go to www.QuixtarClass.com for more information and to file a claim online.

### Who's Included?

You are included in the Settlement if at any time between January 1, 2003 and Month 00, 201_, you were an IBO or a legal entity through which an IBO conducted a Quixtar-related business.

### What Can You Get?

Former IBOs who quit Quixtar before April 29, 2011 may be eligible to receive a cash payment and/or free products. Former IBOs may be eligible to get (1) up to $75 in free products if you paid a registration fee which was not refunded and if you did not renew your Quixtar distributorship; (2) up to $2,000 to repay you for the purchase of business support materials, and (3) up to $10,000 if you lost more than $10,000 or filed for bankruptcy because of your participation as an IBO. Current IBOs are not eligible to receive compensation from the Settlement, however, they will benefit from certain business reforms.

### How to Get Benefits?

You must submit a Claim Form to get benefits. The Claim Form is available at www.QuixtarClass.com or by calling 1-800-000-0000. You can submit a Claim Form online or by mail. The deadline to submit a Claim Form is **Month 00, 201_**.

### Your Other Rights.

If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself is **Month 00, 201_**. If you do not exclude yourself you will not be able to sue Quixtar and sellers of "business support materials" for any claim relating to the lawsuit. If you stay in the Settlement, you may object to it by **Month 00, 201_. The detailed notice, available at www.QuixtarClass.com or by calling 1-800-000-0000, explains how to exclude yourself or object.**

The Court will hold a hearing on **Month 00, 201_** to consider whether to approve the Settlement and award attorneys' fees. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

### Attorneys' Fees

**The Plaintiffs' attorneys anticipate seeking fees of $15,000,000 (15 million dollars). Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund.**

---

**For more information or a Claim Form:**
**1-800-000-0000      www.QuixtarClass.com**

# EXHIBIT 5

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

# If You Were an Amway/Quixtar Distributor Any Time Between January 1, 2003 and Month 00, 201_,

## You Could Get Benefits from a Class Action Settlement.

[Headline in Spanish] Para una notificación en Espanol, llamar 1-800-000-0000 o visitar www.QuixtarClass.com

*A federal court authorized this Notice. This is **not** a solicitation from a lawyer.*

- A Settlement has been reached with Quixtar, Inc., ("Quixtar") about the pricing of Quixtar products and the recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs").

- Those included in the Settlement may be eligible to receive a payment or free products. Quixtar has also agreed to change some of its business practices.

**Your legal rights are affected even if you do nothing. Read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to get a payment or products. This option will result in you giving up your rights to sue Quixtar and sellers of "business support materials" about the legal claims in this lawsuit. |
| **EXCLUDE YOURSELF** | This is the only option that allows you to sue Quixtar and sellers of "business support materials" separately over the claims resolved by this Settlement. However, under this option, you would get no payment or products from the Settlement. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no money or products. Give up rights to sue Quixtar and sellers of "business support materials" about the claims in this lawsuit. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, benefits will be distributed to those who qualify. Please be patient.

**Questions? Call 1-888-000-0000 toll free or visit www.QuixtarClass.com**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**................................................................................**PAGE 3**

    1.     Why was this Notice issued?

    2.     What is this lawsuit about?

    3.     Why is this a class action?

    4.     Why is there a Settlement?

**WHO IS IN THE SETTLEMENT CLASS**.............................................**PAGE 3**

    5.     How do I know if I am part of the Settlement Class?

    6.     Are there exceptions to being included in the Settlement Class?

    7.     What if I am not sure whether I am included in the Settlement Class?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY**............................**PAGE 4**

    8.     What does the Settlement provide?

    9.     What can I get from the Settlement?

    10.    What else does the Settlement provide?

**THE CLAIMS PROCESS**..........................................................................**PAGE 6**

    11.    How do I file a claim?

    12.    What am I giving up as part of the Settlement?

    13.    When would I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**..................................**PAGE 7**

    14.    If I exclude myself, can I get anything from this Settlement?

    15.    If I do not exclude myself, can I sue later?

    16.    How do I get out of the Settlement?

**THE LAWYERS REPRESENTING YOU**.....................................................**PAGE 8**

    17.    Do I have a lawyer in the case?

    18.    How will the lawyers be paid?

**OBJECTING TO OR COMMENTING ON THE SETTLEMENT**.......................**PAGE 8**

    19.    How do I tell the Court that I do not like the Settlement?

    20.    What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING**.......................................................**PAGE 9**

    21.    When and where will the Court decide whether to approve the Settlement?

    22.    Do I have to come to the hearing?

    23.    May I speak at the hearing?

**IF YOU DO NOTHING**.............................................................................**PAGE 9**

    24.    What happens if I do nothing at all?

**GETTING MORE INFORMATION** ...........................................................**PAGE 9**

    25.    How do I get more information about the Settlement?

# BASIC INFORMATION

### 1. Why was this Notice issued?

A Court authorized this Notice because you have a right to know about the proposed Settlement and about all of your options before the Court decides whether to give "final approval" to the Settlement.   If the Settlement is approved, benefits will be given to people who submitted a valid Claim Form.  This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for those benefits, and how to get them.

