1  Joseph Darrell Palmer (SBN 125147)
   Email: darrell.palmer@palmerlegalteam.com
2  Law Offices of Darrell Palmer PC
   603 North Highway 101, Ste A
3  Solana Beach, California 92075
   Telephone: (858) 792-5600
4  Facsimile: (858) 792-5655

5  Christopher A. Bandas (*Pro Hac Vice* Pending)
   Email: cbandas@bandaslawfirm.com
6  Bandas Law Firm, P.C.
   500 N. Shoreline Avenue, Suite 1020
7  Corpus Christi, TX 78401
   Telephone: (361) 698-5200
8  Facsimile: (361) 698-5222

9  Attorneys for Objectors Maria H. Wong and Maria E. Juarez

10

                    UNITED STATES DISTRICT COURT

11
                   NORTHERN DISTRICT OF CALIFORNIA

12
                      SAN FRANCISCO DIVISION

13

14 Jeff Pokorny, Larry Blenn, and Kenneth Busiere,  )  Case No. 07-cv-0201 SC
   on behalf of themselves and those similarly      )
15 situated,                                         )  **OBJECTIONS OF MARIA H. WONG AND**
                                                     )  **MARIA E. JUAREZ TO PROPOSED**
16                     Plaintiffs,                   )  **SETTLEMENT AND NOTICE OF INTENT**
                                                     )  **TO APPEAR**
17 v.                                                )
                                                     )
18                                                   )
   Quixtar, Inc.                                     )  Date:  November 16, 2012
19                                                   )  Time:  10:00 a.m.
                                                     )  Judge:  Hon. Samuel Conti
20                     Defendant.                    )

21

22         COME NOW, MARIA H. WONG and MARIA E. JUAREZ ("Objectors") Class Member to this

23 action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class

24 Action Settlement, give notice of their counsel's intent to appear at the November 16, 2012, settlement

25 hearing, and request awards of an incentive fee for serving as unnamed class member objectors.

26 / / /

27

28

                                    1

## INTRODUCTION

CLASS MEMBERS MARIA H. WONG and MARIA E. JUAREZ, ("Objectors"), submit the following argument to the Court in support of their objections to the settlement of *Pokorny v. Quixtra, Inc.*, Case No. 07-cv-00201, currently pending before the Northern District of California, San Francisco division.  Objectors submit that they are class members.  Ms. Wong is a current Amway distributor or "IBO" and Ms. Juarez is a former IBO.  Their addresses and telephone numbers are listed at the conclusion of these objections.  Objectors respectfully submit the following:

## I.  SUMMARY OF OBJECTIONS

1.  The settlement terms are designed to deter claims by class members which makes the settlement unfair and unreasonable;

2.  The settlement which provides product instead of cash reimbursement benefits the Defendant, does not make the aggrieved class member whole, and does nothing to disgorge Defendant's ill-gotten profits;

3.  The incentive awards are unusually high;

4.  Counsel must disclose the intended *cy pres* recipient to the class prior to the fairness hearing, and should have prior to the objection deadline, such that class members are informed of the alleged benefit to the non-claimant class members;

5.  The attorneys' fee request is excessive, at over 30% of the common fund; AND

6.  Counsels' use of Judge Charles B. Renfrew's, Terry Goddard's, and the Honorable Weinstein's endorsement of the fee request in this matter is an improper use of attempt to sway the District Court' unbiased opinion and may not be included in the Court's calculation of fairness of the fee request

2

## II. <u>LEGAL AUTHORITY</u>

### a. <u>The District Court Must Police the Settlement of these Proceedings</u>

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998).  The duty requires a review of substantive claims included in the agreement and an investigation into the manner in which fees of class counsel are to be paid and the dollar amount for such services. *Id.*  The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility."  Committee Notes to Rule 23(h), 2003.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."  A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. Id.  This rule has been read as a requirement for the court to " 'independently and objectively analyze the <u>evidence</u> and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' "  *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995).  (emphasis added)

### b. **The Settlement is Flawed Because the Requirements to Participate are Onerous.**

The settlement agreement provides the following relief for former independent business owners of Quixtar ("IBOs"):

❖ Type 1: Registration Fee benefits – Former IBOs who paid the registration fee for one year only is eligible to receive $75 (retail) of free products from Quixtar.

