# EXHIBIT 1

## PART ONE

CASE NO. C 07-0201 SC

PLAINTIFFS' MOTION, NOTICE AND MEMORANDUM OF POINTS ANDAUTHORITIES IN
SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT .

1   David W. Shapiro (CA SBN 219265)       David Boies, Esq. (*Pro Hac Vice*)
    BOIES, SCHILLER & FLEXNER LLP           BOIES, SCHILLER & FLEXNER LLP
2   1999 Harrison Street, Suite 900         333 Main Street
    Oakland, California 94612               Armonk, NY 10504
3   Telephone:  (510) 874-1000             Telephone:  (914) 749-8200
    Facsimile:  (510) 874-1460             Facsimile:  (914) 749-8300
4   E-mail:  dshapiro@bsfllp.com            E-mail:  dboies@bsfllp.com

5   Stuart H. Singer, Esq. (*Pro Hac Vice*)   Willie E. Gary, Esq. (*Pro Hac Vice*)
    Carlos M. Sires, Esq. (*Pro Hac Vice*)    Maria Sperando, Esq. (*Pro Hac Vice*)
6   Sigrid S. McCawley, Esq. (*Pro Hac Vice*) Tricia P. Hoffler, Esq. (*Pro Hac Vice*)
    BOIES, SCHILLER & FLEXNER LLP             GARY, WILLIAMS, FINNEY, LEWIS,
7   401 East Las Olas Boulevard, Suite 1200   WATSON & SPERANDO
    Fort Lauderdale, Florida 33301            221 East Osceola Street
8   Telephone:  (954) 356-0011               Stuart, Florida 34994
    Facsimile:  (954) 356-0022               Telephone:  (772) 283-8260
9   E-mail:  ssinger@bsfllp.com              Facsimile:  (772) 220-3343
    E-mail:  csires@bsfllp.com               E-mail:  weg@williegary.com
10  E-mail:  smccawley@bsfllp.com            E-mail:  mps@williegary.com
                                             E-mail:  tph@williegary.com

11

12          *Attorneys for Plaintiffs Jeff Pokorny, Larry Blenn and Kenneth Busiere*

13                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
14                       **SAN FRANCISCO DIVISION**

15  Jeff Pokorny, Larry Blenn, and Kenneth      )   **CASE NO. C 07-0201 SC**
    Busiere, on behalf of themselves and those  )
16  similarly situated,                         )   **DECLARATION OF JASON M.**
                                                )   **STINEHART REGARDING NOTICE**
17                   Plaintiffs,                )   **AND SETTLEMENT**
                                                )   **ADMINISTRATION**
18  v.                                          )
                                                )   DATE:      November 16, 2012
19  Quixtar, Inc.,                              )   TIME:      10:00 a.m.
                                                )   CTRM:      The Honorable Samuel Conti
20                   Defendants.                )
                                                )
21                                              )
                                                )
22  _____        )

23  I, Jason M. Stinehart, declare as follows:

24          1.      I am a Senior Project Administrator for Rust Consulting, Inc. ("Rust Consulting"),

25  which serves as the Claims Administrator for the settlement of the above-captioned action

26  ("Settlement").  I am responsible for supervising the class action administration services provided

27  by Rust Consulting in connection with the Settlement.  I have personal knowledge of the facts set

28  forth below.

2.      Rust Consulting specializes in class action notification and claims administration. Rust Consulting has provided claims administration services for class actions containing up to seven million Class Members in cases involving consumers, pension benefits, securities, product liability, insurance, antitrust, fraud, property, employment, discrimination, bankruptcy and other types of class action cases.  We regularly provide large-scale notification, claim form request processing, claims validation and processing, settlement benefits distribution, and claims administration services.  Rust Consulting has provided claims administration services for more than 3,000 class action settlements and distributed billions of dollars in settlement assets.

3.      Rust Consulting was appointed by the Court as Claims Administrator in this matter to, among other things, (a) mail the Class Notice; (b) establish and maintain a Settlement website with links to documents on file with the Court, the ability to download a copy of the Long Form Notice and Claim Form and the ability to file a claim form online; (c) establish and maintain a toll-free number where Class Members are provided pre-recorded answers to general Settlement information; and (d) obtain a post office box for receipt of undeliverable and forwarded Notices, Claim Forms and other communications.

4.      **Class Member Data.**  On March 28, 2012, Rust Consulting received a database of 2,996,720 records ("Class Member List") from Quixtar that contained potential class member names, last known addresses and email addresses where available.  Mailing addresses existed for all database records.   Due to a small amount of overlap in the database, the Class Member List contained information for 2,996,557 class members.   Approximately 1.36 million database records additionally included an email address.  Rust Consulting verified and updated the Class Member List address information through the National Change of Address database ("NCOA"), which contains all requested changes of address which have been filed within the last 48 months with the United States Postal Service and are currently in effect.   Rust Consulting cross-referenced addresses from the Class Member List with addresses found in the NCOA cards filed with the United States Postal Service.  The Coding Accuracy Support System ("CASS") was utilized to standardize the addresses in the Class Member List to ensure that they conformed to United States Postal Service rules by using a computer designed for that purpose.

5.      **Class Member Notice.**  Pursuant to the notice plan approved by the court, Rust Consulting took the following steps to provide notice to potential class members.  On April 16, 2012, Court-approved Class Notices were mailed via USPS First-Class Mail to 1,631,662 potential class members.  A sample Notice is attached hereto as **Exhibit A**.  As of October 8, 2012, 9,646 Notices were returned as undeliverable with a forward order on file and were promptly re-mailed to the forwarding address on record.  420,545 Notices were returned as undeliverable with no forward order on file and Rust Consulting attempted to locate a better mailing address through an address trace, resulting in 334,855 Notice remails.

6.      **Class Member Email Notice.**  On April 16, 2012, email notice in the form approved by the Court in its February 21, 2012 Order were sent to 1,365,058 potential class members.  A sample email Notice is attached hereto as **Exhibit B**.  384,924 email notifications were not deliverable, and these potential class members were sent a postcard notice on May 18, 2012.  In advance of sending the email notices, Rust Consulting employed a number of techniques in order to minimize the number of email notices caught by spam filters.  These included notifying large ISPs and IP providers of the purpose of the email, avoiding certain words and phrases, and sending notice in manageable batches over time.  Postcard notice in the form approved by the Court's February 21st Order was sent to those potential class members by USPS First-Class Mail on May 18, 2012.  On July 30, 2012, a second round of email notice was sent to 1,365,058 potential class members, pursuant to the Court's July 20, 2012 Order.

Therefore, Rust estimates that approximately 2,911,030 potential class members received individual notice by either email or postcard, which is approximately 97% of potential class members targeted.  The headlines of the mailed postcard notices and email notices were displayed in English and Spanish and both the mailed postcard notices and email notices contained a line in Spanish beneath the headline directing potential class members to call the toll free number or go to the Settlement Website for a notification in Spanish.  Spanish translations of the Long-Form Notice and of the Claim Form were available on the Settlement Website.

7. **Publication Notice.**  In addition, notice was published in the following national periodicals on the dates indicated: *Family Circle* (May 8, 2012), *Ladies' Home Journal* (May 8, 2012), and *TV Guide* (May 3, 2012).

8. **Website.**  On April 16, 2012, Rust Consulting established a website at the domain http://www.quixtarclass.com.  Attached hereto as **Exhibit C** is a screen shot of the home page of the Settlement website.  The website provides a summary of the Settlement, and also allows potential class members to view answers to frequently asked questions and review documents relating to the Settlement.  Individuals visiting the website are able to file a claim online and/or download a copy of the Long Form Notice and Claim Form.  In July 2012, the Claim Form and the Settlement Website were updated to inform potential class members that the Claims Administrator may accept a signed statement verifying losses.  At the same time, potential class members who called the toll free number with questions regarding the submission of their claims were advised that the Claims Administrator may accept a signed statement verifying losses.  It is my understanding that potential class members whose calls were directed to Boies, Schiller & Flexner LLP were similarly advised.  As of October 8, 2012, Rust Consulting has received 614,299 main page hits to the website.

9. **Toll-Free Number.**  On April 16, 2012, Rust Consulting established a dedicated toll-free telephone number at 1-888-334-6149 with an interactive voice response system containing an approved, scripted Settlement summary.  The automated system allows callers to select from several pre-recorded frequently asked questions to obtain Settlement information.  As of October 8, 2012, Rust Consulting has received 49,634 calls to the toll-free number.

10. **Claim Forms.**  As of October 8, 2012, Rust Consulting has received 65,451 Claim Forms, which represents a claim filing rate of approximately 3.0% based on the estimated number of potential class members eligible to file a claim.  Pursuant to the Court's February 21, 2012 Order, we considered a claim timely if it was submitted online by midnight, August 17, 2012, or, if submitted by mail, it was postmarked no later than August 17, 2012.  55,925 of the claims were submitted online.

