

THE RESOLUTION EXPERTS®

March 5, 2013

Hon. Samuel Conti
United States Courthouse
450 Golden Gate Ave.
San Francisco, CA 94102

    Re:    **Jeff Pokorny, et al. vs. Quixtar, Inc., et al.**
              Case No. C 07-00201 SC

Dear Judge Conti:

    I am attaching two letters which will bring you up to date on what we've done since my appointment as Special Master in this matter. In short, a second notice was sent to the Hardship claimants who did not provide adequate documentation the first time around. The deadline for providing this information is March 15, 2013.

    Hence, while I have already undertaken some preliminary work, and we have things set up for final evaluation of these claims, it is difficult to formulate a final fee proposal, because we have no idea how many claims with adequate documentation will be submitted.

    Accordingly, I have proposed an interim fee arrangement, and am requesting that you approve it. We propose a retainer for the Special Master up to 15 hours at the $600 per hour rate plus JAMS administrative fees of $900 per our standard fee schedule. This amount will cover work already accomplished – including review of pertinent documents and correspondence, communications and conferences with counsel, formalizing criteria for evaluation of claims, and setting up the necessary database and programs for collecting, comparing, and evaluating information and documents obtained from claimants. In addition, Mr. David Agretelis will be employed at a rate of $150 an hour, to conduct an initial review of all the claims and prepare a comprehensive spreadsheet which will ensure a consistent and complete evaluation of all the claims. David's assistance will help keep expenses down.

    In their letter dated February 22, also enclosed, counsel have agreed to this proposal.

If this preliminary arrangement is acceptable to the Court, please sign below the "It Is So Ordered" byline, or substitute your own order.

Thank you. Feel free to call me if you have any questions.

Sincerely,

Hon. James Larson (Ret.)

IT IS SO ORDERED.

Date: 3/12/13

Hon. Samuel Conti

February 8, 2013

Stuart H. Singer, Esq.
Boies Schiller & Flexner LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

Cedric C. Chao, Esq.
Morrison & Foerster, LLP
425 Market St., 32nd Floor
San Francisco, CA 94105

      **Re:**    **Jeff Pokorny, et al. vs. Quixtar, Inc., et al.**
                Case No. C 07-00201 SC
                JAMS Reference No. 1100072424

Gentlemen:

This letter includes a progress report and preliminary proposal for fees payable for evaluation and payment of special hardship claims pursuant to the Amended Settlement Agreement in the above-entitled case and the Modification of the Order Appointing Special Master.

The undersigned met with counsel for the respective parties on January 18, 2013. The attorneys briefed the Special Master regarding the terms of the Settlement Agreement and explained what had been done and what remained to be done with respect to the special hardship class of claimants.

Thereafter, counsel arranged for direct communications between the Special Master and the claims administrator, Rust Consulting, thanks to Bill Dzurilla.

JAMS has now secured access to the database of the claims administrator, which is in the process of uploading all of the Section IV claims that have been submitted thus far.

At first it appeared that of the 5,940 such claims made, only approximately 250 had been supported with any documentation. Only 150 had been uploaded thus far.

1

As counsel are aware, because of the sparse response and the lack of supporting documentation, a second letter was mailed to all Section IV claimants, requesting adequate documentation, with a deadline of March 15, 2013.

Recently we learned from the claims administrator that a total of 1,286 Section IV claims were submitted with some documentation. Utilizing some method which has not been determined by the Special Master, 237 claims were classified as valid, with 51 left to review.

The Special Master has reviewed eight sample claims with mixed results. Two or three appear to be valid, and the rest need more information.

I have conferred with two colleagues in the JAMS office who have extensive experience in post-settlement adjudication and payment of claims submitted pursuant to settlement of a large class action. They mentioned various approaches to setting fees in such matters with an eye toward minimizing depletion of the fund, and setting up a fair and efficient process for evaluating and paying claims.

Since the deadline for responding to the second letter from the claims administrator requesting documentation has not yet been reached – the due date is March 15, 2013 – it is difficult, if not impossible, to estimate the total number of claims which will require review by the Special Master.

In addition, as we look over the documents previously submitted, a number of additional questions have arisen, which will require consultation between the Special Master and counsel. These include how to deal with joint claims made by couples or business entities consisting of more than one person, how much additional outreach will be *necessary to confirm or reject* some claims, whether or not appeals will be permitted, and how they will be adjudicated and so on. At this point, we are unable to draft a final work proposal and budget. We have identified a skilled and experienced assistant, Mr. David Agretelis, who will conduct an initial review of all of the claims and prepare a comprehensive spreadsheet which will ensure a consistent and complete evaluation of all of the claims. His hourly rate is $150.

I believe that when we know how many claims we will be reviewing, and what process the claims administrator utilized to accept or reject some of the claims which it has reviewed thus far, we should be able to propose a flat fee or fee per final adjudication by the Special Master. This should result in a considerable cost savings to the fund.

