

May 23, 2013

<u>VIA EMAIL AND MAIL</u>

Hon. Samuel Conti
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
SCpo@cand.uscourts.gov

Re:     <u>**Jeff Pokorny, et al. vs. Quixtar, Inc., et al.**</u>
        Case No. C 07-00201 SC

Dear Judge Conti:

I am enclosing our fee proposal in the above-referenced matter.  It has been approved by both Plaintiffs' and Defense counsel.  Please look it over and let us know if you have any proposed changes or corrections.  If not, please endorse and return.

I will be on vacation May 24 – June 10, 2013, but you can make inquiries of my Case Manager in this matter, Heather Muirhead, at JAMS at 415-774-2613.

If we can turn this around right away, my assistant, David Agretelis, can get the database set up while I am gone, and we can commence work right away when I return.

Thank you and regards,

                        Sincerely,

                        *dictated but not read*

                        Hon. James Larson (Ret.)

IT IS SO ORDERED.

Date: May 29, 2013

                        Hon. Samuel Conti

Enclosure

cc:     (via email only and with enclosure)
        Stuart Singer
        William Stern

TWO EMBARCADERO CENTER   SUITE 1500   SAN FRANCISCO, CA 94111   TEL 415-982-5267   FAX 415-982-5287



THE RESOLUTION EXPERTS®

May 17, 2013

Stuart H. Singer, Esq.
Boies Schiller & Flexner LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

William L. Stern, Esq.
Morrison & Foerster, LLP
425 Market St., 32nd Floor
San Francisco, CA 94105

      Re:    **Jeff Pokorny, et al. vs. Quixtar, Inc., et al.**
               Case No. C 07-00201 SC
               JAMS Reference No. 1100072424

Gentlemen:

Following our telephone conference of May 2, 2013 and some additional groundwork, we are herewith proposing our fee arrangement for evaluation and payment of the section IV hardship claims.

As you know, we have approximately 1,900 files, which amount to approximately 1,500 separate claims. Many claims have extensive attachments, consisting of 150 to 300 or more pages. The average number of pages in the 100 or so files which we have reviewed to date is approximately 70.

As documented in some more detail in Attachment A, only a few hundred documents have been reviewed by RUST. Many variations in the quantity and quality of the documents submitted in support of the claims make it difficult to predict exactly how much time will be necessary to evaluate each claim, and whether or not we must attempt to obtain additional information from some of the claimants.

As reported at our May 2 conference, we have determined that it will be necessary to set up a separate database, so that all of the material may be collected and posted in a uniform format and made accessible to more than one user. We previously estimated that the cost of such a database would be approximately $15,000. Further investigation and discussions with some of the sub-contractors which we will utilize indicates that we omitted the cost of "hosting" the database for

1

approximately six months and that further complications may arise in downloading the information from RUST. Hence the total cost will more likely be in the neighborhood of $21,000 or more. We are including a request for immediate deposit of $25,000 to get this work underway. It will take approximately 30 days or so to complete the process, after which we can begin evaluating the individual claims.

Our plan is for Mr. Agretelis, who specializes in the computer end of the process, to make the initial review of all of the claims, in order to make a rough cut consisting of obviously verified claims, that is, those which include a sufficient explanation of the claimant's work for the company and documentation of losses. Following this review and tabulation, I, as Special Master, will review the data and the remainder of claims, estimated at approximately 40%, based on our sample. As indicated above, some additional information may become necessary. We will enlist the RUST people to handle the correspondence. At least three reviews will be necessary for a large number of claims.

We will also handle all necessary correspondence with the attorneys, the administrator, and the Court through final approval of the distribution of this portion of the settlement fund. This will include any necessary application to the Court for increase in the amount of this portion of the settlement fund or apportionment of the claims to fit within the designated amount.

At our meeting on May 2, we discussed the deduction of the BSM fees, which we believe have been documented by RUST. In our fee request we are not including any substantial devotion of our time to this calculation. Mr. Singer also mentioned that their office has a paralegal who might also provide some assistance in this regard.

Accordingly, based on our evaluation of the types and volume of data submitted by claimants to the RUST Group in support of hardship claims (See Attachment A), we propose to complete the tasks outlined in the Amended Class Action Settlement Agreement under Section 6.1.2 for a flat fee of $300,000 plus $25,000 for the database.

The $25,000 is a fixed cost associated with the design, development, deployment and maintenance of a secure web-based repository and database for evaluating and cataloging all hardship claims. This web-based solution will allow users in multiple physical locations to access, review and edit claims simultaneously and securely.

