David Boies, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone:  (914) 749-8200
Facsimile:   (914) 749-8300
E-mail:  dboies@bsfllp.com

Stuart H. Singer, Esq. (*Pro Hac Vice*)
Carlos M. Sires, Esq. (*Pro Hac Vice*)
Sigrid S. McCawley, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
E-mail: ssinger@bsfllp.com
E-mail: csires@bsfllp.com
E-mail: smccawley@bsfllp.com

Willie E. Gary, Esq. (*Pro Hac Vice*)
GARY, WILLIAMS, PARENTI,
WATSON & GARY, P.L.
221 East Osceola Street
Stuart, Florida 34994
Telephone:  (772) 283-8260
Facsimile:   (772) 220-3343
E-mail:  weg@williegary.com

*Attorneys for Plaintiffs*

*Attorneys for Plaintiffs Jeff Pokorny, Larry Blenn and Kenneth Busiere*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Jeff Pokorny, Larry Blenn, and Kenneth Busiere, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Quixtar, Inc.,<br><br>Defendant. | CASE NO. C 07-0201 SC<br><br>**PLAINTIFFS' SUBMISSION TO THE COURT OF OBJECTIONS TO SPECIAL MASTER'S REPORT** |

Plaintiffs hereby submit the 28 objections to the Special Master's report and recommended hardship awards (DE 322) that have been filed by Section IV "special hardship" claimants (the "Objectors").  Pursuant to this Court's order appointing the Special Master (DE 252 ¶ 18), the Objectors are entitled to *de novo* review of their claims by the Court.

## **BACKGROUND**

The parties' Court-approved settlement agreement provided for a special hardship fund from which former Quixtar IBOs who are members of the Settlement Class could receive a cash

1

payment of 20% of their losses, up to a maximum of $10,000, if they could show that their recruitment into and operation of their Quixtar business (i) caused them to file for personal bankruptcy or (ii) caused a loss of at least $10,000 from operating their Quixtar business. The hardship claims were to be adjudicated in the first instance by a Court-appointed Special Master. DE 162-2 § 6.1.2. Losses had to be proven by a "Schedule C or other schedule from a federal tax return, schedules filed in connection with a bankruptcy filing, or comparably reliable documentation acceptable to the Special Master." *Id*. § 6.1.2(c).

After approving the settlement, the Court duly appointed former Magistrate Judge James Larson as Special Master. Over 5,900 filed a hardship claim. However, about 4,400 failed to submit any documents in support of their claims, despite repeated notice that documentation was required, and the Special Master summarily denied all of these claims. The Special Master adjudicated the remaining 1,500 or so hardship claims individually. After eliminating "duplicates and several fraudulent claims," the Special Master approved 1,213 claims and denied 224. DE 322 at 2. He then filed his report and recommendations on December 18, 2013 (DE 322). This Court approved the report and proposed appeal procedure by order dated January 3, 2014 (*id*.).

In response to the January 3 order, the Claims Administrator (Rust Consulting) has sent notices to the hardship claimants. The notices advised each hardship claimant whether his/her hardship claim had been approved or denied by the Special Master and the amount, if any, of the recommended award. The notices further advised claimants that, if they wished to object to the Special Master's recommendation regarding their claim, they should submit a written objection, with detailed reasons and evidence supporting the objection, by February 14, 2014. Declaration of Jason Stinehart ("Stinehart Decl.") ¶ 4.

In response to the notices, the Claims Administrator received 31 objections to the Special Master's recommended awards, three of which were subsequently withdrawn. Plaintiffs now submit the remaining 28 (including five which were filed untimely, Stinehart Decl. ¶ 10) to the Court for final determination. Copies of these 28 objections, along with the original documents previously submitted by each claimant and considered by the Special Master, are

attached as Exhibit A to the Declaration of Jason Stinehart, which is being filed contemporaneously herewith. An index to the 1,751 pages of documents contained in Stinehart Exhibit A is attached as Exhibit 1 to this brief.