Judge Samuel Conti of the United States District Court Northern District of California, San Francisco Division is overseeing this class action.  The case is known as *Pokorny v. Quixtar, Inc.*, No. C 07-00201 SC.  The people who sued are called the "Plaintiffs," and the company they sued, Quixtar, Inc., is the "Defendant."

### 2. What is this lawsuit about?

The lawsuit claims that Quixtar and certain BSM companies violated state and federal laws by:

- Recruiting IBOs in an illegal scheme;
- Misrepresenting the amount of profits that IBOs could earn; and
- Persuading IBOs to buy overpriced products and business support materials.

Quixtar denies that it did anything wrong and argues that it runs a legitimate business that complies with all laws.  The Court has not decided who is right.

### 3. Why is this a class action?

In a class action, one or more individuals called "class representatives" (in this case, Jeff Pokorny, Larry Blenn, and Kenneth Busiere) sue on behalf of those that have similar claims.  All of these individuals are a "class" or "class members."  One court resolves the issues for all class members, except for those who exclude themselves from the class.

### 4. Why is there a Settlement?

The Court did not decide in favor of the Plaintiffs or Quixtar.  Instead, both sides agreed to settle this case to avoid the cost and risk of trial.  The Settlement does not mean that any law was broken or that Quixtar did anything wrong.  Quixtar denies all legal claims in this case.  The Class Representatives and their lawyers think the Settlement is best for all Class Members.

# WHO IS IN THE SETTLEMENT CLASS

To see if you will be affected by this Settlement or if you will get any money, you first have to determine if you are a Class Member.

### 5. How do I know if I am part of the Settlement Class?

The Settlement Class includes any person who, at any time between January 1, 2003 and Month 00, 201_, either was an IBO or was a legal entity through which an IBO conducted a Quixtar-related business.

### 6. Are there exceptions to being included in the Settlement Class?

Yes.  Quixtar and the BSM companies listed below are excluded from the Settlement Class.  Anyone employed by Quixtar or BSM companies from 2003 to the present, BSM employees, as well as family members, and affiliates of these companies are also not included in the Settlement Class.

| BSM COMPANIES | |
|---|---|
| • Britt Worldwide, LLC<br>• InterNET Service Corporation<br>• Worldwide Dreambuilders<br>• eFINITY<br>• Leadership Team Development, Inc.<br>• Vision Global, LLC<br>• Network 21 International, Inc.<br>• MarkerNET, Inc., d/b/a MarkerMan Productions<br>• UR Association | • International Networking Association, Inc.<br>• Setzer International, Inc./Team 100<br>• Proalliance<br>• World Information Network<br>• Team Builders Business Development, LLC<br>• Team Builders Personal Development, LLC<br>• GlobalNet |

## 7. What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are in the Settlement Class, or have any other questions about the Settlement, call the toll-free number, 1-800-000-0000, or visit www.QuixtarClass.com for more information. You also may write with questions to Quixtar Settlement Exclusions/Objections, PO Box xxxx, City State, Zip.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

## 8. What does the Settlement provide?

Quixtar has agreed to establish two Settlement Funds for former IBOs.

- **Cash Settlement Fund:** $34 million in cash will be used to pay IBOs who file valid claims. It will also be used to pay attorneys' fees and costs (*see* Question 18) as well as the costs to administer the Settlement.
- **Product Settlement Fund:** $21 million in Quixtar products will be given to IBOs who file valid claims. The $21 million value of the products is based on the products' retail prices. The products cost Quixtar approximately $13 million.

  Only former IBOs are eligible to receive compensation from the Cash Settlement Fund and Product Settlement Fund. Current IBOs are not eligible to receive compensation from those Funds, however, they will benefit from certain business reforms (*see* Question 10 below).

Notes: The attorneys' fees and costs, settlement administration costs, and other relevant costs will be paid from the Cash Settlement Fund. The remainder of the Cash Settlement Fund will be used to pay valid claims submitted by Class Members. If claims exceed the amount available in the Cash Settlement Fund, the cash payments to Class Members will be reduced on a proportional basis so that all valid claims can be paid. If any money is left in the Cash Settlement Fund after all claims have been paid, the Court will decide how to distribute the remaining money.

More details on the Settlement are available in the Settlement Agreement, which is available at www.QuixtarClass.com.