❖ Type 2:  Business Support Materials ("BSM") – Former IBOs that spent at least $100 on BSM may be able to recover up to 20% of the verifiable expenses of these materials, up to a maximum of $2,000.  If the IBO earned <u>any</u> <u>money</u> from Quixtar, he/she is not eligible for the refund. Class members must provide documentation to prove these expenditures.

❖ Type 3:  "Special Hardship" Payment – Former IBOs may receive a payment of up to 20% of his losses, or $10,000, whichever is less if he: either lost $10,000 from operating the Quixtar business or if his Quixtar business caused him to file for bankruptcy.  Class members must provide documentation to prove this special hardship.

The problems with these different levels of relief are plenary:

<u>Type 1</u>:  There is no rational reason why these aggrieved consumers could not be reimbursed with cash.  Instead, Defendant is able to reimburse these class members by aging inventory of, in many cases, perishable items.  This is a benefit to Defendant because Defendant is able to move inventory off of its books at the retail price before it is aged.  Further, Defendant is not disgorged any ill-gotten profits from their wrongful acts.

4

<u>Type 2:</u>  The class member is required to provide documentary evidence of these losses.  (Notice ¶ 9.) (Stlmt., § 6.1.1, 6.1.2(g).)  The problem in providing such evidence is clear.  The class period in this case runs from 2004 to 2012.  Many of these class members that suffered actual losses will not have retained receipts or old credit card statements proving their losses.  This hurdle will undoubtedly result in a lower participation rate by potential class members.  More importantly, once a Type 2 class member does submit a claim and documentary proof, Defendant is permitted to utilize the class member's 1099 documents to verify that no income was made from each class member's Quixtar business.  If any money was made at all, the class member under Type 2 is unable to recover.  The settlement agreement states that the 1099 will only be reviewed with the class member's permission.  (Stlmt., § 6.1.6.)  However, it seems likely that many class members would refuse to have such a sensitive and personal document reviewed by total strangers for only a small reimbursement of one's losses.  Furthermore, payments reported on a form 1099 have nothing to do with whether the class member made a "profit."  Only a Schedule C would reveal a profit.  So not only is the 1099 not useful, but it will act as a deterrent to would-be claimants.

<u>Type 3:</u>  To make a claim under this tranche, a class member must provide personal and sensitive documentation regarding the financial hardship suffered by him as a result of his enrollment as an IBO.  To the extent a class member is inclined to share this information, the class period extends back to 2004, and much of this documentation is likely destroyed or lost.  It is probable the claims for this will also be quite low, given the difficulty of making such a claim.

/ / /

5

c.   <u>**There is No Rational Reason to Differentiate Between Current and Former IBOs.**</u>

The monetary and in-kind relief of this settlement belongs exclusively to former IBOs. However, it is probable that there are current IBOs that have the same complaints as those former IBOs and have just not completed the act of ending their relationship with Defendant.  These current IBOs would certainly have documentation to prove losses as their claims would have happened more recently. There is no reason not to offer the relief to these class members as well, instead of providing them only with future relief vis a vis changes in Defendant's business practices.  For those current IBOs who intend to cease being a distributor, there is no relief whatsoever.

d.   <u>**The Failure to Disclose the Cy Pres Recipient Does Not Comport with Ninth Circuit Precedent.**</u>

At the time of writing this objection, the class has not been informed where the donation of *cy pres* monies and goods will be donated.  The settlement agreement reads "[a]ny remaining amounts of the Cash Fund, after all approved claims and expenses are paid, shall be distributed by the Court, with input from Quixtar and Plaintiffs, for the benefit of the class or as *cy pres*."  (Stlmt, 6.1.5.)   Like the cash fund, the product fund shall also be disseminated in the same manner, "so as to benefit the class of former IBOs or as *cy pres* to an appropriate charity", after all claims are made. (Stlmt, § 6.2.4.)  There is absolutely no indication of where these donations will go and simply suggesting a "charity" demonstrates that little thought has been aimed at nominating recipients (there's no requirement it be a charity) who will provide an direct or indirect benefit to the non-claimant class members related to the allegations set forth in the complaint.

/ / /

6

_The purpose of cy pres_.