- Among potential class members that filed claims, 48,908 potential class members filed claims for registration fee benefits under Section II (product) of the claim form. These claims break down as follows among the available 12 product bundles valued at $75.00 per bundle, for a total product value of $3,668,100.00:

| Section II Product Bundles - 1st choice | Count | % | Total Value |
|---|---|---|---|
| Family Supplements | 7,000 | 14.31% | $525,000.00 |
| Supplements & skin care | 2,812 | 5.75% | $210,900.00 |
| Supplements & skin care oily | 1,124 | 2.30% | $84,300.00 |
| Double X supplement | 6,743 | 13.79% | $505,725.00 |
| Artistry and Nutrilite-Women | 4,131 | 8.45% | $309,825.00 |
| Tolsom and Nutrilite-Men | 1,007 | 2.06% | $75,525.00 |
| Laundry care-Immune Suppl. | 5,582 | 11.41% | $418,650.00 |
| Laundry care-Him Her Suppl. | 3,522 | 7.20% | $264,150.00 |
| Weight Management | 3,367 | 6.88% | $252,525.00 |
| Personal Care | 3,902 | 7.98% | $292,650.00 |
| Energy | 6,302 | 12.89% | $472,650.00 |
| Sports | 3,416 | 6.98% | $256,200.00 |
| **TOTAL** | **48,908** | **100.00%** | **$3,668,100.00** |

- 18,225 potential class members filed claims for BSM expenditures under Section III (cash for BSM losses). The estimated dollar value of these claims, if paid according to the terms set forth in the notice and the claim form (i.e., claimants may receive 20% of their claimed losses, up to a maximum recovery of $2,000 per claimant), is $6,254,956.56.

- 5,940 potential class members filed "special hardship" claims under Section IV. Of those potential class members who filed "special hardship" claims, 1,454 indicated that they filed for personal bankruptcy as a result of their recruitment into and operation of their Quixtar business.   Approximately 21% of Section IV claims included documentation. Of the

4

approximately 21% that submitted Section IV documentation, about 26% (286 records) indicated an actual amount. The estimated dollar value of Section IV claims with accompanying documentation, if paid according to the terms set forth in the notice and the claim form (i.e., claimants may receive 20% of their claimed losses, up to a maximum recovery of $10,000), is $1,636,736.70. This estimate is based on information provided by hardship claimants. It does not account for any adjustments or disallowances that the Special Master may make in adjudicating these claims. Section IV claimants who did not submit any documentation or inadequate documentation (approximately 79% of the Section IV claimants) will be sent a follow-up letter advising them they must submit documentation or their claims will be denied.

11. **Untimely Claim Forms.** As of September 30, 2012, Rust Consulting has received 1,223 untimely claims.

• 794 potential class members filed late claims for registration fee benefits under Section II (product) of the claim form. These claims break down as follows among the available 12 product bundles, for a total product value of $59,550.00:

| Section II Product Bundles - 1st choice | Count | % | Total Value |
|---|---|---|---|
| Family Supplements | 162 | 20.40% | $12,150.00 |
| Supplements & skin care | 47 | 5.92% | $3,525.00 |
| Supplements & skin care oily | 26 | 3.27% | $1,950.00 |
| Double X supplement | 87 | 10.96% | $6,525.00 |
| Artistry and Nutrilite-Women | 80 | 10.08% | $6,000.00 |
| Tolsom and Nutrilite-Men | 17 | 2.14% | $1,275.00 |
| Laundry care-Immune Suppl. | 85 | 10.71% | $6,375.00 |
| Laundry care-Him Her Suppl. | 50 | 6.30% | $3,750.00 |
| Weight Management | 43 | 5.42% | $3,225.00 |
| Personal Care | 53 | 6.68% | $3,975.00 |

| | | | |
|---|---|---|---|
| Energy | 101 | 12.72% | $7,575.00 |
| Sports | 43 | 5.42% | $3,225.00 |
| **TOTAL** | **794** | **100.00%** | **$59,550.00** |

• 435 potential class members filed late claims for BSM expenditures under Section III (cash for BSM losses). The estimated dollar value of these claims, if paid according to the terms set forth in the notice and the claim form (i.e., claimants may receive 20% of their claimed losses, up to a maximum recovery of $2,000 per claimant), is $213,503.75.

• 149 potential class members filed late "special hardship" claims under Section IV. Of those potential class members who filed "special hardship" claims, 46 indicated that they filed for personal bankruptcy as a result of their recruitment into and operation of their Quixtar business. Approximately 17% of late Section IV claims included documentation. Of the approximately 17% that submitted Section IV documentation, about 27% (7 records) indicated an actual amount. The estimated dollar value of Section IV claims with accompanying documentation, if paid according to the terms set forth in the notice and the claim form (i.e., claimants may receive 20% of their claimed losses, up to a maximum recovery of $10,000), is $33,601.06.

12. **Exclusions/Objections.** Pursuant to the Court's February 21, 2012 Order, we considered an objection or opt-out request timely if it was postmarked no later than August 17, 2013. Rust Consulting has received 260 timely requests for exclusion, and 18 timely filed written objections, which represents a small percentage of all putative class members to whom notice was sent and of potential class members who filed claims. The list of exclusion and objection requests is attached hereto as **Exhibit D**. Several individuals who submitted opt-out requests indicated that were doing so because they had not suffered any losses as a result of their participation in Quixtar. Attached as **Exhibit E** is a subset of the actual opt outs provided at the request of Quixtar. The actual objections are attached as **Exhibit F**.

13. **Notice and Administration Costs.** As of October 8, 2012, the total costs of notice and claims administration is $1,376,957.32.

14.   **Estimated Cost for Additional Notice Outreach.**  Rust Consulting estimates that it would cost approximately $308,740 to mail and email potential class members who did not respond to the first notification.

I declare under penalty of perjury under the laws of the State of Minnesota and the United States of America that the above is true and correct to the best of my knowledge and that this Declaration was executed this 11th day of October, 2012, at Faribault, Minnesota.

_____

_Jason M. Stinehart_

Jason M. Stinehart

**EXHIBIT A**

*Court-Ordered Legal Notice*

**CLAIMS ADMINISTRATOR**
**PO BOX 8036**
**FARIBAULT, MN 55021-9436**

*Si usted fue distribuidor de Amway/Quixtar en cualquier momento entre el 1 de enero de 2003 y el 21 de febrero 2012, podrá obtener beneficios del acuerdo logrado a partir de una demanda colectiva.*

*Para una notificación en Español, llamar 1-888-334-6149 o visitar www.QuixtarClass.com*

**The Plaintiffs' attorneys will submit an application for attorneys' fees to the Court by May 27, 2012, which may then be viewed at www.QuixtarClass.com.**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

**Important Notice About Quixtar (Amway) Settlement**

NAME
ADDRESS
CITY STATE ZIP CODE

---

## If You Were an Amway/Quixtar Distributor At Any Time Between January 1, 2003 and February 21, 2012, you could get benefits from a Settlement.

Records show that you are a current or former Amway/Quixtar distributor.  A lawsuit was filed against Quixtar, Inc., ("Quixtar") over its pricing of goods and its recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs").  Quixtar denies that it did anything wrong.  The Settlement includes $34 million in cash, $21 million (retail value) in free products, and a legal commitment from Quixtar that it will change certain business practices.  Go to www.QuixtarClass.com for more information and to file a claim online.

**Who's Included?**  You are included in the Settlement if at any time between January 1, 2003 and February 21, 2012, you were an IBO or a legal entity through which an IBO conducted a Quixtar-related business.

**What Can You Get?**  Former IBOs who quit Quixtar before February 21, 2012 may be eligible to receive a cash payment and/or free products.  Former IBOs may be eligible to get (1) up to $75 in free products if you paid a registration fee which was not refunded and if you did not renew your Quixtar distributorship; (2) up to $2,000 to repay you for the purchase of business support materials, and (3) up to $10,000 if you lost more than $10,000 or filed for bankruptcy because of your participation as an IBO.  Current IBOs are not eligible to receive compensation from the Settlement, however, they will benefit from certain business reforms.

**How to Get Benefits?**  You must submit a Claim Form to get benefits.  The Claim Form is available at www.QuixtarClass.com or by calling 1-888-334-6149.  You can submit a Claim Form online or by mail.  The deadline to submit a Claim Form is **August 17, 2012**.

**Your Other Rights.**  If you do nothing, your rights will be affected.  If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement.  The deadline to exclude yourself is **August 17, 2012**.  If you do not exclude yourself you will not be able to sue Quixtar and sellers of "business support materials" for any claim relating to the lawsuit.  If you stay in the Settlement, you may object to it by **August 17, 2012**.  You may object by sending a letter to the Claims Administrator at PO Box 8035, Faribault, MN 55021-9435 which will be provided to the Court.   The Court will hold a hearing on **November 16, 2012** to consider whether to approve the Settlement and award attorneys' fees.  You can appear at the hearing, but you don't have to.  You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. **The Detailed Notice, available at www.QuixtarClass.com or by calling 1-888-334-6149, further explains how to exclude yourself or object.**

**Attorneys' Fees.**  The Plaintiffs' attorneys anticipate seeking fees of $15,000,000 (15 million dollars).  Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund.

**For more information or a Claim Form:**      **1- 888-334-6149**      **www.QuixtarClass.com**

**EXHIBIT B**

From:     Amway/Quixtar Settlement Administrator
Subject:  Amway/Quixtar Settlement

**If You Were an Amway/Quixtar Distributor at Any Time Between
January 1, 2003 and February 21, 2012 You Could Get Benefits from a Settlement.**

**Si usted fue distribuidor de Amway/Quixtar en cualquier momento entre el 1 de enero de 2003 y el 21 de
febrero 2012, podrá obtener beneficios del acuerdo logrado a partir de una demanda colectiva.**

*Para una notificación en Espanol, llamar 1-888-334-6149 o visitar www.QuixtarClass.com*

Records show that you are a current or former Amway/Quixtar distributor.  A lawsuit was filed against Quixtar, Inc., ("Quixtar") over its pricing of goods and its recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs").  Quixtar denies that it did anything wrong.  The Settlement includes $34 million in cash, $21 million (retail value) in free products, and a legal commitment from Quixtar that it will change certain business practices.  Go to www.QuixtarClass.com for more information and to file a claim online.