In the meantime, before the closing date of March 15, and in light of the need for preliminary administrative work and preparation for the separate review of each claim, we propose that counsel authorize a retainer for the Special Master up to 15 hours at $600 per hour plus JAMS

administrative fees of $900 per the attached fee schedule. This amount will cover work already accomplished – including review of pertinent documents and correspondence, communications and conferences with counsel, formalizing criteria for evaluation of claims, and setting up the necessary database and programs for collecting, comparing and evaluating information and documents obtained from claimants. I propose to employ Mr. Agretelis as our para-professional at the rate of $150 per hour.

Please let me know if this interim proposal is agreeable.

Thank you.

Sincerely,


Hon. James Larson (Ret.)
Special Master

Pokorny v. Quixtar

February 22, 2013

Dear Special Master Larson,

  Thank you for your letter dated February 8. We agree that it would be preferable to wait until after the deadline to hear your final fee proposal, and look forward to receiving your alternative proposals of a flat fee, a fee per final adjudication, and an hourly rate basis. We agree with your interim proposal, subject to Court approval. It does appear at this time that the number of claims you will need to adjudicate will be far less than the 6,000 initially indicated.

  Under Section 6.1.2 of the Amended Settlement Agreement ("ASA") and the approved Claim Form, hardship claimants were required to check one of two boxes on Section IV of the Claim Form (one for bankruptcy, the other for losses in excess of $10,000) and to submit to Rust three things: 1) a detailed statement showing how and why the claimant's involvement in Quixtar caused him/her to lose over $10,000 or to file for personal bankruptcy, 2) documentary proof of the claimed loss, such as a copy of a tax return or bankruptcy filing, and 3) documents showing the amount of the loss.

  According to Rust, there were about 5,940 claimants who checked one of the hardship boxes. However, only 1,286 of these claimants submitted any documentation at all in support of their claims, and less than 250 submitted documents in each of the three required categories. Rust was asked to send the follow-up letter to all but the 250 who submitted documents in each category. Rust was instructed not to assess the adequacy or validity of the submitted documents (as that is a task for the Special Master); Rust's role is only to determine if at least one document in each of the three required categories has been submitted.

  Rust has advised that, as of now, there has been very little response to the follow-up letter. It is of course possible that there will be a last minute wave of responses prior to the March 15 deadline, but at this time it appears that there may be less than 500 claims with all required documents.

  This leads to the question of what to do about claims that do not have all required documents. That is a matter for the Special Master's discretion. Under ASA 6.1.2(d), the Special Master is empowered to "review the documentation provided in support of the special hardship claim and request such additional documentation or information as is required." Thus, although each claimant has already received two notices, the Special Master could opt to make an additional request to some or all of the claimants who have not adequately documented their claims. For example, the Special Master could summarily recommend denial of all claims where

Special Master Larson
February 22, 2013
Page 2

no documentation at all has been submitted and request additional information from claimants whose partial documentation suggests a reasonable possibility of a meritorious claim.

If Rust has suggested to you that only 237 claims are "valid," that is somewhat of a misnomer. It is the Special Master who will decide whether a claim is valid or not. Our understanding is that, when Rust says a claim is "valid," it means that at least one document in each of the three required categories was submitted.

To directly answer the questions posed on page 2 of your letter:

- Most of the IBOs are couples and operate as a single entity. Thus, joint claims by couples or business entities should each be treated as a single claim, if the entity has a single IBO number and is classified by Quixtar as a single IBO.

- As mentioned above, how much outreach should be conducted to confirm or reject a claim is a matter for the Special Master's discretion.

- If the Special Master recommends rejection of a claim in whole or in part, the claimant does have the right to appeal to the District Court. The Court would adjudicate objections to the recommendation on a de novo basis.

Attached for your consideration is a form spread sheet template, with a few hypothetical examples included. You may wish to consider using this or something similar for the preparation of your report. In Excel format, all of the basic data could be imported from Rust's data base. Regardless of whether you choose to use this format, we suggest that, in light of cost considerations, a full narrative report with respect to each claim may not be necessary, although we welcome your thoughts in this regard.

Please feel free to contact us if you have any additional questions or would like additional information.

Sincerely,

Stuart H. Singer
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011

Cedric C. Chao
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7061

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

| Claimant Name | Claim Number | IBO Number | Amount of Loss Claimed | Amount of Loss Proven | Section III Award | Recommended Award (Proven Loss x 20%, Minus Section III Award) | Comments |
|---|---|---|---|---|---|---|---|
| John Doe | 1 | 7655 | $20,000 | $18,000 | $500 | $3,100 | Insufficient evidence that $2000 computer was loss due to claimant's involvement with Quixtar. |
| Joe Smith | 2 | 4431 | $50,000 | $50,000 | $200 | $9,800 | Ample evidence to support claim. |
| Robert Jones | 3 | 8977 | $40,000 | $40,000 | $2,000 | $6,000 | Ample evidence to support claim. |
| Edward & Kathy Roe | 4 | 3986 | $18,000 | $10,000 | $875 | $1,125 | Insufficient evidence of claimed $8,000 for mental distress due to claimants' involvement with Quixtar. No medical records submitted. |

| Claimant Name | Claim Number | IBO Number | Amount of Loss Claimed | Amount of Loss Proven | Section III Award | Recommended Award (Proven Loss x 20%, Minus Section III Award) | Comments |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

2