The remainder of the fee works out to approximately $200 per claim, which is based on the average time to review available documents during our sample survey of approximately 100 claims. As noted, there are many variations in the quantity and quality of documents, and some follow-up will be necessary. Several cumulative reviews will be required to complete the process. In addition, correspondence with counsel and the Court, as well as the administrator

will likely be necessary. The flat fee takes into account all of these – and perhaps some unknown – factors, simplifies the task of allocating this portion of the costs of administration and eliminates the open-ended uncertainty of billing by the hour at "normal" rates.

We propose to commence the work upon receipt of a deposit of one half of the fee ($150,000) plus $25,000 for web application development (total: $175,000). The balance is, therefore, $150,000, which will be due upon completion of the project. Alternatively, it may ease the administration process to forward the entire amount in advance. Your choice.

We can commence work on the database development immediately upon receipt of the deposit. We expect to have a functional application within 30 to 45 days from commencement and expect to complete the allocation within six to eight months thereafter. The sooner we can start the database, after receiving the $25,000 allocation, the better to honor this schedule. Therefore, if you can commit to this amount immediately, and submit the $25,000 by May 31, it will expedite matters.

Please let us know if you have any questions or comments. After we complete this agreement, I will submit it to the Court for approval by Judge Conti.

Thank you.

Very Truly Yours,

Hon. James Larson (Ret.)
Special Master

**ATTACHMENT A**
**JAMS, ADR/Agretelis Consulting, LLC**
**QUIXSTAR HARDSHIP CLAIMS**
**PRELIMINARY REVIEW SYNOPIS**
**Revised 5/7/2013**

1. Type and Nature of Documents:
   a. 90 Claims reviewed of 1500 total.
   b. 1900 plus documents uploaded By RUST Consulting. Some claims have multiple documents.
   c. Total volume of documents 6GB.
   d. Many of the claims have 150-300 or more pages attached, the average number of pages in the those reviewed was 70.
2. Document Review Observations
   a. Document Types
      i. Typed or handwritten narratives occasionally containing summary of total loss figures.
      ii. In many cases IRS forms 1040, 1090, Schedule C and other tax documents.
      iii. Various other receipts, bank statements, vouchers, etc.
   b. Document Review
      i. Best case scenario, documents contain summary and total of losses over course of years as well as Schedule C's to support.
      ii. Middle case scenario I, documents contain no summary data, but contain Schedule C's and/or 1040s to support.
      iii. Middle case scenario II, documents may contain summary data or not, and data to support, but no 1040 or Schedule C.
      iv. Worst case scenario, documents contain no summary data and questionable data to support.
   c. Review Time
      i. Review can take 5-15 minutes per claim or more if manual accounting of losses is required and hundreds of pages must be reviewed and totaled.
      ii. Roughly 30-40% of the claims may require subjective analysis by the Special Master.
      iii. An unknown percentage of claims may require further contact with claimants to obtain additional data.
3. Preliminary Allocation Estimates
      i. Per MSA, allocations were based on 20% of the claimed and/or confirmed amount not to exceed $10K.
      ii. Total amounts claimed ranged from $7,000 to over $100,000.
      iii. Total amounts allocated ranged from $1,500 to the $10K cap.
      iv. Average per claim allocation is approximately $4,800.
      v. Total allocation for 1500 claims at $4,800 would be approximately $7.2M.
      vi. Pro rata reduction of 30% would result in average claim of $3,360 and overall allocation of $5.04M

## Agretelis Consulting, LLC
1700 Shattuck Ave #46
Berkeley, CA 94709
(510) 444-1526

May 9, 2011
Invoice No. 401

Hon. James Larson, (Ret.)
JAMS
Two Embarcadero, 15th Floor
San Francisco, CA 94111

Re: Quixtar Hardship Settlement Administration – Online Web Application and Hosting

## INVOICE

| Date | Description | Amount |
|------|-------------|--------|
| 5/9/2013 | Design, Development, Implementation and Maintenance of Online Quixtar Hardship Settlement Application.<br><br>Fee includes one year contract Hosting of Online Application Offsite on Secure Dedicated Server with Backup Solution.<br><br><br><br>Thank You | $ 25,000 |

**Total Amount Due:**          **$25,000**

Please Make Check Payable to:
Agretelis Consulting, LLC

TIN: 20-8582278