In sending the notices, the Claims Administrator made an error of which the Court should be aware. A letter stating "As you did not submit any documents in support of your claim, Master Larson is recommending to the Court that you not be awarded any hardship payment" should have been sent only to the 4,400 claimants who did not submit any documents at all and whose claims were therefore denied summarily. However, due to a "coding error," some of the 224 claimants whose claims were individually reviewed and denied were sent the same "you did not submit any documents" letter, when in fact they had submitted documents, which the Special Master reviewed, although he ultimately denied the claim on its merits. Stinehart Decl. ¶ 6. Thus, some Objectors (e.g., Kim, Yacobo, M. Smith) correctly point out that the notice letter they received was erroneous in this respect.

I. **COMMENTS ON THE OBJECTIONS**

A. **The 1207 Hatfield Ct. Claimants**

As mentioned above, the Special Master noticed "several fraudulent claims" in the course of his review. He apparently was referencing the numerous claims from a single address – 1207 Hatfield Ct. in Abingdon, MD. The Claims Administrator has advised that over **2,000** claims were filed from this single address. Stinehart Decl. ¶ 7.[1] Eleven of these included hardship claims. Each of the hardship claims was nearly identical, except for names and amounts. The Special Master denied the hardship claims from the 1207 Hatfield address. Of the 29 total objections, ten (Mei, Yang, Dong, Huang, Yu, Wei, Chen, Liu, Qi, and Fan) are from this same 1207 Hatfield address. *See* Stinehart Decl. at Ex. A, Pgs. 1-938. Again, all are

---

[1] After the street address, some state "#G001," "#G007," etc., but according to Google maps the address is a single-family home. The ten objections from 1207 Hatfield Ct total 936 pages, which is more than half of the total pages in Stinehart Exhibit A.

CASE NO. C 07-0201 SC     PLAINTIFFS' SUBMISSION TO THE COURT OF OBJECTIONS TO SPECIAL MASTER'S REPORT

virtually identical, except for names and amounts.[2]  Plaintiffs do not know who is submitting these claims but they are patently dubious.

### B. Objectors Seeking Greater Than 20% of Claimed Losses

As noted above, successful hardship claimants are entitled to a cash payment of 20% of their losses, up to a maximum of $10,000.  DE 162-2 § 6.1.2.  Three Objectors received awards based on this formula but seek a higher amount.

Anthony D'Apolito claimed $13,000 in losses and was awarded the 20% maximum, for an award of $2,600.  He objects and asks that he be awarded $10,000.  See Stinehart Decl. at Ex. A, Pgs. 939-960.

The objection of Christine Mattos requests an increase of her award from $2,000 to $8,000.  She claims to have suffered a loss of $11,190.  If accepted in full, 20% of that amount is $2,238.  See Stinehart Decl. at Ex. A, Pgs. 1310-1448.

Steve and Rachel Morton claimed a loss of $18,376.39, and the Special Master awarded them almost a full 20% of this amount, a gross award of $3,625.  After the mandatory deduction of their $2,000 Section III payment, their net award is $1,625.  They have filed an untimely objection and request an increase of this amount.  See Stinehart Decl. at Ex. A, Pgs. 961-1065.

### C. Claimants Who Did Not Submit Tax or Bankruptcy Documents

As mentioned above, hardship claimants were obliged to submit "Schedule C or other schedule from a federal tax return, schedules filed in connection with a bankruptcy filing, or comparably reliable documentation acceptable to the Special Master."  DE 162-2 § 6.1.2(c).  Some objectors did not submit any tax schedules or bankruptcy documents, and the Special Master apparently was unconvinced that the documents they did submit were "comparably reliable" in nature.

---

[2] Just for example, each of the ten Hatfield Ct. objections attaches a purported Schedule C and states the following (*sic*): "Thankfully I borrowed money from my friends and paid back the credit card debts.  In the past 8 years, I have gone through a very hard time.  I am working day and night to pay back the money I borrowed from my families and friend.  Hopefully, *Pokorny v. Quixtar Class Action Settlement* can give me this opportunity to get some compensation, such that I can pay back my friends to keep the friendship running."