## 9. What can I get from the Settlement?

Three types of benefits will be available from the two Settlement Funds. Class Members could receive benefits in one or more of the following ways:

### Type 1:  Registration Fee Benefits

If you are a **former** IBO, did not renew your membership in Quixtar after the first year, and have not received a refund of the registration fee you paid to become a Quixtar IBO, you are eligible to receive $75 (retail value) in free products. You can choose from one of several product bundles described on the attached Claim Form and at www.QuixtarClass.com.

**Notes:** If claims exceed the amount available for free products, the amount of free products given to Class Members will be reduced on a proportional basis so that all valid claims can be paid. If any products are left in the Product Settlement Fund after all claims have been paid, the Court will decide how to distribute the remaining products.

### Type 2: Business Support Materials ("BSM") Payment

If you are a **former** IBO and you spent at least $100 on "business support materials," you may be able to recover up to 20% of your verifiable expenses on these materials (less the money you received from resale of business support materials) up to a maximum of $2,000. Included are the motivational and/or training aids listed in the table below. **These expenses must be verified with receipts, credit card statements, or other similar forms of proof of purchase.**

| BUSINESS SUPPORT MATERIALS |
| --- |
| • Books, magazines, and other printed materials<br>• Audio tapes, video tapes, software, CDs, and other electronic media<br>• Tickets to rallies, meetings, functions, and seminars |

**Note:** Any Class Member who earned a profit from operating a Quixtar business is not eligible for a BSM Payment.

### Type 3: "Special Hardship" Payment

If you are a **former** IBO and you suffered "special hardship" by participating in Quixtar, you may be eligible to receive a cash payment of up to 20% of your losses from Quixtar or $10,000, whichever is less. To receive a Special Hardship Payment, you must demonstrate that you:

- Lost more than $10,000 from operating your Quixtar business; or that
- Your recruitment into and operation of your Quixtar business caused you to file for personal bankruptcy.

**Class Members seeking a Special Hardship Payment must provide documentation to support their claims (*see* Question 11).**

**Note:** The total amount paid for Special Hardships claims will be capped at $5 million. If the total amount of Special Hardship claims approved is more than $5 million, the Special Hardship Payment amounts will be reduced on a proportional basis so that all valid claims can be paid.

## 10. What else does the Settlement provide?

Quixtar has agreed to make changes to the way it does business, including:

- Expanding registration fee refunds for a longer period;
- Providing additional disclosures regarding the business;
- Increasing IBO training in merchandising;
- Lowering prices of Quixtar branded goods; and
- Maintaining and enforcing quality control over business support materials.

More details on the Settlement are available in the Settlement Agreement, which is available at www.QuixtarClass.com.

# THE CLAIMS PROCESS

## 11. How do I file a claim?

To receive the cash or products available under the Settlement, you must fill out and submit a Claim Form. The claim Form is available at www.QuixtarClass.com or by calling 1-800-000-0000. You can submit a Claim Form online or by mail. The deadline to submit a Claim Form is **Month 00, 201_**. Please read the instructions carefully.

To receive certain types of payments, you must provide the completed Claim Form plus the necessary supporting documentation (*see* chart below for more details).

| REGISTRATION FEE BENEFIT | BUSINESS SUPPORT MATERIALS PAYMENT | SPECIAL HARDSHIP PAYMENT – LOSS OF $10,000 OR MORE | SPECIAL HARDSHIP PAYMENT – FILING FOR PERSONAL BANKRUPTCY |
|---|---|---|---|
| No documentation required. | • Receipts; <br> • Credit card statements; **or** <br> • Other similar forms of proof of purchase. | • Copies of tax returns or similar documents showing you lost at least $10,000 from operating your Quixtar business; <br> • A detailed statement explaining how and why your business lost at least $10,000; **and** <br> • Other documents to show how much money you lost because of your involvement in Quixtar. | • Copies of documents showing you applied for personal bankruptcy; <br> • A detailed statement explaining how and why your involvement in Quixtar caused you to file for personal bankruptcy; **and** <br> • Other documents to show how much money you lost because of your involvement in Quixtar. |

Claims for Special Hardship will be reviewed by a neutral third-party ("Special Master") who will decide whether a Class Member qualifies for this type of payment.

## 12. What am I giving up as part of the Settlement?

In short, if the Settlement becomes final and you have not excluded yourself (*see* Question 16), you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Quixtar and sellers of "business support materials" about the factual and legal issues in this case. The rights you are giving up are described in sections 1.29 to 1.31 and section 10 of the Settlement Agreement, which is available at www.QuixtarClass.com. Please read it carefully.

You can talk to the law firm representing the Class listed in Question 17 for free or you can, at your own expense, talk to your own lawyer if you have any questions about your rights.