The doctrine of _cy pres_ originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons.  _In Re Wells Fargo Securities Litigation_, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998).  However, a court cannot direct excess funds to any seemingly worthwhile recipient.  Instead, the funds must be used in such a way that best serve the original intent of the settlor or testator.  _Id._ at 1195.  This idea was translated for use in the context of class actions when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be impractical."  _Id._  Courts within this Circuit have warned, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class members or "others similarly situated, e.g. _future class members_ who engage in future transactions of the type involved in the class litigation."  _Id_ at 1195.

This proposed settlement fails under this doctrine.  As evidenced by the non-revertible fund of millions of dollars of cash and product, distribution to the class is not impractical.  Furthermore, the only relationship between this lawsuit and donations of these funds and products to unnamed charities is the source of the donation.  This proposed distribution is an abuse of the _cy pres_ doctrine and inadequately compensates the injured party – the class.

    1.   _The Use of the Cy Pres Doctrine Must be Strictly Construed or Final Approval Will be Reversed._

The Ninth Circuit recently had cause to review the application of the _cy pres_ doctrine in _Dennis v. Kellogg Co_., 2012 WL 2870128 (9th Cir., July 13, 2012.)  In its opinion, the Ninth Circuit warned against the dangers of the improper use of the cy pres doctrine:

7

Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." Nachshin, 663 F.3d at 1038. A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," *Id*. at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers*, 904 F.2d at 1308. Thus, in addition to asking "whether the class settlement, taken as a whole, is fair, reasonable, and adequate to all concerned," we must also determine "whether the distribution of the approved class settlement complies with our standards governing *cy pres* awards." *Nachshin*, 663 F.3d at 1040 (internal quotation marks omitted).

*Id.* at *4.

This Circuit has made clear that the *cy pres* donation must be closely tied to the interests of the class members. The specific charity must be identified and analyzed by the Court prior to the final fairness hearing. *Id.* at *6. Courts must carefully scrutinize the entirety of the settlement before granting approval, "paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations.' *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)." *Id.* The Ninth Circuit in Kellogg warned that failure to disclose the *cy pres* recipient forecloses the district court from undertaking the searching inquiry required of it. *Id.* Because the settlement must either stand or fall based on the entirety of the settlement provisions, counsel's failure to disclose the intended *cy pres* beneficiary means this settlement cannot be approved.

e.   **The Fee Request is Excessive and Accounts for over 30% of the Fund.**

In the Ninth Circuit, either the percentage of the fund or lodestar method may be adopted to calculate attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which method is chosen, the most important inquiry is whether the end result is favorable for the class. *Powers v. Eichen*, 229 F. 3d 1249, 1256 (9th Cir. 2000). "The most critical factor is the degree of success obtained." *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983).

8

1

2                *1.   The Results Achieved and Fund Amount Are Exaggerated*

3                 Class Counsel's request for a lodestar multiplier of 2.29 is unfounded and the attorneys' attempt

4  to pull the wool over the eyes of their client and the Court cannot be rewarded.  This proposed

5  settlement is not as large as class counsel makes it to be.  Adding insult to injury, a large portion of it

6  will be granted to some as yet unnamed beneficiary – not the class.  The Court must make a detailed

7  inquiry into the actual benefit the class will receive before granting approval of this fee request or the

8  settlement.

9

10                The actual benefit this settlement provides is the amount that it will cost the Defendant to create

11  it.  Counsel argues that the "retail" value of the products, $17 million, should be used in the Court's

12  calculation of the fund.  But this argument is flawed for several reasons.  One, Plaintiffs' own

13  allegations state that Defendant's product prices were inflated by 20%.  (Motion for Fees, p. 12.)

14  Secondly, the value of the fund should be calculated according to the cost borne by the Defendant – the

15  actual net value of the products which comprise the fund.    Assuming a 20% reduction in the value of

16  the product, although it should perhaps be more, the fund could be more closely calculated at $47

17  million.[1]  Using that number, counsel's fee request amounts to 31.9% of the fund; significantly higher

18  than this Circuit's benchmark.

19

20               *2.   A 30% Fee For Consumer Class Actions Is Not the Norm in this Circuit*

21                This Circuit has established 25% as the benchmark fee for common fund cases.  *Powers v.*

22  *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000.)  However, 25% is only the starting point of the analysis.

23

24

25

26

27  _____

28  [1] As stated previously, use of the "products" as part of the calculation of the fund should be taken in its proper context.  The products provided by Defendant are aging inventory, and rapidly losing their value to Defendant.  LOOK UP EXTENZE RE: VALUE OF PRODUCTS…

The fee must be adjusted to reflect the specific circumstances of each individual case. *In re Ventro Corporation Securities Litigation*, 226 F. App'x 711, 711 (9th Cir. 2007.)