**Who's Included?**  You are included in the Settlement if at any time between January 1, 2003 and February 21, 2012, you were an IBO or a legal entity through which an IBO conducted a Quixtar-related business.

**What Can You Get?**  Former IBOs who quit Quixtar before February 21, 2012 may be eligible to receive a cash payment and/or free products.  Former IBOs may be eligible to get (1) up to $75 in free products if you paid a registration fee which was not refunded and if you did not renew your Quixtar distributorship; (2) up to $2,000 to repay you for the purchase of business support materials, and (3) up to $10,000 if you lost more than $10,000 or filed for bankruptcy because of your participation as an IBO.  Current IBOs are not eligible to receive compensation from the Settlement, however, they will benefit from certain business reforms.

**How to Get Benefits?**  You must submit a Claim Form to get benefits.  The Claim Form is available at www.QuixtarClass.com or by calling 1-888-334-6149.  You can submit a Claim Form online or by mail.  The deadline to submit a Claim Form is **August 17, 2012.**

**Your Other Rights.**  If you do nothing, your rights will be affected.  If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement.  The deadline to exclude yourself is **August 17, 2012.**  If you do not exclude yourself you will not be able to sue Quixtar and sellers of "business support materials" for any claim relating to the lawsuit.  If you stay in the Settlement, you may object to it by **August 17, 2012.**  You may object by sending a letter to the Claims Administrator at PO Box 8035 Faribault, MN 55021 which will be provided to the Court.  The Court will hold a hearing on **November 16, 2012** to consider whether to approve the Settlement and award attorneys' fees.  You can appear at the hearing, but you don't have to.  You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.  **The detailed notice, available at www.QuixtarClass.com or by calling 1-888-334-6149, further explains how to exclude yourself or object.**

**Attorneys' Fees.**  The Plaintiffs' attorneys anticipate seeking fees of $15,000,000 (15 million dollars).  Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund.  The Plaintiffs' attorneys will submit an application for attorneys' fees to the Court by May 27, 2012, which may then be viewed at www.QuixtarClass.com.

**For more information or a Claim Form:   1-888-334-6149   www.QuixtarClass.com**

**EXHIBIT C**

*Welcome to the Pokorny v. Quixtar Class Action Settlement Site*

Last Updated: *April 16, 2012*

HOME
COMMONLY ASKED QUESTIONS
SETTLEMENT AGREEMENT
PRELIMINARY APPROVAL ORDER
SECOND AMENDED COMPLAINT
MOTION FOR ATTORNEYS' FEES
NOTICE
UNA NOTIFICACIÓN EN ESPAÑOL
CLAIM FORM
IMPORTANT DATES
PRODUCT BUNDLE DESCRIPTIONS

DOWNLOAD ACROBAT READER
Adobe Reader is free and is required to view and print documents on this site.

A A A

## Welcome

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

**If You Were an Amway/Quixtar Distributor Any Time**

**Between January 1, 2003 and February 21, 2012,**

**You Could Get Benefits from a Class Action Settlement.**

Para una notificación en Español, llame 1-888-334-6149 o visite **AQUÍ**

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

- A Settlement has been reached with Quixtar, Inc., ("Quixtar") about the pricing of Quixtar products and the recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs").

- Those included in the Settlement may be eligible to receive a payment or free products.  Quixtar has also agreed to change some of its business practices.

**Your legal rights are affected even if you do nothing.  Read this notice carefully.**

| Your Legal Rights and Options | |
|---|---|
| Submit a Claim Form | This is the only way to get a payment or products.  This option will result in you giving up your rights to sue Quixtar and sellers of "business support materials" ("BSM Companies") about the legal claims in this lawsuit.  You do not need to provide documentation to receive free products.  Business Support Material expenses must be verified with receipts, credit card statements, or other similar forms of proof of purchase, which may include your <u>own signed statement</u>.  To receive benefits, submit a Claim Form online or by mail by August 17, 2012.  You can submit supporting documentation to the following address; <br><br>Quixtar Settlement<br>PO Box 8035<br>Faribault, MN 55021-9435 |
| Exclude Yourself | This is the only option that allows you to sue Quixtar and sellers of "business support materials" separately over the claims resolved by this Settlement.  However, under this option, you would get no payment or products from the Settlement. |
| Object | Write to the Claims Administrator about why you do not like the Settlement. These objections will be provided to the Court. |
| Go to a Hearing | Ask to speak in Court about the fairness of the Settlement. |
| Do Nothing | Get no money or products.  Give up rights to sue Quixtar and sellers of "business support materials" about the claims in this lawsuit. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  If it does, and after any appeals are resolved, benefits will be distributed to those who qualify.  Please be patient.

**DISCLAIMER**

Please do not contact either Quixtar or the Court about this Settlement. If you have questions, please refer to the Commonly Asked Questions and the other information posted here.

10

# EXHIBIT D

## OBJECTIONS

| SEQ | NAME 1 |
|-----|--------|
| 1 | MARIA E JUAREZ |
| 2 | MARIA H WONG |
| 3 | JEREMY THOMAS |
| 4 | FREEDOM CONSULTANTS LLC |
| 5 | SHANE & EVELYN HAYES |
| 6 | WILLIAM J CULLINS |
| 7 | ZECHARIAH FRITZ |
| 8 | RICHARD & LOREEN ECKENWILER |
| 9 | MICHAEL HAMBRUCH |
| 10 | SANDRA FRAZIER |
| 11 | MICHELLE & ROBERT SZYNSKIE |
| 12 | GRANT NAGATA |
| 13 | GARY GENTRY |
| 14 | BRUCE & MARY MILLER |
| 15 | DEANNA M JARAMILLO |
| 16 | DENNIS O OBADO |
| 17 | MICHAEL & EVIE LOU BITONDO |
| 18 | VIRGIL & DARLENE HILL |

## OPT OUT REQUESTS

| SEQ | NAME |
|-----|------|
| 1 | RENEE SERAFINI |
| 2 | LINDA THURSTON |
| 3 | VALERIE JOHNSTON |
| 4 | STEPHEN CROCHET |
| 5 | GERALD DAVITT |
| 6 | BESSIE WALLACE |
| 7 | MONIKA CARY |
| 8 | ANTHONY LEONARDO |
| 9 | RONALD HAWS |
| 10 | JAMES GEIGER |
| 11 | JAMES MUNCY |
| 12 | GLEN HEINTZ |
| 13 | SUZANNE NULL |
| 14 | JIMMY HAHN |
| 15 | LOUISE HAINES |
| 16 | DAVID HANCE |
| 17 | CARL CHANDLER |
| 18 | DARLA CURTIS |
| 19 | CARLA HADDEN |
| SEQ | NAME |

| | |
|---|---|
| 20 | JEFFREY WHITTAKER |
| 21 | ROBERT HOWARD |
| 22 | LORETTA BICKERT |
| 23 | ERNEST STEWART |
| 24 | JOHN MANNING |
| 25 | THERESA WILLIAMS |
| 26 | GERALD HILBERT |
| 27 | DAVID GROTHPIETZ |
| 28 | MARY HODSON |
| 29 | ISABEL GARCIA |
| 30 | BETTY WELLS |
| 31 | JOYCE MCCABE |
| 32 | GREGORY CASTORA |
| 33 | JOEL TRENKLE |
| 34 | MICHELE SAMS |
| 35 | SALLIE HOEKEMA |
| 36 | KEVIN MOE |
| 37 | ELLEN GLOBKE |
| 38 | KENNETH MILLS |
| 39 | RODOLPHE MOTARD |
| 40 | KATHY RITENHOUR |
| 41 | MARK CALDAROLA |
| 42 | JAMES STEWART |
| 43 | LORETTA NILES |
| 44 | EDWARD SUROWIEC |
| 45 | SAMUEL BOYADJIAN |
| 46 | JERALD CARDINAL |
| 47 | DAVID BRAINARD |
| 48 | ALEXANDRA FOSTER |
| 49 | SAM LANKA |
| 50 | STEVEN BOUKNIGHT |
| 51 | JOSEPH LAGOR |
| 52 | KEVIN MOE |
| 53 | EDGAR CHAVIRA |
| 54 | ANGELIA HOUSE |
| 55 | OLESYA FAYN |
| 56 | ABRAHAM LIZARDO |
| 57 | PATSY MCCORD |
| 58 | JONATHAN DEIBERT |
| 59 | NICOLE JOHNSON |
| 60 | STACEY ARMSTRONG |
| 61 | KEVIN MOE |
| 62 | WILLIAM NEWTON |
| 63 | INTERACTIVE MARKETING SYSTEM |
| 64 | TRUNG TRAN |
| SEQ | **NAME** |
| 65 | FLOYD WOODMAN |