4
CASE NO. C 07-0201 SC    PLAINTIFFS' SUBMISSION TO THE COURT OF OBJECTIONS TO SPECIAL MASTER'S REPORT

Billy Smith (not to be confused with objector Mark Smith) did not allege bankruptcy and his submission does not include any tax schedules. He relies instead on affidavits from himself and two others. *See* Stinehart Decl. at Ex. A, Pgs. 1129-1181. The issue is whether this evidence (and similar self-generated documents relied on primarily or exclusively by many objectors) is "comparably reliable" to tax returns and bankruptcy court documents. DE 162-2 § 6.1.2(c).

Phillip Archer's objection and his prior submission to the Special Master state that he is on public aid and behind on bills because "the AMWAY global opportunity did not work out to my best interest." His supporting documents indicate he is being pursued by creditors, but none of the submitted documents mentions Quixtar or indicates that the losses and the bankruptcy were the result of involvement with Quixtar. He has not submitted any tax return schedules or bankruptcy documents. *See* Stinehart Decl. at Ex. A, Pgs. 1066-1086.

Faustino Yacobo's submission consisted of assorted business cards, copies of checks in his favor from Quixtar, his Quixtar IBO application, and a number of receipts and ticket stubs, apparently for Quixtar events. He does not allege that he filed for bankruptcy as the result of his Quixtar participation, no tax return was submitted, and the ticket stubs and other documents do not show a loss greater than $10,000. *See* Stinehart Decl. at Ex. A, Pgs. 1087-1128.

Emeka Anyalewe has also not submitted any tax or bankruptcy documents. Along with a handwritten narrative and some apparently irrelevant documents (such as Requests for Admission from a different court case), he has only submitted copies of a few Quixtar CDs and some store receipts totaling less than $10,000. *See* Stinehart Decl. at Ex. A, Pgs. 1182-1220.

Objector Martin Petro also has not submitted any tax or bankruptcy documents. He states that he discarded all of his Quixtar-related records. *See* Stinehart Decl. at Ex. A, Pgs. 1221-1230.

Objector Monique Jackson states she has "lost access" to her records and relies on a letter and her Social Security statement. She originally submitted a 2003 Schedule C, which showed a loss of $5,014, which is less than the $10,000 loss required for a hardship award. *See* Stinehart Decl. at Ex. A, Pgs. 1292-1309.

Bumjin Kim did submit documents but was erroneously sent a "failure to submit documents" notice letter. The Special Master reviewed his documents and denied his claim. Mr. Kim sent a letter, some receipts, federal Form 1040A tax returns for 2003 and 2004, and federal Form 1040 tax returns for 2005 and 2006. He did not submit a Schedule C with any of these returns. However, line 12 on both the 2005 and 2006 Form 1040 states a substantial business income gain, not a loss, for those years. *See* Stinehart Decl. at Ex. A, Pgs. 1231-1291.

### D. Documents Never Received

Two Objectors state that they have submitted documents or would do so, but the Claims Administrator advises that it never received any documents from them, apart from what is attached to the Stinehart Declaration.

Anthony and Julia Crabtree object on the grounds that their claim was denied even though they sent a "large package" of information and documents to the Claims Administrator. The Claims Administrator advises that it has no record of ever receiving any package from them. On March 3 (two weeks after the February 14 filing deadline), the Crabtrees faxed to Class Counsel several "profit and loss statements" and other documents (although no tax schedules or bankruptcy documents), which were all forwarded to the Claims Administrator and added to their file. *See* Stinehart Decl. ¶ 8; Ex. A, Pgs. 1449-1509. They requested additional time to submit further documentation of their losses. *Id.* at Pgs. 1453-1506. The Court has discretion to receive new evidence (DE 252 ¶ 19) if it wishes to do so.

Dean and Michelle Orr submitted an untimely objection stating that they would be "sending a box with receipts, order invoices, pictures and tax forms to support our case." The Claims Administrator advises that it did not receive any such box. *See* Stinehart Decl. ¶ 9; Ex. A, Pgs. 1510-1517. The Court has discretion to give or not give more time to the Orrs.