## 13. When would I get my payment?

The Court has scheduled a hearing on **Month 00, 201_** in San Francisco, California to decide whether to approve the Settlement. Even if the Court approves the Settlement at that time or sometime after that, there may be appeals. There are no guarantees about how these issues will be resolved, or how long that might take. Please be patient. If the Court approves the Settlement, and it becomes final, a claims process will begin as described in Question 11.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this proposed Settlement and you want to keep the right to sue Quixtar and sellers of "business support materials" about the legal issues in this case, then you must take steps to get out of the Settlement. This is called asking to be excluded from the Class or is sometimes called "opting-out" of the Class.

**Questions?  Call 1-888-000-0000 toll free or visit www.QuixtarClass.com**

### 14. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you do not get anything from the proposed Settlement and you cannot object to it. If you ask to be excluded, however, you may sue or be part of a different lawsuit against Quixtar in the future. You will not be bound by anything that happens in this lawsuit.

### 15. If I do not exclude myself, can I sue later?

No. Unless you exclude yourself, you give up the right to sue Quixtar and sellers of "business support materials" for the claims in this case. You must exclude yourself from this Class to start your own lawsuit or be part of any other lawsuit relating to these claims.

### 16. How do I get out of the Settlement?

To exclude yourself from the proposed Settlement, you must mail a letter saying that you want to be excluded from *Pokorny v. Quixtar, Inc.*, No. C 07-00201 SC. Include your full name, address, telephone number, signature, and date. You must mail your request for exclusion to the address listed below so that it is postmarked by **Month 00, 201_:**

> Quixtar Settlement Exclusions/Objections
> PO Box 0000
> City, State, Zip

## THE LAWYERS REPRESENTING YOU

### 17. Do I have a lawyer in the case?

Yes. The Court has appointed the law firms of Boies, Schiller & Flexner LLP and Gary, Williams, Finney, Lewis, Watson & Sperando, P.L. as "Class Counsel" to represent you and the Class. If you wish you may contact the law firms by telephone at [phone number] or by email at [email address]. You do not have to pay Class Counsel. They will be paid from the Cash Settlement Fund in an amount to be determined by the Court, as discussed in Question 18 below. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

### 18. Attorneys' Fees: How will the lawyers be paid?

**The Court will decide how much Class Counsel will be paid. Class Counsel anticipates that it will request attorneys' fees of $15,000,000 ($15 million dollars). Class counsel will also seek to be reimbursed from the Settlement for their litigation expenses in an amount of approximately $_____.**

## OBJECTING TO OR COMMENTING ON THE SETTLEMENT

### 19. How do I tell the Court that I do not like the Settlement?

You can object to or comment on the Settlement if you do not like some or all of it. The Court will consider your views. To do so, you must mail in a written objection in the case, *Pokorny v. Quixtar, Inc.*, No. C 07-00201 SC, to:

> Quixtar Settlement Exclusions/Objections
> PO Box 0000
> City, State, Zip

Include your full name, address, telephone number, signature, the specific reasons why you are objecting, and any legal support or evidence you wish to use to support your objection. Your objection must be postmarked no later than **Month 00, 201_.**

**Questions?  Call 1-888-000-0000 toll free or visit www.QuixtarClass.com**

## 20. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, then you cannot object to the Settlement because the case no longer affects you, and you will not get any benefits from the Settlement.

# THE COURT'S FAIRNESS HEARING

## 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at 0:00 x.m. on Month 00, 201_ at the United States District Court for the Northern District of California, San Francisco Division, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102. At the Fairness Hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court also will consider Class Counsel's request for attorneys' fees and costs. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the proposed Settlement and how much to award to Class Counsel as fees and costs.

The Fairness Hearing may be moved to a different date without additional notice, so you should check www.QuixtarClass.com for updated information.

## 22. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. However, you or your own lawyer, are welcome to attend the hearing at your own expense. If you send in a written objection, you do not have to come to the Fairness Hearing to talk about it. As long as you submitted your written objection on time, the Court will consider it.

## 23. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must mail a letter saying that it is your "Notice of Intent to Appear" at the Fairness Hearing in *Pokorny v. Quixtar, Inc.*, No. C 07-00201 SC. Include your name, address, telephone number, and signature. Your Notice of Intent to Appear must be received no later than **Month 00, 201_** and must be sent to the address listed in Question 19.

# IF YOU DO NOTHING

## 24. What happens if I do nothing at all?

If you do nothing you will not get a payment or any free products. You will also give up rights to sue Quixtar and sellers of "business support materials" about the claims in this lawsuit.

# GETTING MORE INFORMATION

## 25. How do I get more information about the Settlement?

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.QuixtarClass.com. For more information, call: 1-800-000-0000. You may also write to: Quixtar Settlement Exclusions/Objections, PO Box XXX, City, State, Zip.