Class Counsel attempts to liken this case to a line of cases that have established 25% as a "benchmark" for reasonable fees in a common fund. In reality, this "benchmark" is a legal fiction and this Court should give no weight to any proffered benchmark, especially when it has no correlation to how the class is benefitted. This flawed approach creates arbitrary results and is inconsistent with the notion that "a fee award should be assessed based on scrutiny of the unique circumstances of each case, and "a jealous regard to the rights of those who are interested in the fund."" *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53 (2d Cir. 2000). (Holding that a deviation from the 25% "benchmark" embraced by class counsel to 4% was not an abuse of discretion); *See also In re Infospace Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004) ("There is nothing inherently reasonable about a 25 percent recovery, and the courts applying this method have failed to explain the basis for the idea that a benchmark fee of 25 percent is logical or reasonable."); *Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 129 (9th Cir.1994) ("WPPSSS") ("[T]here is no necessary correlation between any particular percentage and a reasonable fee.").

Class counsel further argues that this very District Court held that the benchmark is NOT 25% as Ninth Circuit jurisprudence dictates but is, rather, 30% of the common fund. (Motion for Fees, p. 6, lns. 19-23, citing *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 1989.) However, counsel takes this suggestion out of context from this Court's opinion. In *Omnivision*, this Court was comparing "similar cases" to the one pending before it; namely, securities fraud class actions. *Id.* at 1047. ("'The

10

1   median in class actions is approximately twenty-five percent, but awards of thirty percent are not

2   uncommon in securities class actions.' *In re Ikon Office Solutions*, 194 F.R.D. 166, 194 (E.D. Pa,

3   2000.)" *Id.* at 1047-8.

4

5        Furthermore, this Court's *Omnivision* opinion predates the Ninth Circuit's clear directive

6   regarding its 25% benchmark in 2000.  *Powers v. Eichen*, 229 F.3d at 1256.  Class counsel's effort to

7   misstate Ninth Circuit jurisprudence in order to suit its own purposes is not well-taken and should be

8   viewed with scrutiny.  Granting 30 or even 25% would be excessive given the results here, the identified

9   problems with the settlement, and the inability to calculate the actual value to the class.  To do so would

10  unfairly put this settlement on the same grounds as other hard fought and beneficial settlements.

11

12

13        f.   **Submission of an Opinion by a Mediator is Grossly Improper.**

14        Nothing can sway the District Court's independent analysis as the fiduciary of the class in its

15  fairness determination of the settlement and fee request.  *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d

16  781, 785 (7th Cir.2004.)  Lead counsel has provided "expert" and mediator opinions regarding the

17  fairness of the settlement and fee request.  But these individuals are being compensated by counsel and,

18  as such, will naturally provide an analysis certain to be favorable to class counsels' Motion.  Even in

19  light of these improper declarations in support, the District Court must still make an independent inquiry

20  and should not rely on these biased, third-party opinions.

21

22

23        An objection is further made to these declarations to the extent they violate the Federal Rules

24  of Evidence.  First, these statements are inadmissible because they constitute inadmissible hearsay, lack

25  foundation, are argumentative, and attempt to proffer lay or expert opinion without foundation.  More

26  importantly, these statements are absolutely not admissible as evidence.  Federal Rule of Evidence 408

27  states:

28

11

Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

(2) *conduct or a statement made during compromise negotiations about the claim*.

Fed. R. Evid. 408 (emphasis added.)

Accordingly, statements made by the mediators or anyone else about the mediation are absolutely not admissible for any purpose.

Furthermore, neither the class nor the Court has had the opportunity to vet the opinions of these persons, nor has class counsel designated them as their experts. As such, the opinions of Renfrew, Weinstein, and Goddard must be disregarded or, in the alternative, these individuals should be produced at the final approval hearing for examination by the court, parties, and objectors. The court is required to consider only competent admissible evidence in carrying out its fiduciary review of the settlement and fee request. (See evidentiary objections, attached hereto.)

g.  **The Incentive Awards Are Excessive.**

The requested incentive awards for the various class representatives are excessive especially when viewed in light of the likely recovery of the unnamed class members from this settlement. While the Plaintiff's go to great pains to cite a handful of cases which would support such an outrageous request, they fail to differentiate themselves from the majority of class representatives that have performed substantially similar duties and sought only $1,000.00 to $5,000.00 for an incentive award.