| 66 | GARY MAYES |
| 67 | DON KENCHEL |
| 68 | EMILY  HARRIS |
| 69 | ADAM TOW |
| 70 | XUE  VANG |
| 71 | ANTHONY J  AKLES |
| 72 | DWIGHT  CASE |
| 73 | YONG  HERMANNY |
| 74 | ELIZABETH  IRBY |
| 75 | VIRGINIA  IRBY |
| 76 | AUDREY  BROWN |
| 77 | BILLY  GUTHRIE |
| 78 | JAMES  BRYANT |
| 79 | DEBORAH  COE |
| 80 | JEAN  KUNECKI |
| 81 | MARK  STEVENS |
| 82 | BRIAN  DARNELL |
| 83 | WEI  CHEN |
| 84 | SHAWNA  MAJOR |
| 85 | PATRICIA  DIETLEIN |
| 86 | JUNKO  HARBISON |
| 87 | MAKOTO  EZURE |
| 88 | MEGUMI  EZURE |
| 89 | MASAKO  SU |
| 90 | BETTIE  HENSLEY |
| 91 | CLARE  DORAN-KOLAT |
| 92 | ELAINE  METRO |
| 93 | DARRELL  DEWARD |
| 94 | MARVIN  GIFT |
| 95 | GERALD  HAINES |
| 96 | JOHN H  SYBERT |
| 97 | DOROTHY GARVER |
| 98 | GARRY L  WHEELER |
| 99 | MAXWELL  LEVERICH |
| 100 | SUNNY  CLARK |
| 101 | ANNE M  LOVETT |
| 102 | ELIZABETH  DESIMONE |
| 103 | JEFFRY  KIRSCHEN |
| 104 | PEGGY  FLICK |
| 105 | DOROTHY  VANERKA |
| 106 | MARK  SCHMITT |
| 107 | MARGO R  ALLMARAS |
| 108 | JOAN  BRIGGS |
| 109 | PATRICIA  CONNELL |
| **SEQ** | **NAME** |
| 110 | LAWRENCE  FU |
| 111 | JOHN  RIMKUNAS |

13

| | |
|-----|-------------------------|
| 112 | MONTIE F CHAMBERS |
| 113 | DONNA GOBBLE |
| 114 | SHIRLEY REED |
| 115 | RACHEL TALLEY |
| 116 | MICHAEL MANK |
| 117 | CAROLE GRAY |
| 118 | DOROTHY J MILLER |
| 119 | ROBERT JEARY |
| 120 | SHAUN BAYS |
| 121 | BETSY BAYS |
| 122 | DELLA BOZMAN |
| 123 | MARY D THERIOT |
| 124 | JEFFREY ORLOSKI |
| 125 | JASON WALKER |
| 126 | M E ONEILL |
| 127 | JANICE KING |
| 128 | JOHN KOLETTIS |
| 129 | LENORA HEATH |
| 130 | DARRYL BENNETT |
| 131 | SCOTT MCKECHNIE |
| 132 | JAMES J GAUDET |
| 133 | ARTHUR |
| 134 | SARAH ALLERTON |
| 135 | SAMUEL SEELOFF |
| 136 | RUTH SEELOFF |
| 137 | PAUL VITUCCI |
| 138 | DONNA MCGUIRE |
| 139 | JOAN LONG |
| 140 | DOUG BRINKS |
| 141 | RYAN LURK |
| 142 | KAM KWOK |
| 143 | DAVID GONZALES |
| 144 | PAUL EGERSHEIM |
| 145 | CARL C CHASTAIN |
| 146 | DONALD L HUSTON |
| 147 | BRIAN MCCLURE |
| 148 | DEBORAH MARTIN |
| 149 | PHILLIP ANTONUCCI |
| 150 | CHADRICK WEAVER |
| 151 | MARK SUMMERS |
| 152 | RON PILO |
| 153 | KENNETH HEBERT |
| 154 | JEFFREY W HOWARD |
| **SEQ** | **NAME** |
| 155 | HANNAH HOWARD |
| 156 | SCOTT WALTER |
| 157 | SCOTT IMWALLE |

| 158 | MICHAEL KARAMAN |
|-----|-----------------|
| 159 | BENJAMIN HOUCK |
| 160 | DOUG ABELE |
| 161 | AUDREY BAARDSON |
| 162 | RICHARD MICHAEL TAYLOR |
| 163 | LUCY METZKER |
| 164 | CHRISTI MCCANN |
| 165 | KENT O GEPPERT |
| 166 | SANTI RUIZ |
| 167 | DELVIN J JOHNSON |
| 168 | LEIDEANA MORAN |
| 169 | JESUS YRUEGAS |
| 170 | MARY E MORRIS |
| 171 | JULIE L VRIEZE |
| 172 | BERNICE M RIOUX |
| 173 | C VOGHELL-FARRINGTON |
| 174 | JOAN LEE |
| 175 | KRISTOFOR HOLIEN |
| 176 | JUANITA BRUMFIELD |
| 177 | JUANITA BRUMFIELD |
| 178 | SHEILA VILLACIS |
| 179 | JIMMY CAYETANO |
| 180 | MICHELLE LOVETT NO I |
| 181 | MICHELLE LOVETT NO I |
| 182 | VICTORIA PRIME-JACKSON |
| 183 | BILL BLAVAT |
| 184 | SAGAR BHATNAGAR |
| 185 | DION JONES-LEWIN |
| 186 | MELISSA BLANZ |
| 187 | MELISSA BLANZ |
| 188 | ABRAHAM TATIS |
| 189 | DEWEY COURTER |
| 190 | BILLY JONES |
| 191 | DULCE BUENO |
| 192 | MEREDITH BARTO |
| 193 | MICHAEL SMITH |
| 194 | KATHIE HARRISON |
| 195 | CHENGJIE ZHU |
| 196 | JONATHAN GARRETT |
| 197 | CHRISTOPHER DECOCK |
| 198 | KERI HERRON |
| 199 | JEROME ORLANDO |
| SEQ | NAME |
| 200 | BRIAN WARREN |
| 201 | DIANE M EGIDIO |
| 202 | NANCY WEGEMAN |
| 203 | DERRICK MEAD |

15

| | |
|---|---|
| 204 | JOHN  MORGAN |
| 205 | SYLVIA  JACKSON |
| 206 | DORENE  OTT |
| 207 | J PAUL OTT |
| 208 | JOSEPH  COLLINS |
| 209 | TERRY  HUME |
| 210 | SCOTT  JOHNSON |
| 211 | SUE  LITWIN |
| 212 | HENRY  BUSTAMANTE |
| 213 | CARMELO  ESTACIO |
| 214 | SCOTT  JENSEN |
| 215 | DONALD  MELL |
| 216 | WESLEY  BARKOWIAK |
| 217 | DEAN D FRANKE |
| 218 | JOSHUA  GRANT |
| 219 | NATHAN  BEAGLE |
| 220 | MARY  SIMON |
| 221 | TODD  BAUER |
| 222 | BRIAN  DRINKWINE |
| 223 | BONNIE  RUSHING |
| 224 | TZVETELINA  WILLIAMS |
| 225 | KRISTY  SCHILLINGER |
| 226 | ROBERT  MORGAN |
| 227 | SYLVIA  HENSLEY |
| 228 | JAMES  ROBERTSON |
| 229 | DOUGLAS  WRIGHT |
| 230 | PHILIP  FRENCH |
| 231 | DENNIS  OBADO |
| 232 | MARK  PETERS |
| 233 | HOWARD  CAKE |
| 234 | HENRY  ROBBINS |
| 235 | CASTEL  LAROZE |
| 236 | DONNA  YOCUM |
| 237 | NICHOLAS  AUSTIN |
| 238 | JOCELYN  JOHNSON |
| 239 | GARY  NAHRWOLD |
| 240 | JULIE  SZYMKOWSKI |
| 241 | DAMIEN  WILLIAMS |
| 242 | PETER  STYNOSKI |
| 243 | ANN  HAVEN |
| 244 | STEVEN  BAUMANN |
| SEQ | **NAME** |
| 245 | GLEN T MERMER |
| 246 | PAULA  KUX |
| 247 | PHILIP   KAMINSKI |
| 248 | DONOVAN  QUESENBERRY III |
| 249 | STEPHEN DONOHOUE |

| | |
|---|---|
| 250 | DWIGHT  GOODWIN |
| 251 | KATHLEEN  WALLER |
| 252 | JEROME  GOULD |
| 253 | JERRY  RIZO |
| 254 | JERRY  RIZO |
| 255 | WARD  BURROWS |
| 256 | SHEFALI  BULCHANDANI |
| 257 | LUIS  RIVERA |
| 258 | ROBERT  KLINE III |
| 259 | ROBIN  LAMPMAN |
| 260 | MICHAEL  BEESON |

Douglas R.
Donna L. > Abele



Douglas R. Abele
Donna L. Abele
August 1, 2012

8-01-2012

To whom it may concern,

We have no idea how anyone could complain when you, (individuals coming into the business) have small print in their contracts but fail to read them.

We would like to show our support for Amway/Quixtar by excluding ourselves from Pokorny v Quixtar, Inc No. C 07-00201 SC

# THE GOVERNOR'S PALACE GARDENS

From a painting by Caesar Monturano
www.protoart.com

*The Colonial
Williamsburg Foundation*





Mrs. Donna Abele

02 AUG 2012 PM 3 L

Justice
Just Done
FOREVER
U S A

Quantar Settlement/Objections
P.O. Box 8035
Faribault, Mn 55021-9435

55021943535



August 7, 2012

Quixtar Settlement Exclusions/Objections
PO Box 8035
Faribault, MN 55021-9435

Subject: Exclusion from the settlement

To whomsoever it may concern,

I was advised by your telephone representative to write to you. There is a spurious claim in my name under the claim ID: 0021420511. This claim is false and should be disregarded. Please exclude me from the Pokornyv. Quixtar, Inc., No. C 07-00201 SC.