### E. Bankruptcy Discharge But Minimal Proof of Losses

Several claimants submitted a copy of a bankruptcy discharge but provided little or no other proof of the amount of their losses. The Special Master decided that claims with proof of bankruptcy but with inadequate proof of specific losses should be "allocated the minimum $2,000 on the assumption that filing for bankruptcy was predicated on well over $10,000 in

losses and debt." DE 322 at 2. Three of these claimants who were awarded $2,000 object and request an increased award.

Corrie Hemingway originally submitted to the Special Master a copy of his bankruptcy discharge but only minimal additional information. The Special Master awarded him $2,000, but his net hardship payment is zero after the mandatory deduction of his prior $2,000 Section III BSM payment. In his objection, Mr. Hemingway has submitted some additional documents, including a Schedule A from his 2003 and 2005 tax returns, which claim "Business Expenses" totaling $16,417, and 20% of this would be $3,283.40. The Court has discretion whether or not to consider this new evidence. Mr. Hemingway suggests that his award should be "more than double" of "whatever the maximum payment is." *See* Stinehart Decl. at Ex. A, Pgs. 1518-1536.

Jafe Parsons submitted to the Special Master a letter and a copy of a Chapter 7 bankruptcy discharge. The letter indicated he had been a Quixtar IBO from 1992 to 2007. As with Mr. Hemingway, the Special Master apparently decided to award $2,000 to Mr. Parsons (with a net payment of $500 after the mandatory deduction of his $1,500 Section III BSM payment), based on the rationale that claims with proof of bankruptcy but inadequate proof of specific losses should be "allocated the minimum $2,000 on the assumption that filing for bankruptcy was predicated on well over $10,000 in losses and debt." DE 322 at 2.

In his untimely objection, Mr. Parsons asks for his award to be increased. He attaches new evidence, specifically several December 1995 order forms. *See* Stinehart Decl. at Ex. A, Pgs. 1537-1557. The class period in this case runs from January 1, 2003. DE 162-2 ¶ 1.7. The Court has discretion whether or not to consider this new evidence. DE 252 ¶ 19.

Derrick DeRoon also submitted to the Special Master a letter and a copy of his Chapter 7 bankruptcy discharge. In accordance with his standard rationale, DE 322 at 2, the Special Master awarded Mr. DeRoon $2,000. Mr. DeRoon's untimely objection states that his family lost "their entire life savings" and that $2,000 "seems like a drop in the bucket" in light of their losses. He asks for an increase in the amount of his award. No new evidence was submitted with his objection. *See* Stinehart Decl. at Ex. A, Pgs. 1558-1569.

### F. Claude Zamor

The untimely objection of Claude Zamor is from a claimant residing in Haiti, and there is no indication that he ever operated a Quixtar business in the United States. He has not submitted any tax return schedules or bankruptcy documents. Only persons who were Quixtar IBOs "within the United States" are members of the Settlement Class. DE 162-2 §§ 1.14, 1.32. Mr. Zamor has already received a $2,000 cash payment on his BSM claim. *See* Stinehart Decl. at Ex. A, Pgs. 1570-1583.

### G. Mark Smith

The objection of Mark Smith seeks compensation for losses incurred from 1992-1997. *See* Stinehart Decl. at Ex. A, Pgs. 1584-1635. The class period in this case runs from January 1, 2003. DE 162-2 ¶ 1.7.

### H. Michael and Adrienne Prince

The Prince's objection alleges that they went into bankruptcy as a result of their participation in Quixtar, and they submitted with their objection a copy of a 2008 Chapter 13 discharge from a U.S. Bankruptcy Court. Their submission to the Special Master did not allege bankruptcy and did not include the discharge or any other Bankruptcy Court documents. Their original documents indicated they were suffering financial hardship and were being pursued by various creditors, but none of the submitted documents mentions Quixtar or indicates that the losses and the bankruptcy were the result of involvement with Quixtar. They submitted a Form 1040 for 2004, 2005 and 2006, but no Schedule C was included, and no business loss was reported on line 12 on any submitted Form 1040. *See* Stinehart Decl. at Ex. A, Pgs. 1636-1751. As mentioned above, the Court has discretion to consider the Prince's newly submitted documents if it wishes to do so.