Incentive awards are approved by the Court only if found reasonable and fair given a review of the Class Representatives' involvement and the nature of the case. See *In re Lease Oil Antitrust Litig.*,

12

186 F.R.D. 403, 449 (S.D.Texas 1999) (incentive awards ranged from $750 to $10,000); *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 277 (S.D.Ohio 1997) (declining to approve proposed incentive award of $25,000; appointing Settlement Master/Trustee to determine appropriate award); *Green v. Battery Park City Auth., 44 Fair Empl. Prac. Cas. (BNA)* 623, 627 (S.D.N.Y.1987) (approving incentive award of $4,000); *Women's Comm. for Equal Employment Opportunity v. National Broad. Co.,* 76 F.R.D. 173, 180 (S.D.N.Y.1977) (approving incentive awards beginning as low as $336).

According to one scholastic study, the average incentive award payment for consumer class actions ranges between $1,000 and $5,000. See, Sherrie R. Savett, et al., *"Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs,"* 936 PLI/Corp. 321 at 340 (1996) (citing fifty-two cases involving incentive awards payments and noting that the normal range of such awards is $1,000 to $5,000).

In this case, Class Representatives seek an astounding $20,000 per lead plaintiff, which totals $60,000. To support this request, counsel claims that each class representative has spent in the range of 250 hours each. This is far in excess of what is ordinarily awarded for a lead plaintiff's work on such matters. Thus, while an incentive award is justified in this case, it should not be granted at the value that is currently requested. This deprives the remainder of the Class Members a significant sum that would otherwise be reserved for their benefit and would constitute a significant windfall for each of Lead Plaintiffs. Objectors request that the Court inquire into the time purportedly spent by these plaintiffs and reduce their award to a more reasonable sum.

h.   **These Objectors Intend to Take Discovery**.

Important issues need be resolved regarding this settlement. Objectors intend to seek leave from the Court to request discovery regarding some of the problems identified in this objection.

13

i.   **Joinder in Other Objections**

This Objector adopts and joins all other well pled, bona fide objections filed by other class members in this case, and incorporates them by reference as if they appeared in full herein.

j.   **Request for Attorneys' Fees**

Based on the above arguments and their benefit to the Court's analysis of reasonableness of this settlement, these Objectors wish to reserve the right to apply for reasonable and appropriate compensation for the valuable services which have been provided by this objection.

## III.   CONCLUSION

For the foregoing reasons and all others presented at oral argument, Objectors respectfully request that the Court grant the following relief:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement and fee request;

C.  Award an incentive fee to these Objectors for their service in improving the fairness of the settlement, and award a reasonable attorneys' fee to their attorney.

LAW OFFICES OF DARRELL PALMER PC

Dated:   August 17, 2012                    By: /s/ Joseph Darrell Palmer_____
                                                    Joseph Darrell Palmer
                                                    Attorney for Objectors Maria H. Wong and Maria E. Juarez

14

1

2

## CERTIFICATE OF SERVICE

3        I hereby certify that on August 17, 2012, I electronically filed the foregoing with the Clerk of the

Court of the United States District Court for the Northern District of California by using the USDC

4   CM/ECF system.

5        Service on participants in the case who are registered CM/ECF users will be accomplished by the

6   USDC CM/ECF system.

7        I further certify that some of the participants in the case are not CM/ECF users.  I have mailed

the foregoing document by First-Class Mail, postage prepaid:

8

9   Maryann Diaz

Gary Williams Parenti Finney Lewis McManus Watson & Sperando

10  221 East Osceola Street

Stuart, FL 34994

11

12  Julie L. Leichtman

Brinks Hofer Gilson & Lione

13  455 N. Cityfront Plaza Drive

Chicago, IL 60611

14

15

16                              ____/s/ Joseph Darrell Palmer____

Joseph Darrell Palmer

17                              Attorney for Objectors

18

19

20

21

22

23

24

25

26

27

28

15

07-CV-0201 SC

OBJECTIONS OF MARIA H. WONG AND MARIA E. JUAREZ TO PROPOSED SETTLEMENT

AND NOTICE OF INTENT TO APPEAR