My information is below:

Name:
Addres
Contac

Your customer representatives who helped me over the phone and via email were very helpful. Thanks for your help in excluding me from the settlement.

Sincerely,

08/07/12

Sagar Bhatnagar



CERTIFIED MAIL™



UNITED STATES
POSTAL SERVICE



1000        55021

U.S. POSTAGE
PAID

AUG 08. '12
AMOUNT

$3.40
00019357-12

RECD AUG 19 2012

*Quixtar Settlement Exclusion/Objections*
*P.O. Box 8035*
*Faribault, MN 55021-9435*

5502189435

August 8, 2012

Aug 8

Quixtar Settlement Exclusions/Objections

PO Box 8035

Faribault, MN 55021-0435

Please exclude me from the settlement (Pokorny v. Quixtar, Inc., No. C 07-00201 SC).  I am happy with Quixtar and don't want anything to do with the settlement.

Thank you very much.

Melissa Blanz

Claimant ID #: 27789711

27789711

August 8, 2012

Aug 8

Quixtar Settlement Exclusions/Objections

PO Box 8035

Faribault, MN 55021-0435

Please exclude me from the settlement (Pokorny v. Quixtar, Inc., No. C 07-00201 SC).  I am happy with Quixtar and don't want anything to do with the settlement.

Thank you very much.

Melissa Blanz

Claimant ID #: 0012027668

0012027668



09 AUG 2012 PM 1 L

Quixtar Settlement Exclusions\Objections
P. O. Box 8435
Faribault, MN
55021-0435

To whom it may concern re: Quixtar (Amway) Settlement

I have no desire to be a part of this Class Action and Settlement. I have been an independent business owner for over 20 years and have no quibble with Amway/ Quixtar. They have been ethical from my perspective and I do not want to be associated with any adverse action against them.

Thank you.

Sincerely, Patricia Connell

Claimant ID - 0001002096

26 JUN 2012 PM 2 L

MARK TWAIN

USA    FOREVER

Claims Administrator
PO Box 8035
Faribault, MN
55021-9435

55021+9435

Jonathan Harry Deibert



Regarding:

Pokorny v. Quixtar, Inc. C07-00201 SC

During no time was I unfairly induced, mistreated or lied to about or in regards to any aspect of the Amway/Quixtar business. I believe the allegations to be false and demand that my name be taken off this lawsuit and have my personal information expunged from any and all legal actions against Amway/Quixtar.

04/16/12

Jonathan Harry Deibert

Jonathan Deibert

Pokorny V. Quixtar, Inc No. C07-0201 SC.
Claims Administrator
Quixtar Settlement Exclusions/Objections
PO BOX 8035
Faribault, MN 55021-9435

REC'D APR 19 2012

55021943535



June 14, 2012

Claims Administrator

P.O. Box 8035

Faribault, MN 55021-9435

To whom this may concern:

I remove myself from the proposed settlement against Amway/Quixtar.

Amway/Quixtar did nothing wrong in recruiting me to be an IBO and there is nothing wrong in their pricing of goods.  This is a high quality company with very high quality goods.

The letter gives my claimant ID number as 0003417119

*Elizabeth R. Desimone*

(Ms.) Elizabeth Desimone



14 JUN 2012 PM91

Claims Administrator

P.O. Box 8035

Faribault, MN 55021-9435

55021943535

08/14/2012

To the Staff at Quixtar Exclusions/Objections

Please exclude me from  Pokorny v. Quixtar, Inc No. c 07-00201 SC.

I have seen no wrong doing and have not been affected in any  way by Quixtar or Amway.  I do not wish
to be involved in any legal action against them.

Thank you

Brian J. Drinkwine

15 AUG 2012 PM 3 L



RECD AUG 2 0 2012

QuixTar Settlement Exclutions/Objections
P.O. Box 8035
Fairbault, MN 55021-9435

Dear Claims Administrator,                    8-13-2012

   I object to claim ID #0004287919.
Please exclude me from the lawsuit. I disagree
with the claim.


Sincerely,

Dean D Franke
Dean D Franke

14 AUG 2012 PM 1 T

REC'D AUG 20 2012

Claims Administrator
PO Box 8035
Faribault MN 55021

55021+9435

Quixtar (Amway) Settlement
Claim I D Number 001807448

I Dorothy Garver object
to this lawsuit, filed
against Quixtar, Inc. and
want to be excluded.

Thank you,

Dorothy Garver

just a note



Mrs Dorothy Garver

Claimant ID # 0018074

11 JUN

REC'D JUN 14 2012

USA

forever

Claims Administrator
P.O. Box 8035
Fairbault MN. 55021-9435

June 4, 2012

This is to be excluded from the pricing & recruitment case against Quixtar, Inc. I do not understand the case & have no complaints.

I am an IBo.

Claimant ID # 0004048916
As printed on the postcard notifying me of the settlement.

Thank You,
Bettie Hensley

Ms. Bettie Hensley

USA 45

RECD JUN 08 2012

Claims Administrator
P.O. Box 8035
Faribault, MN 55021-9435

55021+9435

Quixtar Inc.
Exclusion Notification

To Whom It May     April 25, 2012
Concern:

I do *not* wish to
participate in this
settlement. Please
exclude my (our) names
from any legal documents.
We have had our distributor-
ship since 1982, & 1981.
Amway is probably the
best run company in
America today. I find it
very sad that this can
happen to Amway.

Sincerely
Bob & Peggy Haward

dist # 613117

*Court-Ordered Legal Notice*

**CLAIMS ADMINISTRATOR**
**PO BOX 8036**
**FARIBAULT, MN 55021-9436**

*Si usted fue distribuidor de Amway/Quixtar en cualquier momento entre el 1 de enero de 2003 y el 21 de febrero 2012, podrá obtener beneficios del acuerdo logrado a partir de una demanda colectiva.*

*Para una notificación en Español, llamar 1-888-334-6149 o visitar www.QuixtarClass.com*

**The Plaintiffs' attorneys will submit an application for attorneys' fees to the Court by May 27, 2012, which may then be viewed at www.QuixtarClass.com.**



0 0 0 1 9 7 1 4 8 4

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

## Important Notice About Quixtar (Amway) Settlement

A 1001 1358836

**CLAIMANT ID NUMBER: 0001971484**



ROBERT & PEGGY HOWARD

sent
4-25 2012

# If You Were an Amway/Quixtar Distributor At Any Time Between January 1, 2003 and February 21, 2012, you could get benefits from a Settlement.

Records show that you are a current or former Amway/Quixtar distributor. A lawsuit was filed against Quixtar, Inc., ("Quixtar") over its pricing of goods and its recruitment of Quixtar distributors, whom the company calls "Independent Business Owners" ("IBOs"). Quixtar denies that it did anything wrong. The Settlement includes $34 million in cash, $21 million (retail value) in free products, and a legal commitment from Quixtar that it will change certain business practices. Go to www.QuixtarClass.com for more information and to file a claim online.

**Who's Included?** You are included in the Settlement if at any time between January 1, 2003 and February 21, 2012, you were an IBO or a legal entity through which an IBO conducted a Quixtar-related business.

**What Can You Get?** Former IBOs who quit Quixtar before February 21, 2012 may be eligible to receive a cash payment and/or free products. Former IBOs may be eligible to get (1) up to $75 in free products if you paid a registration fee which was not refunded and if you did not renew your Quixtar distributorship; (2) up to $2,000 to repay you for the purchase of business support materials, and (3) up to $10,000 if you lost more than $10,000 or filed for bankruptcy because of your participation as an IBO. Current IBOs are not eligible to receive compensation from the Settlement, however, they will benefit from certain business reforms.

**How to Get Benefits?** You must submit a Claim Form to get benefits. The Claim Form is available at www.QuixtarClass.com or by calling 1-888-334-6149. You can submit a Claim Form online or by mail. The deadline to submit a Claim Form is **August 17, 2012.**

**Your Other Rights.** If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself is **August 17, 2012**. If you do not exclude yourself you will not be able to sue Quixtar and sellers of "business support materials" for any claim relating to the lawsuit. If you stay in the Settlement, you may object to it by **August 17, 2012**. You may object by sending a letter to the Claims Administrator at PO Box 8035, Faribault, MN 55021-9435 which will be provided to the Court. The Court will hold a hearing on **November 16, 2012** to consider whether to approve the Settlement and award attorneys' fees. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. **The Detailed Notice, available at www.QuixtarClass. com or by calling 1-888-334-6149, further explains how to exclude yourself or object.**

**Attorneys' Fees.** The Plaintiffs' attorneys anticipate seeking fees of $15,000,000 (15 million dollars). Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund.

**For more information or a Claim Form:     1- 888-334-6149     www.QuixtarClass.com**

Bob & Peggy Howard

23 APR 2012 PM 2 L

Claims Adminstrator
P. O. Box 8035
Faribault, M.N.
55021-9435

"IN GOD WE TRUST"

Quixtar Settlement Exclusions/Objections

PO Box 8035

Faribault, MN 55021-9435

We wish to be excluded from Pokorny v. Quixtar, Inc., No. C 07-00201 SC.