## II. SECTION III BSM OBJECTIONS

The objections to the Special Master's hardship award recommendations are entirely separate and distinct from the objections to the Claims Administrator's denial of certain Section III BSM claims. The Court has not yet ruled on the eight pending Section III BSM objections, which Plaintiffs submitted to the Court on October 1, 2013 (DE 305), along with a Proposed

Order (DE 305-2). The adjudication of the 28 Section IV hardship objections (Part I, *supra*) and the eight Section III BSM objections require resolution before final distributions are made and the settlement is closed.

## **CONCLUSION**

Plaintiffs take no position on whether any or all of the objections should be granted. The Special Master has advised that, if the Court so requests, he will provide comments on the objections. A Proposed Order is attached as Exhibit 2.

DATED: March 10, 2014

Respectfully submitted,

By: /s/ Stuart Singer
*Attorney for Plaintiffs*

David Boies, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
E-mail: dboies@bsfllp.com

Stuart H. Singer, Esq. (*Pro Hac Vice*)
Carlos M. Sires, Esq. (*Pro Hac Vice*)
Sigrid S. McCawley, Esq. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com
E-mail: csires@bsfllp.com
E-mail: smccawley@bsfllp.com

Willie E. Gary, Esq. (*Pro Hac Vice*)
GARY, WILLIAMS, PARENTI, WATSON & GARY, P.L.
221 East Osceola Street
Stuart, Florida 34994
Telephone: (772) 283-8260
Facsimile: (772) 220-3343
E-mail: weg@williegary.com

*Attorneys for Plaintiffs*

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2014, the foregoing was served via the CM/ECF system on the following counsel and via U.S. mail (without exhibits) on the objectors:

| | |
|---|---|
| William L. Stern<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522<br>cchao@mofo.com<br>wstern@mofo.com<br><br>*Attorneys for Defendant Quixtar Inc.* | Donald W. Carlson<br>Edward F. Donohue<br>CARLSON, CALLADINE & PETERSON, LLP<br>353 Sacramento Street, 16th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 391-3911<br>Facsimile: (415) 391-3898<br>dcarlson@ccplaw.com<br>edonohue@ccplaw.com<br><br>*Additional counsel for Defendants James Ron Puryear, Georgia Lee Puryear, World Wide Group, L.L.C.* |
| James R. Sobieraj<br>Ralph J. Gabric<br>Julie L. Leichtman<br>BRINKS HOFER GILSON & LIONE<br>455 N. Cityfront Plaza Drive<br>Chicago, Illinois 60611<br>Telephone: (312) 321-4200<br>Facsimile: (312) 321-4299<br>jsobieraj@usebrinks.com<br><br>*Attorneys for Defendant Quixtar Inc.* | J. William Blue, Jr.<br>NORTHEN BLUE, L.L.P.<br>1414 Raleigh Road, Suite 435<br>The Exchange At Meadowmont<br>Chapel Hill, NC 27517<br>Telephone: (919) 968-4441<br>Facsimile: (919) 942-6603<br>jwb@nbfirm.com<br><br>*Additional counsel for Defendants World Wide Group, L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt, Peggy Britt* |
| C. Matthew Andersen<br>WINSTON & CASHATT<br>1900 Bank of America Bldg.<br>601 W. Riverside<br>Spokane, WA 99201<br>Telephone: (509) 838-6131,<br>(800) 332-0534<br>Facsimile: (509) 838-1416<br>cma@winstoncashatt.com<br><br>*Additional counsel for Defendants James Ron Puryear, Georgia Lee Puryear, World Wide Group, L.L.C.* | Benjamin K. Riley<br>BARTKO, ZANKEL, TARRANT & MILLER<br>900 Front Street, Suite 300<br>San Francisco, California 94111<br>Telephone: (415) 956-1900<br>Facsimile: (415) 956-1152<br>Email: briley@bztm.com<br><br>*Additional counsel for Defendants World Wide Group, L.L.C., American Multimedia Inc., Britt Management, Inc., Bill Britt, Peggy Britt* |

/s/ Stuart Singer_____
*Attorney for Plaintiffs*