I take any responsibilities of my decisions to purchase, or not to purchase, any materials to build my business.  I am also responsible for any losses or profits that I create from my actions.

Michael Karaman

Nancy Karaman

IBO #8582

████████████

CC:      Tom & Lori Milo
         Amway Corp, Legal

# KARAMAN
### COMMUNICATIONS



UNITED STATES POSTAGE

PITNEY BOWES

$000.01°

02 1P
0001084887  AUG 02 2012
MAILED FROM ZIP CODE





07-07-2012

From = John Kolettis

████████████████████

To :   The Claims Administrator

Ref:   Class Action - Settlement against Quixtar

Dear ,

       I do not want to participate in the settlement with Quixtar. I generally disagree with class actions and I am not submitting a Claim Form to get benefits. I object to the idea of lawyers getting together to throw companies out of California or out of business, while gaining millions of dollars for themselves. We, ourselves, should use common sence, logic and get informed, Knowledge is power. Let's not claim others for our situations.

       Thanks for reading.

Sincerily
John Kolettis

29 JUL 2012 PM61

Liberty
FOREVER

RECD JUL 1 ② 2012

The Claims Administrator
P.O. Box 8035
Faribault, MN. 55021-9435

55021943535

Sirs:

I wish to be excluded completely from the Quixtar/Amway settlement and do hereby submit this letter as documentation to be provided to the Court to that end.

I do not wish to recieve any "free goods" or "cash" that was not earned through legitimate effort on my part, which this "settlement" includes.

Sincerely,

(Michelle Leverich)

Claimant ID: 0019953533

1



Claims Admin
P.O. Box 8035
Faribault, MN
55021-9435

5502189435

REC'D JUN 1 5 2012

James and Mary Muncy

█████████████

April 17, 2012

Quixtar Settlement Exclusions/Objections
PO Box 8035
Faribault, MN 55021-9435

To whom it may concern,

We wish to be excluded from Pokorny v. Quixtar, Inc., No. C 07-00201 SC.

We are NOT excluding ourselves so that we are free to sue Amway/Quixtar at a later date.  In fact, I am copying Amway on this letter and I state right here that I will never sue them for anything they have done in the past.  I believe that they have always conducted their business with the greatest of ethical practices and considerations.  Amway is a great company and they exemplify all that is good about American business.  It is a shame that they have to put up with lawyers that represent all that is bad with America today.

What American needs is more companies like Amway and less lawyers like those who have filed this lawsuit.  Thus, to the lawyers that would choose to suck us into your evil deeds, I say please get out of our lives and go get a REAL JOB rather than running around harassing GREAT companies like Amway.

Sincerely,

James A. Muncy, Ph.D. in Business Administration
Professor of Marketing, ███████████University

Mary E. Muncy

cc: Amway Corporation

JIM AND LISA MUNCY

REC'D APR 2 0 2012

QUIXTAR SETTLEMENT
EXCLUSIONS / OBJECTIONS
P.O. BOX 8035
FARIBAULT, MN 55021-9435

55021$9435

August 17, 2012

Claims Administrator
P.O. Box 8035
Faribault, MN 55021-9435

CLAIMANT ID NUMBER:  0002610627

To Whom It May Concern:

Please regard this as formal notice of requesting exclusion from the Amway/Quixtar
Distributor Settlement.  This is for the following reasons:

1) this is a frivolous lawsuit filed by naive IBO's who were
searching for a "get-rich-quick scheme" and lacked the ambition
and drive that could lead to success;

2) this is a classic example why we need "serious tort reform" in this
country.

Thank you for honoring the above request.

Sincerely,

James C. Robertson

CC:

James C. Robertson



17 AUG 2012 PM 2 L

RECD AUG 2 0 2012

Claims Administrator
P.O. Box 8035
Faribault, MN 55021-9435

5502194353S

23:30pm

5-1-30

Dear Attorney for Suit,

I will not be involved in suit. Amway is a good company and I feel it would not rest good with me, so leave me out of this suit.

Copy SDS

X James D. Stewart         IBO

---

**Court-Ordered Legal Notice**

**CLAIMS ADMINISTRATOR**
**PO BOX 8036**
**FARIBAULT, MN 55021-9436**

Si usted fue distribuidor de Amway/Quixtar en cualquier momento entre el 1 de enero de 2003 y el 21 de febrero 2012, podrá obtener beneficios del acuerdo logrado a partir de una demanda colectiva.

Para una notificación en Español, llamar 1-888-334-6149 o visitar www.QuixtarClass.com

The Plaintiffs' attorneys will submit an application for attorneys' fees to the Court by May 27, 2012, which may then be viewed at www.QuixtarClass.com.

0 0 6 7 2 4 0 5 2 2

PRESORTED
FIRST-CLASS MAIL
U S POSTAGE
PAID
Rust Consulting, Inc.

**Important Notice About Quixtar (Amway) Settlement**

A 1001 0853117

CLAIMANT ID NUMBER: 0007240522

DAVID WILSON
JAMES STEWART




James D. Stewart

02 MAY 2012 PM 2 L

REC'D MAY 07 2012

Claims Administrator
P.O. Box 8036
Faribault, MN. 55021-9436

55021+9436

*A personal note ...*

April 24, 2012

To Whom It May Concern:

I would like to be excluded from the Settlement (Deadline to be excluded Aug. 17, 2012)

I have no problem with Amway.

Joyce Stewart

ID# 0002288567



Ms Joyce Stewart

USPS 20012 PM 1 2



Claims Adminstrator
P.O. Box 8036
Faribault, MN
55021-9436



# MEMORANDUM

To:     Claims Administrator
        Quixtar Settlement Exclusions/Objections
        PO Box 8035
        Faribault, MN 55021-9435

Date:  June 4, 2012

Re:     Pokorny v. Quixtar, Inc., No. C 07-00201 SC
        Claimant ID number 0001660975

While some Independent Business Owners (a.k.a. Distributors) may act in an unethical manner, we have never had any problems with the Amway (previously Quixtar) corporation, or our supplier of business support materials, the Yager Group. Both companies have always been fair in their pricing and dealings with us, which has been since 1995 when we became IBOs (distributors).

We object to this superfluous and inane lawsuit regarding pricing of goods and recruitment of IBOs in Quixtar/Amway and demand to be excluded from any further action.


Names:          John H. Sybert
                Christine D. Sybert

Address:

Phone:

John H. Sybert                              Christine D. Sybert

Ms Christine Sybert



REC'D JUN 1 4 2012

Claims Administrator
Quixtar Settlement Exclusions/Objections
PO Box 8035
Faribault, MN   55021-9435

55021943535

June 19, 2012

**FROM:**
Nancy L Vanerka &
Dorothy J Vanerka

███████████████████

**TO:**
Claims Administrator
P.O. Box 8035
Faribault, MN 55021-9455

**RE:** Lawsuit – "If You Were an Amway/Quixtar Distributor At Any Time Between January 1, 2003 and February 21, 2012, you could get benefits from a *Settlement*"

Exclude us from this lawsuit. We object to it.

Nancy L. Vanerka

Dorothy J. Vanerka

Vanerkas

19 JUN 2012 PM 8 L

Claims Administrator
P.O. Box 8035
Faribault, MN 55021-9455

REC'D JUN 21 2012

55021943535

1  Joseph Darrell Palmer (SBN 125147)
   Email: darrell.palmer@palmerlegalteam.com
2  Law Offices of Darrell Palmer PC
   603 North Highway 101, Ste A
3  Solana Beach, California 92075
   Telephone: (858) 792-5600
4  Facsimile: (858) 792-5655

5  Christopher A. Bandas (*Pro Hac Vice* Pending)
   Email: cbandas@bandaslawfirm.com
6  Bandas Law Firm, P.C.
   500 N. Shoreline Avenue, Suite 1020
7  Corpus Christi, TX 78401
   Telephone: (361) 698-5200
8  Facsimile: (361) 698-5222

9  Attorneys for Objectors Maria H. Wong and Maria E. Juarez

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14  Jeff Pokorny, Larry Blenn, and Kenneth Busiere,   )   Case No. 07-cv-0201 SC
    on behalf of themselves and those similarly        )
15  situated,                                          )   **OBJECTIONS OF MARIA H. WONG AND**
                                                       )   **MARIA E. JUAREZ TO PROPOSED**
16                                                     )   **SETTLEMENT AND NOTICE OF INTENT**
                    Plaintiffs,                        )   **TO APPEAR**
17                                                     )
    v.                                                 )
18                                                     )
                                                       )
19  Quixtar, Inc.                                      )   Date:  November 16, 2012
                                                       )   Time:  10:00 a.m.
20                  Defendant.                          )   Judge:  Hon. Samuel Conti
    ───────────────────────────────────────           )

21

22         COME NOW, MARIA H. WONG and MARIA E. JUAREZ ("Objectors") Class Member to this

23  action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class

24  Action Settlement, give notice of their counsel's intent to appear at the November 16, 2012, settlement

25  hearing, and request awards of an incentive fee for serving as unnamed class member objectors.

26  / / /

27

28

                                      1

## INTRODUCTION

CLASS MEMBERS MARIA H. WONG and MARIA E. JUAREZ, ("Objectors"), submit the following argument to the Court in support of their objections to the settlement of *Pokorny v. Quixtra, Inc.*, Case No. 07-cv-00201, currently pending before the Northern District of California, San Francisco division.  Objectors submit that they are class members.  Ms. Wong is a current Amway distributor or "IBO" and Ms. Juarez is a former IBO.  Their addresses and telephone numbers are listed at the conclusion of these objections.  Objectors respectfully submit the following:

## I.  SUMMARY OF OBJECTIONS

1.   The settlement terms are designed to deter claims by class members which makes the settlement unfair and unreasonable;

2.  The settlement which provides product instead of cash reimbursement benefits the Defendant, does not make the aggrieved class member whole, and does nothing to disgorge Defendant's ill-gotten profits;

3.  The incentive awards are unusually high;

4.  Counsel must disclose the intended *cy pres* recipient to the class prior to the fairness hearing, and should have prior to the objection deadline, such that class members are informed of the alleged benefit to the non-claimant class members;

5.  The attorneys' fee request is excessive, at over 30% of the common fund; AND

6.  Counsels' use of Judge Charles B. Renfrew's, Terry Goddard's, and the Honorable Weinstein's endorsement of the fee request in this matter is an improper use of attempt to sway the District Court' unbiased opinion and may not be included in the Court's calculation of fairness of the fee request

2

## II. <u>LEGAL AUTHORITY</u>

### a. <u>The District Court Must Police the Settlement of these Proceedings</u>

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998). The duty requires a review of substantive claims included in the agreement and an investigation into the manner in which fees of class counsel are to be paid and the dollar amount for such services. *Id.* The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. Id. This rule has been read as a requirement for the court to " 'independently and objectively analyze the <u>evidence</u> and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' " *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995). (emphasis added)

3

**b.  <u>The Settlement is Flawed Because the Requirements to Participate are Onerous.</u>**

The settlement agreement provides the following relief for former independent business owners of Quixtar ("IBOs"):

❖ Type 1: Registration Fee benefits – Former IBOs who paid the registration fee for one year only is eligible to receive $75 (retail) of free products from Quixtar.

❖ Type 2:  Business Support Materials ("BSM") – Former IBOs that spent at least $100 on BSM may be able to recover up to 20% of the verifiable expenses of these materials, up to a maximum of $2,000.  If the IBO earned <u>any</u> <u>money</u> from Quixtar, he/she is not eligible for the refund. Class members must provide documentation to prove these expenditures.

❖ Type 3:  "Special Hardship" Payment – Former IBOs may receive a payment of up to 20% of his losses, or $10,000, whichever is less if he: either lost $10,000 from operating the Quixtar business or if his Quixtar business caused him to file for bankruptcy.  Class members must provide documentation to prove this special hardship.

The problems with these different levels of relief are plenary:

<u>Type 1</u>:  There is no rational reason why these aggrieved consumers could not be reimbursed with cash.  Instead, Defendant is able to reimburse these class members by aging inventory of, in many cases, perishable items.  This is a benefit to Defendant because Defendant is able to move inventory off of its books at the retail price before it is aged.  Further, Defendant is not disgorged any ill-gotten profits from their wrongful acts.

4

<u>Type 2:</u>  The class member is required to provide documentary evidence of these losses.  (Notice ¶ 9.) (Stlmt., § 6.1.1, 6.1.2(g).)  The problem in providing such evidence is clear.  The class period in this case runs from 2004 to 2012.  Many of these class members that suffered actual losses will not have retained receipts or old credit card statements proving their losses.  This hurdle will undoubtedly result in a lower participation rate by potential class members.  More importantly, once a Type 2 class member does submit a claim and documentary proof, Defendant is permitted to utilize the class member's 1099 documents to verify that no income was made from each class member's Quixtar business.  If any money was made at all, the class member under Type 2 is unable to recover.  The settlement agreement states that the 1099 will only be reviewed with the class member's permission.  (Stlmt., § 6.1.6.)  However, it seems likely that many class members would refuse to have such a sensitive and personal document reviewed by total strangers for only a small reimbursement of one's losses.  Furthermore, payments reported on a form 1099 have nothing to do with whether the class member made a "profit."  Only a Schedule C would reveal a profit.  So not only is the 1099 not useful, but it will act as a deterrent to would-be claimants.

<u>Type 3:</u>  To make a claim under this tranche, a class member must provide personal and sensitive documentation regarding the financial hardship suffered by him as a result of his enrollment as an IBO. To the extent a class member is inclined to share this information, the class period extends back to 2004, and much of this documentation is likely destroyed or lost.  It is probable the claims for this will also be quite low, given the difficulty of making such a claim.

/ / /

**c.   <u>There is No Rational Reason to Differentiate Between Current and Former IBOs.</u>**

The monetary and in-kind relief of this settlement belongs exclusively to former IBOs. However, it is probable that there are current IBOs that have the same complaints as those former IBOs and have just not completed the act of ending their relationship with Defendant.  These current IBOs would certainly have documentation to prove losses as their claims would have happened more recently. There is no reason not to offer the relief to these class members as well, instead of providing them only with future relief vis a vis changes in Defendant's business practices.  For those current IBOs who intend to cease being a distributor, there is no relief whatsoever.

**d.   <u>The Failure to Disclose the Cy Pres Recipient Does Not Comport with Ninth Circuit Precedent.</u>**

At the time of writing this objection, the class has not been informed where the donation of *cy pres* monies and goods will be donated.  The settlement agreement reads "[a]ny remaining amounts of the Cash Fund, after all approved claims and expenses are paid, shall be distributed by the Court, with input from Quixtar and Plaintiffs, for the benefit of the class or as *cy pres*."  (Stlmt, 6.1.5.)   Like the cash fund, the product fund shall also be disseminated in the same manner, "so as to benefit the class of former IBOs or as *cy pres* to an appropriate charity", after all claims are made. (Stlmt, § 6.2.4.)  There is absolutely no indication of where these donations will go and simply suggesting a "charity" demonstrates that little thought has been aimed at nominating recipients (there's no requirement it be a charity) who will provide an direct or indirect benefit to the non-claimant class members related to the allegations set forth in the complaint.

/ / /

6

_The purpose of cy pres_.

The doctrine of *cy pres* originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons. *In Re Wells Fargo Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998). However, a court cannot direct excess funds to any seemingly worthwhile recipient. Instead, the funds must be used in such a way that best serve the original intent of the settlor or testator. *Id.* at 1195. This idea was translated for use in the context of class actions when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be impractical." *Id.* Courts within this Circuit have warned, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class members or "others similarly situated, e.g. *future class members* who engage in future transactions of the type involved in the class litigation." *Id* at 1195.

This proposed settlement fails under this doctrine. As evidenced by the non-revertible fund of millions of dollars of cash and product, distribution to the class is not impractical. Furthermore, the only relationship between this lawsuit and donations of these funds and products to unnamed charities is the source of the donation. This proposed distribution is an abuse of the *cy pres* doctrine and inadequately compensates the injured party – the class.

1.  _The Use of the Cy Pres Doctrine Must be Strictly Construed or Final Approval Will be Reversed._

The Ninth Circuit recently had cause to review the application of the *cy pres* doctrine in *Dennis v. Kellogg Co.*, 2012 WL 2870128 (9th Cir., July 13, 2012.) In its opinion, the Ninth Circuit warned against the dangers of the improper use of the cy pres doctrine:

7

Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." Nachshin, 663 F.3d at 1038. A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," *Id*. at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers*, 904 F.2d at 1308. Thus, in addition to asking "whether the class settlement, taken as a whole, is fair, reasonable, and adequate to all concerned," we must also determine "whether the distribution of the approved class settlement complies with our standards governing *cy pres* awards." *Nachshin*, 663 F.3d at 1040 (internal quotation marks omitted).

*Id.* at *4.

This Circuit has made clear that the *cy pres* donation must be closely tied to the interests of the class members. The specific charity must be identified and analyzed by the Court prior to the final fairness hearing. *Id.* at *6. Courts must carefully scrutinize the entirety of the settlement before granting approval, "paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations.' *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)." *Id.* The Ninth Circuit in Kellogg warned that failure to disclose the *cy pres* recipient forecloses the district court from undertaking the searching inquiry required of it. *Id.* Because the settlement must either stand or fall based on the entirety of the settlement provisions, counsel's failure to disclose the intended *cy pres* beneficiary means this settlement cannot be approved.

e. **The Fee Request is Excessive and Accounts for over 30% of the Fund.**

In the Ninth Circuit, either the percentage of the fund or lodestar method may be adopted to calculate attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which method is chosen, the most important inquiry is whether the end result is favorable for the class. *Powers v. Eichen*, 229 F. 3d 1249, 1256 (9th Cir. 2000). "The most critical factor is the degree of success obtained." *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983).

8

1            *1.   The Results Achieved and Fund Amount Are Exaggerated*

2           Class Counsel's request for a lodestar multiplier of 2.29 is unfounded and the attorneys' attempt

3   to pull the wool over the eyes of their client and the Court cannot be rewarded.  This proposed

4   settlement is not as large as class counsel makes it to be.  Adding insult to injury, a large portion of it

5   will be granted to some as yet unnamed beneficiary – not the class.  The Court must make a detailed

6   inquiry into the actual benefit the class will receive before granting approval of this fee request or the

7   settlement.

8

9           The actual benefit this settlement provides is the amount that it will cost the Defendant to create

10  it.  Counsel argues that the "retail" value of the products, $17 million, should be used in the Court's

11  calculation of the fund.  But this argument is flawed for several reasons.  One, Plaintiffs' own

12  allegations state that Defendant's product prices were inflated by 20%.  (Motion for Fees, p. 12.)

13  Secondly, the value of the fund should be calculated according to the cost borne by the Defendant – the

14  actual net value of the products which comprise the fund.     Assuming a 20% reduction in the value of

15  the product, although it should perhaps be more, the fund could be more closely calculated at $47

16  million.[1]  Using that number, counsel's fee request amounts to 31.9% of the fund; significantly higher

17  than this Circuit's benchmark.

18

19            *2.   A 30% Fee For Consumer Class Actions Is Not the Norm in this Circuit*

20          This Circuit has established 25% as the benchmark fee for common fund cases.  *Powers v.*

21  *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000.)  However, 25% is only the starting point of the analysis.

22

23

24

25

26

27  _____

28  [1] As stated previously, use of the "products" as part of the calculation of the fund should be taken in its proper context.  The
    products provided by Defendant are aging inventory, and rapidly losing their value to Defendant.  LOOK UP EXTENZE RE:
    VALUE OF PRODUCTS…

The fee must be adjusted to reflect the specific circumstances of each individual case. *In re Ventro Corporation Securities Litigation*, 226 F. App'x 711, 711 (9th Cir. 2007.)

Class Counsel attempts to liken this case to a line of cases that have established 25% as a "benchmark" for reasonable fees in a common fund. In reality, this "benchmark" is a legal fiction and this Court should give no weight to any proffered benchmark, especially when it has no correlation to how the class is benefitted. This flawed approach creates arbitrary results and is inconsistent with the notion that "a fee award should be assessed based on scrutiny of the unique circumstances of each case, and "a jealous regard to the rights of those who are interested in the fund."" *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53 (2d Cir. 2000). (Holding that a deviation from the 25% "benchmark" embraced by class counsel to 4% was not an abuse of discretion); *See also In re Infospace Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004) ("There is nothing inherently reasonable about a 25 percent recovery, and the courts applying this method have failed to explain the basis for the idea that a benchmark fee of 25 percent is logical or reasonable."); *Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 129 (9th Cir.1994) ("WPPSSS") ("[T]here is no necessary correlation between any particular percentage and a reasonable fee.").

Class counsel further argues that this very District Court held that the benchmark is NOT 25% as Ninth Circuit jurisprudence dictates but is, rather, 30% of the common fund. (Motion for Fees, p. 6, lns. 19-23, citing *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 1989.) However, counsel takes this suggestion out of context from this Court's opinion. In *Omnivision*, this Court was comparing "similar cases" to the one pending before it; namely, securities fraud class actions. *Id.* at 1047. ("'The

median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions.' *In re Ikon Office Solutions*, 194 F.R.D. 166, 194 (E.D. Pa, 2000.)" *Id.* at 1047-8.

Furthermore, this Court's *Omnivision* opinion predates the Ninth Circuit's clear directive regarding its 25% benchmark in 2000. *Powers v. Eichen*, 229 F.3d at 1256. Class counsel's effort to misstate Ninth Circuit jurisprudence in order to suit its own purposes is not well-taken and should be viewed with scrutiny. Granting 30 or even 25% would be excessive given the results here, the identified problems with the settlement, and the inability to calculate the actual value to the class. To do so would unfairly put this settlement on the same grounds as other hard fought and beneficial settlements.

f.   **Submission of an Opinion by a Mediator is Grossly Improper.**

Nothing can sway the District Court's independent analysis as the fiduciary of the class in its fairness determination of the settlement and fee request. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir.2004.) Lead counsel has provided "expert" and mediator opinions regarding the fairness of the settlement and fee request. But these individuals are being compensated by counsel and, as such, will naturally provide an analysis certain to be favorable to class counsels' Motion. Even in light of these improper declarations in support, the District Court must still make an independent inquiry and should not rely on these biased, third-party opinions.

An objection is further made to these declarations to the extent they violate the Federal Rules of Evidence. First, these statements are inadmissible because they constitute inadmissible hearsay, lack foundation, are argumentative, and attempt to proffer lay or expert opinion without foundation. More importantly, these statements are absolutely not admissible as evidence. Federal Rule of Evidence 408 states:

Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

(2) *conduct or a statement made during compromise negotiations about the claim*.

Fed. R. Evid. 408 (emphasis added.)

Accordingly, statements made by the mediators or anyone else about the mediation are absolutely not admissible for any purpose.

Furthermore, neither the class nor the Court has had the opportunity to vet the opinions of these persons, nor has class counsel designated them as their experts. As such, the opinions of Renfrew, Weinstein, and Goddard must be disregarded or, in the alternative, these individuals should be produced at the final approval hearing for examination by the court, parties, and objectors. The court is required to consider only competent admissible evidence in carrying out its fiduciary review of the settlement and fee request. (See evidentiary objections, attached hereto.)

g. **The Incentive Awards Are Excessive.**

The requested incentive awards for the various class representatives are excessive especially when viewed in light of the likely recovery of the unnamed class members from this settlement. While the Plaintiff's go to great pains to cite a handful of cases which would support such an outrageous request, they fail to differentiate themselves from the majority of class representatives that have performed substantially similar duties and sought only $1,000.00 to $5,000.00 for an incentive award.

Incentive awards are approved by the Court only if found reasonable and fair given a review of the Class Representatives' involvement and the nature of the case. See *In re Lease Oil Antitrust Litig.*,

12

186 F.R.D. 403, 449 (S.D.Texas 1999) (incentive awards ranged from $750 to $10,000); *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 277 (S.D.Ohio 1997) (declining to approve proposed incentive award of $25,000; appointing Settlement Master/Trustee to determine appropriate award); *Green v. Battery Park City Auth., 44 Fair Empl. Prac. Cas. (BNA)* 623, 627 (S.D.N.Y.1987) (approving incentive award of $4,000); *Women's Comm. for Equal Employment Opportunity v. National Broad. Co.,* 76 F.R.D. 173, 180 (S.D.N.Y.1977) (approving incentive awards beginning as low as $336).

According to one scholastic study, the average incentive award payment for consumer class actions ranges between $1,000 and $5,000. See, Sherrie R. Savett, et al., *"Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs,"* 936 PLI/Corp. 321 at 340 (1996) (citing fifty-two cases involving incentive awards payments and noting that the normal range of such awards is $1,000 to $5,000).

In this case, Class Representatives seek an astounding $20,000 per lead plaintiff, which totals $60,000. To support this request, counsel claims that each class representative has spent in the range of 250 hours each. This is far in excess of what is ordinarily awarded for a lead plaintiff's work on such matters. Thus, while an incentive award is justified in this case, it should not be granted at the value that is currently requested. This deprives the remainder of the Class Members a significant sum that would otherwise be reserved for their benefit and would constitute a significant windfall for each of Lead Plaintiffs. Objectors request that the Court inquire into the time purportedly spent by these plaintiffs and reduce their award to a more reasonable sum.

h. **These Objectors Intend to Take Discovery**.

Important issues need be resolved regarding this settlement. Objectors intend to seek leave from the Court to request discovery regarding some of the problems identified in this objection.

13

1

2

i. **Joinder in Other Objections**

3

This Objector adopts and joins all other well pled, bona fide objections filed by other class

4

members in this case, and incorporates them by reference as if they appeared in full herein.

5

j. **Request for Attorneys' Fees**

6

7

Based on the above arguments and their benefit to the Court's analysis of reasonableness of this

8

settlement, these Objectors wish to reserve the right to apply for reasonable and appropriate

9

compensation for the valuable services which have been provided by this objection.

10

**III.** **CONCLUSION**

11

12

For the foregoing reasons and all others presented at oral argument, Objectors respectfully

13

request that the Court grant the following relief:

14

A. Upon proper hearing, sustain these Objections;

15

16

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections

17

and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed

18

settlement and fee request;

19

C. Award an incentive fee to these Objectors for their service in improving the fairness of the

20

settlement, and award a reasonable attorneys' fee to their attorney.

21

LAW OFFICES OF DARRELL PALMER PC

22

23

Dated:   August 17, 2012                    By: /s/ Joseph Darrell Palmer_____

24

Joseph Darrell Palmer

25

Attorney for Objectors Maria H. Wong and Maria E. Juarez

26

27

28

14

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2012, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system.

Service on participants in the case who are registered CM/ECF users will be accomplished by the USDC CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid:

Maryann Diaz
Gary Williams Parenti Finney Lewis McManus Watson & Sperando
221 East Osceola Street
Stuart, FL 34994

Julie L. Leichtman
Brinks Hofer Gilson & Lione
455 N. Cityfront Plaza Drive
Chicago, IL 60611

_____/s/ Joseph Darrell Palmer_____
Joseph Darrell Palmer
Attorney for Objectors

15



RECEIVED
AUG 2 0 2012
LEGAL DIVISION

August 14, 2012

To Whom It May Concern:

Please totally EXCLUDE us from the Pokorny V./ Quixtar Inc. lawsuit, case #CO7-00201SC.  They are suing the wrong party and it is shameful.  We want no part of it.

Paul and Nancy Wegeman

Claimant ID #195911

Love from,
Nancy S. Wegeman
Nancy S. Wegeman                    Alvin Paul Wegeman



Ms. Nancy S. Wegeman



Rich De Vos
c/o Amway Corporation
7575 E. Fulton Rd.
Ada, Michigan 49301